Supp. Buss Decl.

Exhibit 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE DISTRICT OF OREGON (Pendleton)

 3   LEAGUE OF WILDERNESS        )
     DEFENDERS/BLUE MOUNTAIN     )
 4   BIODIVERSITY PROJECT, an    )
     Oregon nonprofit corporation, )
 5                               )
              Plaintiff,         )  Case No. 2:16-cv-01648-MO
 6                               )
         v.                      )
 7                               )
     UNITED STATES FOREST SERVICE, )
 8   an agency of the United States)  October 6, 2016
     Department of Agriculture, and)
 9   SLATER R. TURNER, District   )
     Ranger, Crooked River National)
10   Grassland and Lookout        )
     Mountain, Ochoco National    )
11   Forest, in his official      )
     capacity,                    )
12                               )
              Defendants.        )  Portland, Oregon
13   _____)
```

14

15

16                    **Preliminary Injunction Hearing**

17                   TRANSCRIPT OF PROCEEDINGS

18          BEFORE THE HONORABLE MICHAEL W. MOSMAN

19          UNITED STATES DISTRICT COURT CHIEF JUDGE

20

21

22

23

24

25

```
 1

 2                          APPEARANCES

 3

 4   FOR THE PLAINTIFF:     Mr. Jesse Buss
                           Attorney at Law
 5                         411 5th Street
                           Oregon City, OR 97045-2224
 6

 7                         Mr. Thomas Charles Buchele
                           Earthrise Law Center
 8                         10015 S.W. Terwilliger Blvd.
                           Portland, OR 97219
 9

10

11   FOR THE DEFENDANTS:    Mr. John P. Tustin
                           Department of Justice
12                         Environment and Natural Resources
                           Division
13                         P.O. Box 7611
                           Washington, DC  20044
14

15

16   COURT REPORTER:       Bonita J. Shumway, CSR, RMR, CRR
                           United States District Courthouse
17                         1000 S.W. Third Ave., Room 301
                           Portland, OR  97204
18                         (503) 326-8188

19

20   ALSO PRESENT:         Ms. Rebecca Harrison
                           Ms. Tessa Chillemi
21

22

23

24

25
```

```
1                    (P R O C E E D I N G S)
2              THE CLERK:  Your Honor, this is the time and place
3    set for a temporary restraining order hearing in Case
4    No 2:16-cv-1648-MO, League of Wilderness Defenders/Blue
5    Mountains Biodiversity Project v. the United States Forest
6    Service.
7              Counsel, can you introduce yourself for the record.
8              MR. BUCHELE:  Good morning, Your Honor.  My name is
9    Tom Buchele, appearing for the plaintiff, League of Wilderness
10   Defenders/Blue Mountains Biodiversity Project.  I'm joined by
11   my co-counsel, Jess Buss, and by a law student, Tessa Chillemi.
12             THE COURT:  Thank you.
13             Good morning.
14             MR. TUSTIN:  Good morning, Your Honor.  My name is
15   John Tustin on behalf of the federal defendants, and with me
16   today is Rebecca Harris from the Office of General Counsel,
17   U.S. Department of Agriculture.
18             THE COURT:  Thank you both for being here.
19             I'd like to state my tentative views, and I want to
20   emphasize that they're just that, tentative views, and so if
21   they weren't, we wouldn't be holding this oral argument.  But
22   I'm going to do it at some length, in the hopes that it will
23   help you with your oral argument.  So you might want to note
24   down positions and questions as we go along.
25             The parties -- well, the case arises out of the
```

1    Forest Service issuing a decision memo authorizing logging or
2    thinning on about a 176-acre parcel around Walton Lake in
3    Central Oregon, the stated bases being it improved public
4    safety and forest health.  And plaintiff here claims that this
5    violates both the National Forest Management Act and NEPA, and
6    seeks injunctive relief against the proposed action.
7              Now, the parties, thank goodness, agree on the
8    standard for an injunction here, since it's a little bit
9    slippery sometimes, but there are the four basic factors:  the
10   likelihood of success on the merits, the likelihood of
11   irreparable harm, the balance of equities tipping in
12   plaintiff's favor, and that the injunction would be in the
13   public interest.
14             And this case may or may not involve the gloss put on
15   that by *Alliance for Wild Rockies* about the balance of
16   hardships tipping sharply in plaintiff's favor, reducing to
17   some degree the showing for success on the merits.
18             So I'd like to take up each of the four main issues,
19   or you might call them elements a plaintiff has to show to get
20   a preliminary injunction in turn.
21             The first is likelihood of success on the merits.
22   And I'll just take each of the two theories in order.  The
23   first -- well, the basic theory is that the decision was an
24   abuse of discretion principally because it was in violation of
25   law.  And so under the National Forest Management Act, the idea

1    is that there is an existing National Forest Plan for the

2    Ochoco Forest, including this area from 1989.  It was amended

3    in '94 and '95 by the Eastside Screens, forbidding logging of

4    trees equal to or in excess of 21 inches unless the Forest

5    Service can rely on an exception established in the Eastside

6    Screens or -- it's also true they can rely on amendment, but

7    that's not our case.

8            So the Forest Service appears to rely on two

9    exceptions.  The first is allowing such harvesting or logging

10   to modify vegetation within recreational special use areas.

11   And as to the National Forest Management Act only, as I

12   understand it, plaintiffs agree that this exception applies to

13   what I'll just call the campground area.  And I understand that

14   to be about 69 acres, or about 39 percent of the total amount

15   of logging proposed in the decision memo.  And so far, so good,

16   I guess, in terms of putting to bed one part of what is being

17   proposed here.

18           As to the second exception, the protection of health

19   and safety, this is the exception that it seems like the Forest

20   Service must rely on for removing what I'll call the remaining

21   61 percent.

22           Now there's some, I think, inference from the

23   briefing of the United States here that they might want to

24   think of the entire parcel as covered by this exception.  And I

25   don't know if that's really being advanced by the United States

1    or not.  That's one of the questions I'll be asking you, is as

2    to the non-campground areas, if we call them that, they've been

3    described by the United States as areas where people are

4    recreating all over the parcel.  I don't know if that's just

5    descriptive or if it's an attempt to say that this other

6    exception, the recreational special use area exception, would

7    apply to the entire parcel.  Certainly the reply brief, I

8    think, does a good job of rebutting that inference, in terms of

9    the Forest Service's own descriptions of the remaining lots or

10   parcels, but still a question.

11        But I'm going to operate on the assumption that the

12   Forest Service is relying on the protection -- protecting

13   health and safety exception for the remaining parcels.  And so

14   there it's a dispute about what that exception means, almost a

15   textual dispute about what that exception means, and plaintiff

16   says that the exception only applies to public health and

17   safety, not forest health and safety, and cites various reasons

18   for that -- the Forest Service's own positions in the past,

19   its -- that is, the plaintiff's analysis of how that exception

20   would apply to the larger rule, the Ochoco Forest Management

21   Plan, and in particular the Eastside Screens, and other reasons

22   why it contends that the best reading of this text is that it

23   only applies to public health and safety, not forest health and

24   safety.

25        And the Forest Service disagrees and tries to rebut

1    some of the historical reasons cited by plaintiff, and gives

2    its own reasons why it thinks that this exception to the

3    Eastside Screens is broad enough to cover forest health and

4    safety.

5              The main argument here -- I think the key to this

6    point is that the Forest Service accurately cites Ninth Circuit

7    case law to the effect that the Forest Service is entitled to

8    substantial deference to its own interpretation of its own

9    plans and rules.  And that's true.  And so if this is a dispute

10   about who's got the better reading of the text, then even if I

11   think plaintiffs have a decent reading of the text, so long as

12   the Forest Service also has a plausible reading of the text,

13   then under that substantial deference, plaintiffs would lose.

14             But what plaintiffs have really tried to show is not

15   so much two competing interpretations, but a flip-flop by the

16   Forest Service on its own reading of its own text.  And so if

17   the plaintiff can show that -- that is, if it can show that the

18   current version is a flip from an earlier version -- then I'm

19   not going to give deference to a flip-flop reading of the text.

20   You don't get to read it two inconsistent ways and get

21   deference twice.

22             So it's really a battle between whether this is just

23   competing definitions of texts, in which case the Forest

24   Service wins, or is it a flip-flop reading of the text, in

25   which case the Forest Service gets no deference for its current

1    version, and probably therefore the plaintiff at least has a

2    likelihood of succeeding on the merits.

3            That's what I'll be asking you to address.  In fact,

4    why don't we break oral argument up a bit, rather than have you

5    remember both theories in your head all at once.  Let's just

6    take this one up first and start with that.

7            I'll turn to plaintiffs first.

8            MR. BUSS:  Thank you, Your Honor.

9            For purposes of time limits -- excuse me.  For time

10   limitations, should I be aware of a need for purposes of this

11   limited argument?

12           THE COURT:  Don't worry.  I'll guide you very

13   carefully as to how much time I need you to spend on anything.

14           MR. BUSS:  Thank you, Judge.

15           Regarding whether or not the health and safety

16   exception was inferred to apply throughout the entire 176-acre

17   parcel, clearly I do think that was inferred in respondent's

18   brief.  However, it is not explicitly stated, and as stated in

19   plaintiff's reply, that was not the justification used in the

20   decision memo.  The decision memo cites health and safety only

21   in Units 2 through 4, which are primarily grand fir and

22   Doug-fir, where there is the largest infestation of root rot.

23   The justification for health and safety did not extend to the

24   other units, which were justified on forest health reasons.

25           Regarding deference to the Forest Service,

1    plaintiff's position is that it is not a plausible

2    interpretation of the health and safety exception at all, and

3    that even if this was the --

4         THE COURT:  Let's start with that.  So you're saying

5    it's not plausible because of the Forest Service history of

6    interpreting or it's not plausible on its face?

7         MR. BUSS:  Your Honor, setting aside the history of

8    interpretation for a moment, the text itself, starting with the

9    1993 original Eastside Screens, specifically has a

10   parenthetical that explains the scope of the health and safety

11   exception as being limited to roadside or campground hazard

12   trees in a parenthetical.  The 1994 amendments simply

13   incorporated the intent of 1993, did not modify the scope of

14   the exceptions at all.  The same is true of the 1995

15   amendments.

16        If either the 1994 or 1995 amendments had, in fact,

17   intended to expand the scope of that parenthetical permitting

18   it for roadside or campground hazard trees, NEPA would have

19   been required for the impacts, the great scope increase that

20   that would have entailed.  But that didn't happen.

21        Regarding the past interpretation, I believe the

22   Court is referring to Snow Basin and Wolf, which plaintiff

23   cited in both its briefs, and which the defendant did not even

24   attempt to address in its response.  And in both of those

25   cases -- and Wolf, which is very recent and is also in the

1    Ochoco National Forest, involved forest plan amendments

2    specifically for forest health reasons.  If the Forest Service

3    could have gotten away without doing a forest plan amendment

4    and all the attendant scoping, research, background

5    information, they would have done so if they could have relied

6    on the health and safety exception, but they correctly

7    recognized in those cases that they could not do so.

8            In Wolf in particular, there were several

9    site-specific plan amendments, one of which was only 10 acres.

10   This was addressed in plaintiff's reply brief as well.  But in

11   the response, defendants hint that this is such a small project

12   here, 176 acres, that it should somehow be exempt as de minimus

13   as well, but Wolf shows to the contrary.  There was also a

14   forest plan amendment there that was about 350 acres as well.

15           THE COURT:  I'm not sure -- I mean, I'm not sure what

16   to make of the de minimus argument, but I doubt you rebut it

17   just by saying the Forest Service has previously sought

18   amendments to smaller parcels.  I mean --

19           MR. BUSS:  Well, Your Honor --

20           THE COURT:  -- whether you're allowed to make the

21   de minimus argument or not, but if they're not successful, then

22   they have to go through the process.

23           MR. BUSS:  That's true, Your Honor.  And, of course,

24   the de minimus doesn't exist, wasn't relied on in the decision

25   memo, so really I add it as a parenthetical.

```
1           THE COURT:  So your main textual argument, which is
2    where we're starting, is that the text, including the
3    parenthetical, indicates a limitation on this exception for
4    public health and safety.
5           MR. BUSS:  That is half of the textual argument, Your
6    Honor.  The context, which goes along with text, is, of course,
7    within the Eastside Screens itself, but in the larger context
8    of the Ochoco National Forest Plan.  The specific purpose and
9    primary purpose of the Eastside Screens is to protect forest
10   health, and old growth in particular.  So to interpret the text
11   of the health and safety exception as allowing logging on
12   forest health grounds completely swallows the rule.
13          THE COURT:  I'm not sure I've ever really tracked
14   that argument.  Why wouldn't it be analytically coherent to say
15   that we have an overall plan that limits logging of these
16   larger trees for forest health purposes but allows the
17   exception when the forest health is specifically in play for
18   some kind of disease?
19          MR. BUSS:  Well, Your Honor, the difference is that
20   the Eastside Screens went through a full NEPA analysis, and
21   they do apply to protectable growth and trees over 21 inches.
22          THE COURT:  Well, the exception went through a
23   full-on NEPA analysis.
24          MR. BUSS:  The exception did, and that's why the
25   exception applies limited to its text.  The EAs for both 1994
```

Supp. Buss Decl. Ex. 1 - pg. 11 of 73

1    and 1995 Eastside Screens specifically say that the Eastside

2    Screens are to be interpreted restrictively.  Snow Basin and

3    Wolf show that any deviation from that strict requirement

4    requires a forest health plan amendment for a site-specific

5    area.

6            THE COURT:  Sure.  That just sort of begs the

7    question.  The Forest Service isn't here saying they're seeking

8    a deviation.  They're saying that they're operating within the

9    meaning of what was approved in the NEPA process on the

10   Eastside Screens.

11           MR. BUSS:  Yes, Your Honor.  However, if an exception

12   to the Eastside Screens' applicability is forest health, and

13   the purpose of the Eastside Screens is to protect forest health

14   and old growth, then in theory the Eastside Screens would never

15   apply in the context of a project designed to improve forest

16   health, which would be most projects.

17           THE COURT:  All right.  And then your last point

18   textually is the historical point, right, that the Forest

19   Service has previously read these exceptions -- this exception

20   narrowly?

21           MR. BUSS:  Not explicitly so, but implicitly, yes,

22   Your Honor.

23           THE COURT:  So you've had a chance in your reply to

24   take up the Forest Service's explanations of those historical

25   positions.  Anything you wish to add to that?

1          MR. BUSS:  Yes, Your Honor.  Simply that we didn't

2    have the opportunity to take up the Forest Service's

3    explanation because they did not attempt to explain the past

4    interpretation at all in their response.  So plaintiffs are

5    operating somewhat in a vacuum with regard to that argument

6    because we have not received a response to it.

7          THE COURT:  All right.  Thank you.

8          United States?

9          MR. TUSTIN:  Thank you, Your Honor.  Are you able to

10   hear me in the microphone here?

11         THE COURT:  I can hear you just fine.

12         MR. TUSTIN:  I'll begin, Judge, we've discussed a lot

13   about the -- really digging into the forest health exception,

14   but the public health exception clearly applies to the entire

15   project area, including the 61 percent that is outside of the

16   campground concession.  And the decision memo and the rest of

17   the record provides ample basis for why the Forest Service

18   determined that this project was necessary to protect the

19   public health, in addition to the forest health, but I'd like

20   to talk about the public health rationale first.

21         As you mentioned at the beginning, it is located

22   entirely within a developed recreation area.  It is the most

23   highly visited area of the forest.  The forest plan emphasis

24   for this developed recreation area, MA-F13, is to provide safe,

25   healthful and aesthetic facilities for people to utilize within

1    a relatively natural outdoor setting while they're pursuing a

2    variety of recreation experiences.

3         And the treatment options include to direct the

4    Forest Service to utilize all methods to prevent or depress

5    insects and disease outbreaks.

6         In addition, the recreation report noted that

7    developed recreation sites demand the highest degree of public

8    safety, and the forest health biological evaluation also

9    discussed how forest health and public health are -- how

10   developed recreation sites demand the highest degree of public

11   safety because this is a very small project area.  It's only

12   176 acres.

13        Let me grab a map.  I may have drawn on it

14   inadvertently.  Can you ignore the green markings?

15        THE COURT:  I can, but to your right is a menu button

16   and a clear button.

17        MR. TUSTIN:  Thank you.  I'll just use my finger to

18   direct it.

19        The campground concession largely is by Forest Road

20   F220, which is here, but there's also an approximately 300-foot

21   buffer around it.  So 61 percent of the area outside of the

22   concession is roughly this perimeter here.  But this campground

23   is very small.  You have people from the campground who

24   recreate in the entire area all around this -- the developed

25   site.  There are trails, such as along here and here, and

1    people can also wander off woods.  So the public safety reasons

2    for why there is an exception are very clear and established in

3    the record.

4              In addition, the --

5              THE COURT:  Let's slow down for a second here.

6              MR. TUSTIN:  Sure.

7              THE COURT:  So they're clear and established in the

8    record how?

9              MR. TUSTIN:  Because the forest plan direction says

10   the Forest Service must provide safe, healthful and aesthetic

11   facilities for the public to recreate in in this developed

12   recreation area.

13             THE COURT:  That wasn't my question.  So that

14   requires a showing by the Forest Service to some degree that

15   that's the sort of area impacted by the decision, and not an

16   area in which people aren't recreating freely.  So where in the

17   record do I learn that what you've just told me is true?

18             MR. TUSTIN:  Well, the recreation report discusses --

19   that's at AR6340.  That discusses the recreation of the area.

20   It talks of the entire project area.  It's not limited to just

21   the concession.  It's talking about the entire project area,

22   including the 61 percent that's outside of the concession.

23   That talks about it.

24             Also the --

25             THE COURT:  What would prevent that exception from

1    being used in any area of any national forest?  What is the

2    limiting factor?

3              MR. TUSTIN:  The limiting factor here is that this is

4    specifically entirely located within the developed recreation

5    management plan, the management unit of the Forest Service,

6    MA-F13, that we note that it has little applicability elsewhere

7    because this developed recreation area is only 1800 acres, or

8    about .2 percent of the entire national forest.  So --

9              THE COURT:  I'm asking the limiting factor.  Are you

10   telling me the limiting factor is that if there's such a plan,

11   a developed recreation management plan in place, that's how I

12   can tell where the exception might conceivably apply or where

13   it would not apply?

14             MR. TUSTIN:  Yes.  If the project is located within a

15   developed recreation area such as this one, then that is where

16   this exception would be limited to.

17             THE COURT:  And then can you also show me where in

18   the decision memo you relied on this exception versus the

19   other?

20             MR. TUSTIN:  Yes.

21             THE COURT:  For what we call the 61 percent?

22             MR. TUSTIN:  And it's mingled together.  The

23   plaintiffs just now alleged that the public health exception

24   applies only to Units 2, 3 and 4, but that's not at all what

25   the decision memo says.  On page 6359, we're talking about the

```
 1    exceptions to the Eastside Screens.  It says that it's exempt
 2    from the decision because it protects health and safety and
 3    develops and modifies vegetation within the recreation special
 4    use area.  So there's no distinction between the campground
 5    concession and the entire project area.  And that's evident
 6    from the recreation report and from the whole basis for this
 7    project and the fact that the very developed nature of the
 8    project area receives a very large amount of recreating public.
 9              THE COURT:  So your thesis then, if this is true, is
10    in all of this area, there's a risk to public, not just forest
11    but human health and safety, by virtue of falling trees?
12              MR. TUSTIN:  Yes.  And -- yes, and because of the
13    falling trees and also because of the dense fuel load that is
14    accumulated in other areas.  And, in fact, plaintiffs in their
15    declarations indicate that they recreate throughout the entire
16    project area.  Their declarations don't say they're limited to
17    the campground concession.  They say they enjoy walking
18    throughout the area.  Ms. Coulter's declaration at paragraph 6,
19    Ms. Miller's declaration at paragraph 7, talk about the entire
20    project area.  In addition, Mr. Slater, the district ranger,
21    said that people recreate throughout the entire project area.
22    The popularity of the site proves that.
23              THE COURT:  All right.  So point number one is you
24    deem the entire area as a recreational special use area?
25              MR. TUSTIN:  No, not entirely.
```

```
 1              THE COURT:  Isn't that what you have to say to rely
 2    on that exception?
 3              MR. TUSTIN:  No, because the recreation special use
 4    area is limited to the campground concession, but the public
 5    health and safety thing applies to the management area, so
 6    within this project.
 7              THE COURT:  So I think I misunderstood where you were
 8    headed with the argument.  I think I understood the argument
 9    but not your goal.  I thought you started out by saying the
10    initial exception as to -- that clearly, or at least plaintiffs
11    agree applies to the campground area, which is the -- to modify
12    vegetation within recreational special use areas applies to the
13    entire area.  Is that your position?
14              MR. TUSTIN:  No.  The position is -- I apologize if I
15    was not clear.  We agree that the recreation special use area
16    is only the campground concession, that 39 percent.  But the
17    Forest Service also relied on the protect public health and
18    safety exception for the entire project areas.  So the second
19    exception applies to everything, for the reasons stated,
20    because it's a developed recreation area.
21              THE COURT:  And therefore you're relying on both
22    forest health and human health for the entire area?
23              MR. TUSTIN:  Well, we think that the -- we argue that
24    the second exception, the public health and safety exception
25    applies to both public health and forest health.  Right now I'm
```

Supp. Buss Decl. Ex. 1 - pg. 18 of 73

1    talking about how it applies to public health, and I can go in

2    and talk about how it applies to forest health.

3          THE COURT:  No, I think I understand where you're

4    headed now.

5          So what you're really telling me is -- first you're

6    asserting that the exception applies to public health, and

7    that's sort of unexceptional because plaintiffs agree with

8    that.  But then you're also asserting that public health is at

9    risk throughout the area, not just forest health.

10         MR. TUSTIN:  Yes.  But, again, there are two

11   exceptions that we're relying on, and the second exception is

12   to protect public health, to protect public health and safety.

13   The "public" portion of that applies throughout the entire

14   project area, and that is the basis for this decision.  There's

15   also a forest health component.

16         THE COURT:  We'll get to that in a second.  Just so

17   I'm clear, though, what plaintiffs have argued is that the

18   public health is only at risk in a campground area, in

19   campground areas.  And you're asserting that no, it's at risk

20   in the entire area because people recreate throughout the

21   entire area.

22         MR. TUSTIN:  That is correct, yes.

23         THE COURT:  All right.  And then you also assert that

24   in any event, this exception is broad enough to cover forest

25   health in the entire area?

1          MR. TUSTIN:  Yes.

2          THE COURT:  And your textual support for that reading

3    is what?

4          MR. TUSTIN:  The textual support of that reading is

5    in the history of the Eastside Screens amendment.  We've

6    discussed in our brief how plaintiffs are relying on a 1993

7    letter that does contain a parenthetical that is limited to

8    roads and campgrounds.  But that parenthetical was not adopted

9    in the 1994 screens.  In addition, there is a fourth exception

10   added to that.  So that '93 letter may have been a background,

11   it may have provided some information, but that's not what was

12   adopted in 1994.

13          And furthermore, in 1995, the Forest Service

14   explicitly amended the screens to allow this exception to

15   provide forest health in certain circumstances.  And we

16   discussed that how if you don't allow thinning in an old growth

17   area or areas of large old trees, that failure to act provides

18   the very basis that is a threat to the labeled species that are

19   being protected here, the large ponderosa pines.

20          THE COURT:  What do you make of plaintiff's argument

21   that your current position is inconsistent with the positions

22   taken previously by the Forest Service?

23          MR. TUSTIN:  And I believe they're referring to the

24   Wolf EIS and Snow Basin project.  Those are completely

25   distinguishable, because in those projects, the Forest Service

1    was not relying on an exception to the Eastside Screens.  There

2    they had done a forest plan site-specific amendment.  Here

3    there is no site-specific amendment.  We are relying on an

4    exception to the Eastside Screens to allow this project to go

5    forward.

6                THE COURT:  All right.  Thank you.

7                It's plaintiff's burden, so I'll let you reply

8    briefly.

9                MR. BUSS:  Thank you, Judge.  Pardon me.

10               Defendant has just confused and conflated the

11   recreation special uses area, which is the designated

12   campground area, 68.8 acres, with the rest of it, which the

13   forest plan itself, even going back to 1989, defines the MA-F13

14   developed recreation area as including two distinct sites, the

15   developed site area -- this is at record 1650 -- and separately

16   from that a visual influence area.

17               There are two different restrictions for logging in

18   those areas.  In the developed site area, harvesting is to be

19   for maintaining safe and attractive recreational sites.  For

20   visual influence area, which is everything out of the developed

21   site, it is to be done for meeting visual quality objectives

22   and maintaining healthy stands.  Nothing about safety there.

23               THE COURT:  I don't think that's the real issue.  The

24   issue is that the Forest Service says, and you agree that there

25   is an exception to the Eastside Screens for the protection of

1    health and safety.

2              MR. BUSS:  Yes, but --

3              THE COURT:  You agree that that applies to

4    protecting, you know, what we'll call human health and safety,

5    public health and safety?

6              MR. BUSS:  To the extent that it covers roadside or

7    campground hazard trees, Your Honor, we do.  Because that's the

8    language of the --

9              THE COURT:  That's what you agree on so far.

10             But the exception is for protecting health and

11   safety.  Let's assume that that exception means public health

12   and safety not forest health and safety.  That's the core of

13   your position, isn't it?

14             MR. BUSS:  Well, I wouldn't characterize --

15             THE COURT:  It does not cover forest health and

16   safety?

17             MR. BUSS:  Our position is that it does not cover

18   forest health and safety, yes.

19             THE COURT:  The government's main argument is simply

20   that they're not only relying on forest health and safety for

21   this entire area, they're relying on human or public health and

22   safety for the entire area.

23             MR. BUSS:  Yes, Your Honor.

24             THE COURT:  First, before you get into the weeds of

25   your argument, what's your position as to whether that's

1   factually accurate that, in fact, human health and safety is at

2   risk in the entire area?

3          MR. BUSS:  Your Honor, our factual position on that

4   is that health and safety is only an issue in the area that we

5   are not objecting to logging happening, in the area outside the

6   scope of the preliminary injunction request.  And that's

7   supported by the *Field Guide for Hazard-Tree Identification and*

8   *Mitigation*, which is specifically relied on by the Forest

9   Service, and according to the Forest Service Manual, is the

10  document used to determine whether trees are hazard trees or

11  not.

12         And the record at page 5553, there's a table that

13  describes the hazard risk for various trees, including live

14  trees and laminated root rot centers, which would be Units --

15  at least parts of Units 2, 3 and 4.  Those score a level 2 out

16  of 4, qualify as a low failure potential if they're greater

17  than 25 feet away from an infected tree, and a medium failure

18  potential if they're closer than 25 feet.

19         None of those are high failure potential.  They don't

20  constitute by themselves a health risk because the chances of

21  someone being outside of the developed recreation area are so

22  small that at the time the tree might fall someone would be

23  standing there.

24         THE COURT:  How do you know that?

25         MR. BUSS:  Well, Your Honor --

1   THE COURT:  Not that the tree might or might not

2   fall, but how do I know the core question, which is are there

3   people regularly present in the areas outside the campground

4   still within the decision memo?

5   MR. BUSS:  I don't think you know that, Your Honor,

6   because the record doesn't support people being in those areas.

7   In the response --

8   THE COURT:  You're saying I don't know one way or the

9   other or do you have facts showing that people are not there?

10  The Forest Service's position is given the nature of this site

11  and its designation, the uses to which it's being put, that a

12  fair inference is that there are people tromping around

13  throughout the area, on trails and all around.  Just for

14  purposes of argument, if you take them that far, do you have

15  facts that rebut that?

16  MR. BUSS:  Your Honor, the maps included in the

17  record do not show an extensive trail system through the

18  disputed area.  In fact, I do not believe they are there, but

19  certainly not in the highly disputed area where clearcutting is

20  proposed, in Units 2 through 4, there's no evidence of any

21  trails whatsoever off of the main roads.  And it's difficult

22  for plaintiffs to prove a negative here, Your Honor, but I'm

23  not aware of anything in evidence in the record supporting

24  trails through those areas.

25  THE COURT:  What about the designation of the entire

1  area for recreation far above and beyond the national forest

2  itself?

3            MR. BUSS:  I don't believe there's any evidence in

4  the record, Your Honor, also to support that there's higher

5  incidents of use in the --

6            THE COURT:  I'm not now asking about factual

7  incidents of use, I'm asking about what I asked the government

8  to propose as a dividing line between national forest generally

9  and areas where they can claim -- legitimately claim risk to

10 public health.

11           MR. BUSS:  I don't think there is any distinction

12 there, Your Honor.  The forest plan itself invites people to

13 recreate throughout the forest.  There is no distinction

14 between that and the visual influence area around a developed

15 campground.  The public may go anywhere they wish to go in the

16 national forest.  It doesn't mean that the Eastside Screens

17 don't apply throughout the national forest.

18           THE COURT:  All right.  Thank you.

19           Let's turn to NEPA.  I'll give you my tentative

20 views.

21           So, as you're aware, the Forest Service applied or

22 sought to apply a categorical exclusion to this proposed

23 action, and plaintiff claims this decision is arbitrary and

24 capricious for two reasons:  one, improper scoping; and two, an

25 inappropriate reliance on the categorical exclusion.

1          So plaintiff has proposed basically three reasons why

2   there was improper scoping:  one, that there was an inadequate

3   description of the scale and impact of the activity being

4   proposed, including but probably not limited to failure to

5   disclose the number of trees to be impacted.

6          Second is that the Forest Service used misleading

7   language, said "thinning" when it really meant a form of

8   clearcutting, et cetera.

9          The third is that -- this is reliance on the fact

10  that the Eastside Screens themselves say that NEPA and Section

11  7 must be met even in actions taken under exclusions or

12  exceptions.  The third, I guess, has two parts.  So 3.1 is a

13  failure to disclose its intention to use the Eastside Screen

14  exceptions to log these 21-inch-or-greater trees.  So without

15  pointing that out in the scoping, they get inadequate public

16  response.

17         And 3.2 is -- I'm not sure this is something

18  plaintiffs are actually relying on or just that it's glancingly

19  mentioned when Section 7 is mentioned, and that is a failure to

20  consult with U.S. Fish and Wildlife as a part of what didn't

21  happen here.

22         The Forest Service has responded to the first two

23  arguments about essentially the adequacy of their description

24  of their activities, and I think -- tentatively, I think

25  adequately responded to the complaints about the adequacy of

```
 1   their description, but hasn't responded at all to the third
 2   argument in any way.  And so I think this issue turns on the
 3   Forest Service's response to .3.
 4            I'll turn to the Forest Service first to talk about
 5   the categorical exclusion.
 6            MR. TUSTIN:  That was disclosed.  The plaintiffs
 7   claim that the Forest Service must somehow explicitly state in
 8   their scoping notice that we are relying on exception to the
 9   Eastside Screens.  That, I think, is reading too much into the
10   NEPA regulations.  The designation for -- the instructions for
11   scoping are to provide the public with notice.  The scoping
12   notice clearly says it proposes to remove the host species and
13   to remove trees of all sizes.  So if you're removing trees of
14   all sizes, you will be removing trees that are greater than
15   21 inches.
16            So we think that that disclosure was sufficient to
17   allow parties to participate, and indeed plaintiffs did have an
18   opportunity and did provide comments about the reliance on the
19   Eastside Screens exceptions.  They said you cannot log trees
20   greater than 21 inches.  So they provided their views on that,
21   and they were not prejudiced by the Forest Service's disclosure
22   to rely on -- or to indicate that we would be harvesting all
23   species or species of all sizes.
24            THE COURT:  So your principal -- since you didn't
25   specifically reference any exceptions -- correct?
```

1          MR. TUSTIN:  Correct.

2          THE COURT:  -- you're relying on the fact that when

3     you say "of all sizes," that is a red flag to interested

4     persons, and it must have been enough because it was enough for

5     plaintiffs to know what they wanted to say on this subject?

6          MR. TUSTIN:  Yes.  Not just plaintiffs.  There were

7     other people that commented, also expressed concerns, but there

8     were also those who supported the proposal and wanted

9     additional logging along Forest Road 22.  So there were people

10    that supported and disagreed.  It was -- the public had an

11    opportunity to express their views and concerns about removal

12    of trees greater than 21 inches.

13         THE COURT:  What about the Section 7 requirement?

14         MR. TUSTIN:  I don't believe that was fully briefed

15    in plaintiff's brief, but here, the categorical exclusion, one

16    of the steps -- one of the reasons -- excuse me, one of the

17    bases to rely on the categorical exclusions is that there are

18    no extraordinary circumstances here.  And there aren't.  The

19    Forest Service did do a biological evaluation, and in a

20    decision memo it discusses how consultation was not required

21    because there were not any threatened or endangered species.

22    So that was not necessary.

23         THE COURT:  Thank you.

24         Go ahead, sir.

25         MR. BUCHELE:  Your Honor, I agree there's not an ESA

1    issue here, but I think -- I'm not going to give up so easily

2    on this.  This is the only scoping issue.

3           Your Honor, thinning and clearcutting are not the

4    same thing.  There is nothing in the scoping notice that put

5    the public on notice that they were going to clearcut 40 acres

6    in a visual enhancement area, and if there had been, there

7    would have been many, many more comments on this issue.  They

8    are still posting notices out there with regard to that

9    specific area, calling it thinning.  Those are not the same

10   thing.

11          THE COURT:  What do you mean by clearcutting?

12          MR. BUCHELE:  Clearcutting is taking out all the

13   trees, and that is what they're doing.  That's what they call

14   it.  That's in the record.  Internally they called it

15   clearcutting.  And those are not the same thing, Your Honor.

16          THE COURT:  And the other argument?

17          MR. BUCHELE:  The other argument is -- and I think

18   that really it comes together with the NFMA argument, Your

19   Honor.  The Eastside Screens clearly say you have to comply

20   with NEPA if you're going to use the exceptions.  The only

21   chance the public gets to have an involvement in the NEPA

22   process when they're using the categorical exclusion is the

23   scoping notice.

24          When they were developing the scoping notice, the

25   Forest Service said let's focus on -- get the public to focus

1   on significant issues.  There is nothing more significant in

2   the Eastern Oregon forests than trying to exceed the Eastside

3   Screens limitations.

4          THE COURT:  You heard the main argument, which is

5   that somehow whatever they said was enough to clue you in that

6   you had to object on the basis of failing to follow the

7   Eastside Screens.  Why isn't that sufficient under NEPA?

8          MR. BUCHELE:  We knew that they were going to log in

9   excess of the screens.  That is certainly true.  But we did

10  not -- but, if you notice, my clients still thought they were

11  thinning.  That's what it says in the scoping.

12         THE COURT:  That's a different argument.  I'm asking

13  you to focus on the NEPA violation, failing to reference the

14  exceptions.  If you extrapolate from whatever they may have

15  inadequately said -- let's assume that what the Forest Service

16  does in the abstract is inadequate, but you figure it out and

17  so you make the same objection you would have made had it been

18  adequate.  Is that a NEPA violation?

19         MR. BUCHELE:  Under those facts, I don't think it

20  might be, Your Honor, but those aren't the facts.

21         THE COURT:  Setting thinning to one side, didn't you

22  make the same objection -- that is, they're failing to follow

23  the Eastside Screens -- that you would have made had they said,

24  "We're seeking an exception to the Eastside Screens"?

25         MR. BUCHELE:  Not at all, Your Honor, because simply

1  saying you need to follow the Eastside Screens, which is what

2  our client said, is different from explaining why those

3  exceptions don't apply.

4      Your Honor, to use the forest health, to use that

5  exception for public health and safety is unprecedented.  My

6  client would have submitted lots of evidence if they had tried

7  to do that.  They had no idea the Forest Service was trying to

8  use it in that way.

9      I have seen a lot of scoping notices for timber

10  sales.  I've seen a lot of draft EAs and EISes.  I have never

11  seen the Forest Service put out a scoping notice when they

12  intended to violate the screens where they didn't explain how

13  they were violating the screens or how they were addressing

14  that.

15      And, again, public safety, if they were relying on

16  public safety and they were claiming that this entire area was

17  public safety, as you said to Mr. Buss, we would have put in

18  evidence showing that that's not the case here.  We had no

19  opportunity to do that, Your Honor, because the scoping notice

20  did not put us on notice on what exception they were using.

21      That is not an incredible burden.  It requires a

22  sentence to do that.  And they didn't do that.  And there's

23  just really no excuse for that, especially when the screens

24  themselves specifically say if you're going to use the

25  exceptions, you have to comply with NEPA.  The only way to do

1    that here is to list it in the scoping notice.  We had no

2    opportunity to put on evidence about the use of the exceptions

3    to allow clearcutting, which is unprecedented, and allow it

4    throughout this area for that kind of thing.  That just has

5    never happened before, and our client should have had the

6    exclusive opportunity to address that issue if they were going

7    to do that here.

8              THE COURT:  Thank you.

9              Would you start with thinning versus clearcutting,

10   and we'll come back to that issue, I guess, since it's been

11   raised again in oral argument.  Did you ever use the word

12   "clearcutting" ever?

13             MR. TUSTIN:  Well, that is not what is being

14   proposed.  There is --

15             THE COURT:  So the answer to my question is no?

16             MR. TUSTIN:  The decision, the scoping notice is

17   clear of what types of trees are going to be removed.  It said

18   it will remove the host species and remove species of all

19   sizes, and explained why it was necessary and where they would

20   be removed, so that the extent of the removal of the

21   Douglas-fir and grand fir was very clear in the scoping notice.

22   Plaintiffs had the opportunity --

23             THE COURT:  Your contention is that the scoping

24   notice puts people on notice that all Doug-firs and grand firs

25   of all sizes would be removed?

```
 1              MR. TUSTIN:  Yes.  And it also clarified, the
 2    decision memo clarified that -- you know, we talk about
 3    clearcutting, people believe that everything is removed.
 4    That's not what is happening here.  They are removing most, if
 5    not all, most of the firs, but they are -- as we discussed in
 6    our brief and the decision memo discusses, they are leaving
 7    certain clumps further away to provide for diversity.  But the
 8    vast majority of fir will be removed, but there are some
 9    retention groups that are -- that do remain in the project
10    area.
11              THE COURT:  So is that clearcutting or not, in your
12    view?
13              MR. TUSTIN:  That is not clearcutting because you're
14    leaving trees, some trees.  But most of it is being removed.
15              THE COURT:  Well, when you say removing Doug-fir
16    and --
17              MR. TUSTIN:  And grand fir.
18              THE COURT:  -- and grand fir.  So separate from the
19    retaining clumps you've just described, isn't that de facto
20    clearcutting, where at least that's happening?
21              MR. TUSTIN:  In the comments that's the term, yes,
22    but there will be replanting of resistant species that will
23    provide --
24              THE COURT:  Let me just ask you a question in the
25    abstract.  If, in fact, the Forest Service proposes in reality
```

Supp. Buss Decl. Ex. 1 - pg. 33 of 73

1    to engage in clearcutting but describes it in the decision memo

2    as thinning, is that inadequate scoping, just in the abstract?

3    If you're going to clearcut but you say "thinning," is that

4    error?

5            MR. TUSTIN:  I would say yes, but the decision memo

6    does not say that.  They talk about how they're removing --

7            THE COURT:  Well, what we have to get at is the ways

8    in which you've adequately described what you were doing beyond

9    just saying "thinning," right?  If you just said "thinning,"

10   would that also have been inadequate?

11           MR. TUSTIN:  I think it wouldn't because it's talking

12   about the reasons for the thinning and also the removal of the

13   heavily infected species.

14           THE COURT:  So where you get at adequate public

15   notice here is where the decision memo says we're taking out

16   all trees of all sizes of these subspecies of fir?

17           MR. TUSTIN:  That was actually the scoping notice,

18   because the scoping notice did say that, and NEPA does not

19   have -- there's no cutoff date for providing comments.  There

20   is a deadline for providing scoping comments, but --

21           THE COURT:  I'm not worried about comments yet.  Slow

22   down.  I'm trying to get at the adequacy of the scoping notice.

23           So you're claiming it's adequate by describing that

24   you're taking out all of the two subspecies of fir?

25           MR. TUSTIN:  Yes.

1          THE COURT:  And I suppose your position would be that

2     even independent of the clumps that were left for diversity

3     purposes, the description would nevertheless have been adequate

4     since it's telling people all of the trees are being taken out?

5          MR. TUSTIN:  Yes, it is.

6          THE COURT:  Separate from the clumps, what's left?

7          MR. TUSTIN:  In the Units 2, 3 and 4?

8          THE COURT:  When you're done doing what you propose

9     to do, what's left?  What species are left?

10         MR. TUSTIN:  There are -- larch are left, there are

11    some ponderosa pines, conifer -- not as many, there are some.

12    And there will be clumps, as we mentioned.  There are larch,

13    there are ponderosa pine.

14         And then the second portion of the project, which we

15    hope to do in the spring, is to replant with resistant species,

16    to replant with more larch, hardwoods, and some shrubs and

17    bushes that will not only provide future larger trees for them

18    to enjoy and aesthetics, but also they serve as limitations on

19    how the laminated root rot can expand into this developed

20    recreation area.

21         So as the recreation report noted, the visual impact

22    from Units 2, 3 and 4 is going to be dramatic for the first

23    couple of years, since most of the trees will be removed, but

24    not all.  The ponderosa pine and larch remain.

25         But I also would like to note that the opportunity to

1    provide comments is not just the written comments.  The Forest
2    Service did organize a field trip in August, of mid August, and
3    provided a further opportunity for the public to comment.  And
4    that is not at all required, but that provided additional
5    opportunity for plaintiffs to respond.
6                THE COURT:  Thank you.
7                MR. BUCHELE:  Your Honor, if I may.
8                THE COURT:  Yes.
9                MR. BUCHELE:  To respond to Mr. Tustin's last point,
10   there are notes about the field trip in the record.  There is
11   no evidence in those notes that the exception to the screens
12   were discussed in any way in that field trip or disclosed to
13   the public.
14                Just -- this is the notice.  This is a one-page
15   notice that was attached to the scoping notice.  And it was
16   posted at the campsite.  And it says, block 1, "The project
17   would thin Douglas-fir and grand fir."  It's quite clear.
18                This is how the Forest Service --
19                THE COURT:  Why would I care more about that than the
20   scoping notice?
21                MR. BUCHELE:  This was attached to the scoping
22   notice.
23                THE COURT:  Sure, but it's a part of the scoping
24   notice.
25                MR. BUCHELE:  It's a part of it, but that's what the

| | |
|---|---|
| 1 | public saw, and a lot of that is what the public focused on. |
| 2 | As I said, my client's response referred to it as thinning. |
| 3 | THE COURT:  I'm sorry, did you also see the scoping |
| 4 | notice? |
| 5 | MR. BUCHELE:  Yes, they saw the scoping notice as |
| 6 | well. |
| 7 | THE COURT:  Which is a more complete description, |
| 8 | correct?  It -- |
| 9 | MR. BUCHELE:  It is a more complete description, Your |
| 10 | Honor, but what they described internally is right there.  This |
| 11 | is a clearcut, and that is not described in the scoping notice, |
| 12 | Your Honor. |
| 13 | THE COURT:  Well, again, this isn't our case exactly, |
| 14 | but if the Forest Service didn't use the word "clearcut" in a |
| 15 | scoping notice but said, "We're taking out all sizes of these |
| 16 | two species of trees," wouldn't that be adequate even though |
| 17 | they didn't actually say the word "clearcut"? |
| 18 | MR. BUCHELE:  No, Your Honor, because in context, |
| 19 | what they didn't explain was -- |
| 20 | THE COURT:  I'm not asking about our case. |
| 21 | MR. BUCHELE:  Okay. |
| 22 | THE COURT:  I gave you a hypothetical. |
| 23 | MR. BUCHELE:  I think it depends on the facts, Your |
| 24 | Honor. |
| 25 | THE COURT:  But the mere absence of the word |

Supp. Buss Decl. Ex. 1 - pg. 37 of 73

1    "clearcut" isn't fatal, is it, if you otherwise adequately

2    explain it?

3              MR. BUCHELE:  No.

4              THE COURT:  You have to say the word "clearcut"?

5              MR. BUCHELE:  I don't think you have to say the word

6    "clearcut."

7              THE COURT:  Well, that's what I just asked you.

8              MR. BUCHELE:  Right.  But what I think you do have to

9    say, though, is the area in which you're taking out all the fir

10   is, in fact, mostly fir.  They didn't tell the plaintiff that.

11             THE COURT:  All right.  So if you say, "We're taking

12   out all the fir," that might be the inference that, you know,

13   there's a bunch of other trees there, but the public needs to

14   be informed that when we say "all the fir," we mean almost all

15   the trees that are there.

16             MR. BUCHELE:  When you couple it with repeatedly

17   referring to it as thinning, which they did, I think that's

18   very misleading.

19             THE COURT:  All right.  Thank you.

20             I want to be brief about the last issue on likelihood

21   of success, and that's the categorical exclusion for what has

22   been called in the briefs, at least, sanitation harvest.

23             And there are a series of arguments about why that

24   exclusion really shouldn't apply here, sort of a reprise of the

25   argument made earlier that if the sanitation harvest

1    categorical exclusion means what the Forest Service now says it

2    means, then it's an exception that swallows the rule.

3              There's quite a bit of argument about what "adjacent

4    to" really means, and so the Forest Service responds to those

5    in part, but then its main argument really, or at least the one

6    I think has the most strength under Ninth Circuit law is that

7    as to what's needed for a sanitation harvest and, you know,

8    what's necessary or not in terms of creating a buffer of

9    adjacent trees, that the scientists asked this question, having

10   analyzed the threat in this area, and have determined what's

11   necessary to control for disease and spread of insects or

12   disease.

13             So there's certainly a number of cases that

14   repeatedly counsel district courts in my position not to act as

15   some sort of roving science panel, but why wouldn't that be

16   enough?  If the Forest Service has scientific evidence that the

17   proposed action is, in fact, necessary to control the spread of

18   insects or disease, based on what would I say, well, that's

19   probably not going to carry the day?

20             MR. BUCHELE:  Your Honor, that's not enough because

21   that's not what the CE says.  If the Forest Service wanted to

22   write a CE that said we can log all 250 acres if necessary for

23   forest health purposes, they should have written that CE.

24   That's not what this one says.  It's got language right in the

25   middle that says when you do that, you have to take out

1    diseased trees or adjacent undiseased trees.  It doesn't say

2    you can go in and just decide you're not going to pay any

3    attention to that and just take out the whole unit.

4            Categorical exclusions --

5            THE COURT:  Just to be clear, the Forest Service as

6    an agency isn't simply saying, well, we just want to take out

7    all these trees.  Their position today is we're taking out the

8    number of trees that scientists who have evaluated the area say

9    is necessary to control for disease or insects.

10           So I'm now supposed to say, well, I know that's --

11   Let me ask you this in stages.  Are you asking me to make any

12   decision based on the assumption that that's going to be shown

13   to be scientifically invalid?

14           MR. BUCHELE:  Our argument here, Your Honor, is not

15   about science.  Our argument is about the language of the

16   categorical exclusion.  Again, if the Forest Service wanted to

17   write a categorical exclusion that basically left it up to

18   their scientists on what needed to be done within a 250-acre

19   area, they could have done that.

20           Categorical exclusions are based on the Forest

21   Service's prior history with similar projects.  They need to be

22   interpreted narrowly with specific language, because they do

23   short circuit the NEPA process.

24           There is nothing in this that says that.  The CE

25   specifically has language in the middle of it that says,

1    "including diseased trees and adjacent healthy trees."  There's

2    no reason to have that language there if it doesn't mean

3    something and it's not a limiting term.

4            THE COURT:  So you define "adjacent" to be near or

5    close to but not necessarily touching?

6            MR. BUCHELE:  Your Honor, I don't think the Court

7    needs to decide what "adjacent" means.

8            THE COURT:  But I do have to decide that.  The Forest

9    Service is saying these are adjacent trees and you're saying

10   they're not adjacent.  I don't know how to get out of that box

11   without deciding what adjacent trees are.

12           MR. BUCHELE:  Your Honor, that's actually not the

13   argument they made.  The argument they made was the whole unit

14   is diseased so we can just take out everything.  But the

15   categorical --

16           THE COURT:  Well, they certainly disagree with your

17   definition of "adjacent."

18           MR. BUCHELE:  They say that language doesn't mean

19   anything, and it's just an example.  That's their argument,

20   Your Honor.

21           And our argument is that language means something and

22   has to be given meaning, and it doesn't mean -- they say that

23   they should be able to log by units or stands under the CE, but

24   again that's not what the CE says.

25           THE COURT:  I want to take up one other issue in the

1    limited time we have left, and that's the balance of equities

2    and hardships.  So I'll just say this about the likelihood of

3    irreparable harm.  So this is really a showing plaintiff has to

4    make.  It's not so much a balancing as whether plaintiff has

5    shown irreparable harm.  And I believe they have here.

6           I do -- I think there are a couple of predicate

7    issues on irreparable harm.  The first that's raised by the

8    government at least is this idea that plaintiff has engaged in

9    delay for the purpose of gaming the system, to gain a tactical

10   advantage.  That's focused on the idea that you knew about this

11   in May and filed a lawsuit in the fall, just on the heels of,

12   you know, upcoming winter, changing the whole game.

13          I've never really gotten from plaintiff an adequate

14   answer to whether you are, in fact, using delay to game the

15   system, but it has precious little to do with irreparable harm

16   anyway.  It doesn't mean it's irrelevant.  The harms are

17   irreparable or not even when someone is gaming the system

18   through delay, but an injunction is an equitable remedy, and

19   you can seek an equitable remedy with unclean hands if it

20   factors in that way.

21          And the second, I think, is I just have to look at

22   this as incremental or marginal harms.  The plaintiffs want to

23   say here is a site and we're entitled enjoy it as it is now,

24   undisturbed by future action.  And that's not quite right

25   because I'm not comparing the site as it is now with the site

1   as it is after it's completely disturbed by this plan and

2   seeing if there's irreparable harm there.  I'm comparing the

3   site as it is following an agreed-upon disturbance of

4   39 percent or so, and then 100 percent disturbance if the whole

5   thing goes into play.

6           So it's a bit of a difference at least.  I'm not sure

7   it matters a lot, but it's not -- it's not status quo ante

8   versus completely after everything is done.  It's rather a

9   comparison between the trees that are going to be taken out

10  near the campsites and roads versus later.  In any event, that

11  still leaves, I think, a substantial number of trees that would

12  be downed.

13          The government has suggested that you can't really

14  make this claim in a managed site.  That is, if you want to say

15  we're entitled to a view of the undisturbed forest, that since

16  this is a previously and continuously managed site, that

17  doesn't quite fit here.  But I don't think plaintiffs in this

18  situation have to show that they are trying to enjoy sort of a

19  primeval forest.  I think you can enjoy a managed forest in its

20  current condition without further cutting and make a claim.

21  All that is by way of my explanation of why I think there's

22  irreparable harm here.

23          The real ballgame is balance of hardships.  The

24  plaintiff doesn't have a lot that it has to offer here.  Its

25  hardship is the same as its irreparable harm, the lost trees.

1          So the Forest Service is the one that has to show,

2     well, this is going to be a hardship on us if we have to wait

3     to see this thing resolved at trial.

4          So if you didn't have to go to trial, then you'd

5     begin right away, and you'd have certain things done,

6     presumably before the campground opens next spring.  If you had

7     to wait until a trial, and you only won this thing in February,

8     then what would the harm be?  How would your view on the ground

9     be different in ways that are harmful to your interests if

10    you -- if I gave an injunction and you couldn't move forward on

11    this project until next spring?

12         MR. TUSTIN:  Yes, Your Honor.  I believe that the

13    declaration of Mr. Slater lays it out well that if we have to

14    wait until February, this project probably cannot be

15    implemented this year -- in fact, it can't be implemented by

16    this year.

17         THE COURT:  What do you mean by "this year"?

18         MR. TUSTIN:  It would not be implemented prior to the

19    campground being opened in May of 2017.

20         THE COURT:  So your first harm is that you might lose

21    the public's access to the campground next year?

22         MR. TUSTIN:  At least, yes.

23         THE COURT:  You think you might lose it for 2018?

24         MR. TUSTIN:  If we prevail next spring, then they

25    could do it and they would be able to open the campground

1   likely --

2         THE COURT:  Well, that's my whole analysis.  It's not

3   what happens after that.  It's what are the shifting positions

4   of the parties after trial.  That's what balance of hardships

5   asks me to look at.

6         So if you have to wait until a trial in February, and

7   you win, what have you lost by not defeating the injunction

8   today?  And one is you might have to close the campground in

9   the spring, summer, and fall of 2017, right?

10         MR. TUSTIN:  Yes.

11         THE COURT:  Not '18?

12         MR. TUSTIN:  Yes.

13         THE COURT:  What else?

14         MR. TUSTIN:  Well -- so the implementation of the

15   project would not be able to be done due to the timing.

16   There's the revenue portion, but that is small, $7,000.  That,

17   frankly, is not important.  We provided that for your

18   information.

19         In addition, the way the contract is structured, it's

20   an integrated resource contract, where the Forest Service is

21   paying the purchaser to -- or the recipient to do this

22   contract.  It is possible the Forest Service could rebid the

23   project, but they have not -- there was only one offer on this

24   one here that it is not certain that the Forest Service would

25   be able to have this done as an integrated resource contract,

1  where the Forest Service is paying approximately $78,000 to the

2  purchaser to remove the timber and to do all of the additional

3  work.  If there was a point in the future, they might be able

4  to, but they may not.  And admittedly, that is speculative, but

5  it is important to know that what we have now is an acceptable

6  way to achieve the Forest Service's management objectives, to

7  provide for a safe recreation environment at minimal cost to

8  taxpayers.

9          THE COURT:  So if you lose that, you're saying you

10  might lose this contractor?

11          MR. TUSTIN:  Yes.

12          THE COURT:  And you'd have to replace this contractor

13  with whom or what?

14          MR. TUSTIN:  Potentially another contractor in 2018,

15  or the same contractor.  But it's not clear this contract would

16  be able to be agreed upon again in 2018.

17          THE COURT:  Why are we talking about 2018?  If you

18  win this case in February, do you turn to this contractor and

19  say, okay, go ahead?

20          MR. TUSTIN:  Well, we would, yes, but he would not be

21  able to do it until the following year, based on his

22  availability of employees or equipment.  So they --

23          THE COURT:  You already know if you can't do it this

24  fall, this person cannot do it in 2017?

25          MR. TUSTIN:  I do not know that for certain.  So the

Supp. Buss Decl. Ex. 1 - pg. 46 of 73

1  contractor could potentially do it in 2017, but again, we've

2  lost the value -- lost a year of recreation.

3        THE COURT:  All right.

4        MR. BUCHELE:  Your Honor, may I respond?

5        THE COURT:  You don't need to.

6        I'll take a brief break and give you my ruling.

7        THE CLERK:  This court is in recess.

8        (A recess is then taken.)

9        THE COURT:  Thank you all for your help with this

10  issue.  I'm sorry we didn't cover all the issues.  There's a

11  limited amount of time and I think we hit the ones I was most

12  concerned about.

13        As you're familiar, there are four factors I need to

14  take into account.  I'm going to work backwards through them.

15        So one is public interest we didn't talk about, and I

16  consider that something of a wash here between the two parties.

17  If I had to evaluate where the public interest falls, there's

18  really a public interest in keeping this campground open and

19  there's a public interest in the nature of the forest that's

20  being managed here, so I consider that something of a wash.

21        And as I said, I believe the plaintiffs have made

22  their showing of the likelihood of irreparable harm to them.

23  So that is a factor that tips in plaintiff's favor.

24        The balance of harms here, balance of equities and

25  hardships, in my view, favors plaintiff.  And so the real

1   question under the *Alliance for Wild Rockies* is does it favor

2   plaintiffs or does it sharply tip in plaintiff's favor.  Here,

3   in my view, it sharply tips in plaintiff's favor.

4           So I'll analyze the remaining factor under that

5   rubric.  So if it sharply tips in plaintiff's favor, the

6   plaintiffs have to have raised serious questions that go to the

7   merits.  And I believe they have done so here on a variety of

8   issues.  I'm not real impressed with the strength of the NFMA

9   argument, given the substantial deference in play and my idea

10  that not much has been shown to make this a true flip-flop, but

11  there are other issues on -- particularly on scoping and the

12  categorical exclusion and its application here or not that I

13  think are, at a minimum, serious questions going to the merits.

14          If I backed up from that and said, well, it's simply

15  that the balance of hardships favors plaintiff here, then

16  they'd have to show likelihood of success on the merits.  And

17  although I'm a little more concerned about that, since I think

18  it's a very close call, I'd grant the injunction on those

19  grounds also, even if I weren't applying the separate rubric of

20  *Alliance for Wild Rockies*.

21          Therefore, I grant the requested injunction sought by

22  plaintiffs in this case.

23          I would like to move expeditiously towards a complete

24  resolution of this matter.  I don't know if that's better done

25  by allowing you some time to meet with each other and propose a

```
1    case schedule or taking that time right now.

2              Do you have a preference from plaintiff?

3              MR. BUCHELE:  Your Honor, I would like to try to work

4    something out with Mr. Tustin, if we can, and do that within a

5    couple of days, I would hope.

6              THE COURT:  Within two weeks from today, I want the

7    parties to submit a joint proposed case management schedule.

8    Joint proposed doesn't mean I'm forcing you to submit a joint

9    schedule.  On anything as to which you disagree, just let me

10   know.  I'll either resolve it or get on the phone with you all

11   and then resolve it, depending on the seriousness of the

12   divergence.

13             Ms. Stephens, that date?

14             THE CLERK:  October 20th.

15             THE COURT:  Anything further from plaintiff today?

16             MR. BUCHELE:  No, thank you, Your Honor.

17             THE COURT:  Anything further from the government?

18             MR. TUSTIN:  No, thank you, Your Honor.

19             THE COURT:  We'll be in recess.

20             THE CLERK:  This court is adjourned.

21             (Proceedings concluded.)

22

23

24

25
```

1

2                              --o0o--

3

4          I certify, by signing below, that the foregoing is a

5    correct transcript of the record of proceedings in the

6    above-entitled cause.  A transcript without an original

7    signature or conformed signature is not certified.

8

9
     /s/Bonita J. Shumway                November 9, 2016
10   _____           _____
     BONITA J. SHUMWAY, CSR, RMR, CRR    DATE
11   Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR. BUCHELE: [28]
3/7 28/24 29/11 29/16
30/7 30/18 30/24 36/6
36/8 36/20 36/24 37/4
37/8 37/17 37/20 37/22
38/2 38/4 38/7 38/15
39/19 40/13 41/5 41/11
41/17 47/3 49/2 49/15
MR. BUSS: [23]  8/7
8/13 9/6 10/18 10/22
11/4 11/18 11/23 12/10
12/20 12/25 21/8 22/1
22/5 22/13 22/16 22/22
23/2 23/24 24/4 24/15
25/2 25/10
MR. TUSTIN: [50]  3/13
13/8 13/11 14/16 15/5
15/8 15/17 16/2 16/13
16/19 16/21 17/11
17/24 18/2 18/13 18/22
19/9 19/21 19/25 20/3
20/22 27/5 27/25 28/5
28/13 32/12 32/15
32/25 33/12 33/16
33/20 34/4 34/10 34/16
34/24 35/4 35/6 35/9
44/11 44/17 44/21
44/23 45/9 45/11 45/13
46/10 46/13 46/19
46/24 49/17
THE CLERK: [4]  3/1
47/6 49/13 49/19
THE COURT: [103]

## $
$7,000 [1]  45/16
$78,000 [1]  46/1

## '
'18 [1]  45/11
'93 [1]  20/10

'94 [1]  5/3
'95 [1]  5/3

## -
--o0o [1]  50/2

## .
.2 [1]  16/8
.2 percent [1]  16/8
.3 [1]  27/3

## /
/s/Bonita [1]  50/9

## 1
10 [1]  10/9
100 [1]  43/4
1000 [1]  2/17
10015 [1]  2/8
1650 [1]  21/15
176 [1]  14/12
176 acres [1]  10/12
176-acre [2]  4/2 8/16
1800 acres [1]  16/7
1989 [2]  5/2 21/13
1993 [3]  9/9 9/13 20/6
1994 [5]  9/12 9/16
 11/25 20/9 20/12
1995 [4]  9/14 9/16 12/1
 20/13

## 2
20044 [1]  2/13
2016 [2]  1/8 50/9
2017 [4]  44/19 45/9
 46/24 47/1
2018 [4]  44/23 46/14
 46/16 46/17
20th [1]  49/14
21 inches [5]  5/4 11/21
 27/15 27/20 28/12
21-inch-or-greater [1]
 26/14

22 [1]  28/9
2224 [1]  2/5
25 feet [2]  23/17 23/18
250 acres [1]  39/22
250-acre [1]  40/18
2:16-cv-01648-MO [1]
 1/5

## 3
3.1 [1]  26/12
3.2 [1]  26/17
300-foot [1]  14/20
301 [1]  2/17
326-8188 [1]  2/18
350 acres [1]  10/14
39 percent [3]  5/14
 18/16 43/4

## 4
40 acres [1]  29/5
411 [1]  2/5

## 5
503 [1]  2/18
5553 [1]  23/12
5th [1]  2/5

## 6
61 [1]  13/15
61 percent [4]  5/21
 14/21 15/22 16/21
6359 [1]  16/25
68.8 acres [1]  21/12
69 acres [1]  5/14

## 7
7611 [1]  2/13

## 8
8188 [1]  2/18

## 9
97045-2224 [1]  2/5
97204 [1]  2/17

**97219 [1]** 2/8

**A**

**able [8]** 13/9 41/23 44/25 45/15 45/25 46/3 46/16 46/21
**about [46]** 4/2 4/15 5/14 5/14 6/14 6/15 7/10 10/14 13/13 13/20 15/21 15/23 16/8 16/25 17/19 19/1 19/2 21/22 24/25 25/6 25/7 26/23 26/25 27/4 27/18 28/11 28/13 32/2 33/2 34/6 34/12 34/21 36/10 36/19 37/20 38/20 38/23 39/3 40/15 40/15 42/2 42/10 46/17 47/12 47/15 48/17
**above [2]** 25/1 50/6
**above-entitled [1]** 50/6
**absence [1]** 37/25
**abstract [3]** 30/16 33/25 34/2
**abuse [1]** 4/24
**acceptable [1]** 46/5
**access [1]** 44/21
**according [1]** 23/9
**account [1]** 47/14
**accumulated [1]** 17/14
**accurate [1]** 23/1
**accurately [1]** 7/6
**achieve [1]** 46/6
**acre [3]** 4/2 8/16 40/18
**acres [9]** 5/14 10/9 10/12 10/14 14/12 16/7 21/12 29/5 39/22
**act [5]** 4/5 4/25 5/11 20/17 39/14
**action [4]** 4/6 25/23

**actions [1]** 26/11
**activities [1]** 26/24
**activity [1]** 26/3
**actually [4]** 26/18 34/17 37/17 41/12
**add [2]** 10/25 12/25
**added [1]** 20/10
**addition [6]** 13/19 14/6 15/4 17/20 20/9 45/19
**additional [3]** 28/9 36/4 46/2
**address [3]** 8/3 9/24 32/6
**addressed [1]** 10/10
**addressing [1]** 31/13
**adequacy [3]** 26/23 26/25 34/22
**adequate [6]** 30/18 34/14 34/23 35/3 37/16 42/13
**adequately [3]** 26/25 34/8 38/1
**adjacent [10]** 39/3 39/9 40/1 41/1 41/4 41/7 41/9 41/10 41/11 41/17
**adjourned [1]** 49/20
**admittedly [1]** 46/4
**adopted [2]** 20/8 20/12
**advanced [1]** 5/25
**advantage [1]** 42/10
**aesthetic [2]** 13/25 15/10
**aesthetics [1]** 35/18
**after [4]** 43/1 43/8 45/3 45/4
**again [8]** 19/10 31/15 32/11 37/13 40/16 41/24 46/16 47/1
**against [1]** 4/6
**agency [2]** 1/8 40/6
**agree [9]** 4/7 5/12

**agreed [2]** 43/3 46/16
**agreed-upon [1]** 43/3
**Agriculture [2]** 1/8 3/17
**ahead [2]** 28/24 46/19
**all [50]** 6/4 8/5 9/2 9/14 10/4 12/17 13/4 13/7 14/4 14/24 16/24 17/10 17/23 19/23 21/6 24/13 25/18 27/1 27/13 27/14 27/22 27/23 28/3 29/12 30/25 32/18 32/24 32/25 33/5 34/16 34/16 34/24 35/4 35/24 36/4 37/15 38/9 38/11 38/12 38/14 38/14 38/19 39/22 40/7 43/21 46/2 47/3 47/9 47/10 49/10
**alleged [1]** 16/23
**Alliance [3]** 4/15 48/1 48/20
**allow [6]** 20/14 20/16 21/4 27/17 32/3 32/3
**allowed [1]** 10/20
**allowing [3]** 5/9 11/11 48/25
**allows [1]** 11/16
**almost [2]** 6/14 38/14
**along [4]** 3/24 11/6 14/25 28/9
**already [1]** 46/23
**also [25]** 2/20 5/6 7/12 9/25 10/13 14/8 14/20 15/1 15/24 16/17 17/13 18/17 19/8 19/15 19/23 25/4 28/7 28/8 33/1 34/10 34/12 35/18 35/25 37/3 48/19
**Also the [1]** 15/24
**although [1]** 48/17

# A

**amended [2]** 5/2 20/14
**amendment [7]** 5/6
10/3 10/14 12/4 20/5
21/2 21/3
**amendments [6]** 9/12
9/15 9/16 10/1 10/9
10/18
**amount [3]** 5/14 17/8
47/11
**ample [1]** 13/17
**analysis [4]** 6/19 11/20
11/23 45/2
**analytically [1]** 11/14
**analyze [1]** 48/4
**analyzed [1]** 39/10
**another [1]** 46/14
**answer [2]** 32/15 42/14
**ante [1]** 43/7
**any [14]** 12/3 16/1 16/1
19/24 24/20 25/3 25/11
27/2 27/25 28/21 36/12
40/2 40/11 43/10
**anything [7]** 8/13 12/25
24/23 41/19 49/9 49/15
49/17
**anyway [1]** 42/16
**anywhere [1]** 25/15
**apologize [1]** 18/14
**APPEARANCES [1]**
2/2
**appearing [1]** 3/9
**appears [1]** 5/8
**applicability [2]** 12/12
16/6
**application [1]** 48/12
**applied [1]** 25/21
**applies [16]** 5/12 6/16
6/23 11/25 13/14 16/24
18/5 18/11 18/12 18/19
18/25 19/1 19/2 19/6

**apply [11]** 6/7 6/20
8/16 11/21 12/15 16/12
16/13 25/17 25/22 31/3
38/24
**applying [1]** 48/19
**approved [1]** 12/9
**approximately [2]**
14/20 46/1
**AR6340 [1]** 15/19
**arbitrary [1]** 25/23
**are [65]**
**area [72]**
**areas [13]** 5/10 6/2 6/3
17/14 18/12 18/18
19/19 20/17 21/18 24/3
24/6 24/24 25/9
**aren't [3]** 15/16 28/18
30/20
**argue [1]** 18/23
**argued [1]** 19/17
**argument [34]** 3/21
3/23 7/5 8/4 8/11 10/16
10/21 11/1 11/5 11/14
13/5 18/8 18/8 20/20
22/19 22/25 24/14 27/2
29/16 29/17 29/18 30/4
30/12 32/11 38/25 39/3
39/5 40/14 40/15 41/13
41/13 41/19 41/21 48/9
**arguments [2]** 26/23
38/23
**arises [1]** 3/25
**around [6]** 4/2 14/21
14/24 24/12 24/13
25/14
**as [53]**
**as to [1]** 18/10
**aside [1]** 9/7
**ask [2]** 33/24 40/11
**asked [3]** 25/7 38/7
39/9

**asking [8]** 6/1 8/3 16/9
25/6 25/7 30/12 37/20
40/11
**asks [1]** 45/5
**assert [1]** 19/23
**asserting [3]** 19/6 19/8
19/19
**assume [2]** 22/11
30/15
**assumption [2]** 6/11
40/12
**at [39]** 2/4 3/22 8/1 8/5
9/2 9/14 13/4 13/21
15/19 16/24 17/18
17/19 18/10 19/8 19/18
19/19 21/15 23/1 23/12
23/15 23/22 27/1 30/25
33/20 34/7 34/14 34/22
36/4 36/16 38/22 39/5
42/8 42/21 43/6 44/3
44/22 45/5 46/7 48/13
**attached [2]** 36/15
36/21
**attempt [3]** 6/5 9/24
13/3
**attendant [1]** 10/4
**attention [1]** 40/3
**Attorney [1]** 2/4
**attractive [1]** 21/19
**August [2]** 36/2 36/2
**authorizing [1]** 4/1
**availability [1]** 46/22
**Ave [1]** 2/17
**aware [3]** 8/10 24/23
25/21
**away [4]** 10/3 23/17
33/7 44/5

# B

**back [2]** 21/13 32/10
**backed [1]** 48/14
**background [2]** 10/4

Document 56-3   Filed 09/10/20   Page 55 of 74

**background... [1]** 20/10

**backwards [1]** 47/14

**balance [8]** 4/11 4/15 42/1 43/23 45/4 47/24 47/24 48/15

**balancing [1]** 42/4

**ballgame [1]** 43/23

**based [4]** 39/18 40/12 40/20 46/21

**bases [2]** 4/3 28/17

**basic [2]** 4/9 4/23

**basically [2]** 26/1 40/17

**Basin [3]** 9/22 12/2 20/24

**basis [5]** 13/17 17/6 19/14 20/18 30/6

**battle [1]** 7/22

**be [59]**

**because [29]** 4/24 9/5 13/3 13/6 14/11 15/9 16/7 17/2 17/12 17/13 18/3 18/20 19/7 19/20 20/25 22/7 23/20 24/6 28/4 28/21 30/25 31/19 33/13 34/11 34/18 37/18 39/20 40/22 42/25

**bed [1]** 5/16

**been [12]** 6/2 9/19 20/10 28/4 29/6 29/7 30/17 32/10 34/10 35/3 38/22 48/10

**before [4]** 1/18 22/24 32/5 44/6

**begin [2]** 13/12 44/5

**beginning [1]** 13/21

**begs [1]** 12/6

**behalf [1]** 3/15

**being [16]** 3/18 4/3 5/16 5/25 9/11 16/1 20/19 23/21 24/6 24/11 26/3 32/13 33/14 35/4 44/19 47/20

**believe [10]** 9/21 20/23 24/18 25/3 28/14 33/3 42/5 44/12 47/21 48/7

**below [1]** 50/4

**best [1]** 6/22

**better [2]** 7/10 48/24

**between [6]** 7/22 17/4 25/8 25/14 43/9 47/16

**beyond [2]** 25/1 34/8

**BIODIVERSITY [3]** 1/4 3/5 3/10

**biological [2]** 14/8 28/19

**bit [4]** 4/8 8/4 39/3 43/6

**block [1]** 36/16

**BLUE [3]** 1/3 3/4 3/10

**Blvd [1]** 2/8

**Bonita [3]** 2/16 50/9 50/10

**both [8]** 3/18 4/5 8/5 9/23 9/24 11/25 18/21 18/25

**box [2]** 2/13 41/10

**break [2]** 8/4 47/6

**brief [8]** 6/7 8/18 10/10 20/6 28/15 33/6 38/20 47/6

**briefed [1]** 28/14

**briefing [1]** 5/23

**briefly [1]** 21/8

**briefs [2]** 9/23 38/22

**broad [2]** 7/3 19/24

**Buchele [2]** 2/7 3/9

**buffer [2]** 14/21 39/8

**bunch [1]** 38/13

**burden [2]** 21/7 31/21

**bushes [1]** 35/17

**Buss [3]** 2/4 3/11 31/17

**but [83]**

**button [2]** 14/15 14/16

**C**

**call [8]** 4/19 5/13 5/20 6/2 16/21 22/4 29/13 48/18

**called [2]** 29/14 38/22

**calling [1]** 29/9

**campground [25]** 5/13 6/2 9/11 9/18 13/16 14/19 14/22 14/23 17/4 17/17 18/4 18/11 18/16 19/18 19/19 21/12 22/7 24/3 25/15 44/6 44/19 44/21 44/25 45/8 47/18

**campgrounds [1]** 20/8

**campsite [1]** 36/16

**campsites [1]** 43/10

**can [20]** 3/7 5/5 5/6 7/17 7/17 13/11 14/14 14/15 15/1 16/12 16/17 19/1 25/9 35/19 39/22 40/2 41/14 42/19 43/19 49/4

**can't [3]** 43/13 44/15 46/23

**cannot [3]** 27/19 44/14 46/24

**capacity [1]** 1/11

**capricious [1]** 25/24

**care [1]** 36/19

**carefully [1]** 8/13

**carry [1]** 39/19

**case [15]** 1/5 3/3 3/25 4/14 5/7 7/7 7/23 7/25 31/19 37/13 37/20 46/18 48/22 49/1 49/7

**cases [3]** 9/25 10/7 39/13

**categorical [14]** 25/22

**categorical... [13]** 25/25 27/5 28/15 28/17 29/22 38/21 39/1 40/4 40/16 40/17 40/20 41/15 48/12
**cause [1]** 50/6
**CE [6]** 39/21 39/22 39/23 40/24 41/23 41/24
**Center [1]** 2/7
**centers [1]** 23/14
**Central [1]** 4/3
**certain [5]** 20/15 33/7 44/5 45/24 46/25
**certainly [5]** 6/7 24/19 30/9 39/13 41/16
**certified [1]** 50/7
**certify [1]** 50/4
**cetera [1]** 26/8
**chance [2]** 12/23 29/21
**chances [1]** 23/20
**changing [1]** 42/12
**characterize [1]** 22/14
**Charles [1]** 2/7
**CHIEF [1]** 1/19
**Chillemi [2]** 2/20 3/11
**circuit [3]** 7/6 39/6 40/23
**circumstances [2]** 20/15 28/18
**cited [2]** 7/1 9/23
**cites [3]** 6/17 7/6 8/20
**City [1]** 2/5
**claim [5]** 25/9 25/9 27/7 43/14 43/20
**claiming [2]** 31/16 34/23
**claims [2]** 4/4 25/23
**clarified [2]** 33/1 33/2
**clear [10]** 14/16 15/2

15/7 18/15 19/17 32/17 32/21 36/17 40/5 46/15
**clearcut [8]** 29/5 34/3 37/11 37/14 37/17 38/1 38/4 38/6
**clearcutting [14]** 24/19 26/8 29/3 29/11 29/12 29/15 32/3 32/9 32/12 33/3 33/11 33/13 33/20 34/1
**clearly [5]** 8/17 13/14 18/10 27/12 29/19
**client [3]** 31/2 31/6 32/5
**client's [1]** 37/2
**clients [1]** 30/10
**close [3]** 41/5 45/8 48/18
**closer [1]** 23/18
**clue [1]** 30/5
**clumps [5]** 33/7 33/19 35/2 35/6 35/12
**co [1]** 3/11
**co-counsel [1]** 3/11
**coherent [1]** 11/14
**come [1]** 32/10
**comes [1]** 29/18
**comment [1]** 36/3
**commented [1]** 28/7
**comments [8]** 27/18 29/7 33/21 34/19 34/20 34/21 36/1 36/1
**comparing [2]** 42/25 43/2
**comparison [1]** 43/9
**competing [2]** 7/15 7/23
**complaints [1]** 26/25
**complete [3]** 37/7 37/9 48/23
**completely [4]** 11/12 20/24 43/1 43/8

**comply [2]** 29/19 31/25
**component [1]** 19/15
**conceivably [1]** 16/12
**concerned [2]** 47/12 48/17
**concerns [2]** 28/7 28/11
**concession [9]** 13/16 14/19 14/22 15/21 15/22 17/5 17/17 18/4 18/16
**concluded [1]** 49/21
**condition [1]** 43/20
**conflated [1]** 21/10
**conformed [1]** 50/7
**confused [1]** 21/10
**conifer [1]** 35/11
**consider [2]** 47/16 47/20
**constitute [1]** 23/20
**consult [1]** 26/20
**consultation [1]** 28/20
**contain [1]** 20/7
**contends [1]** 6/22
**contention [1]** 32/23
**context [4]** 11/6 11/7 12/15 37/18
**continuously [1]** 43/16
**contract [5]** 45/19 45/20 45/22 45/25 46/15
**contractor [6]** 46/10 46/12 46/14 46/15 46/18 47/1
**contrary [1]** 10/13
**control [3]** 39/11 39/17 40/9
**core [2]** 22/12 24/2
**corporation [1]** 1/4
**correct [5]** 19/22 27/25 28/1 37/8 50/5
**correctly [1]** 10/6

Supp. Buss Decl. Ex. 1 - pg. 55 of 73

# C

**cost [1]** 46/7
**could [7]** 10/3 10/5 10/7 40/19 44/25 45/22 47/1
**couldn't [1]** 44/10
**Coulter's [1]** 17/18
**counsel [4]** 3/7 3/11 3/16 39/14
**couple [4]** 35/23 38/16 42/6 49/5
**course [2]** 10/23 11/6
**court [8]** 1/1 1/19 2/16 9/22 41/6 47/7 49/20 50/11
**Courthouse [1]** 2/16
**courts [1]** 39/14
**cover [5]** 7/3 19/24 22/15 22/17 47/10
**covered [1]** 5/24
**covers [1]** 22/6
**creating [1]** 39/8
**Crooked [1]** 1/9
**CRR [2]** 2/16 50/10
**CSR [2]** 2/16 50/10
**current [4]** 7/18 7/25 20/21 43/20
**cutoff [1]** 34/19
**cutting [1]** 43/20
**cv [2]** 1/5 3/4

# D

**date [3]** 34/19 49/13 50/10
**day [1]** 39/19
**days [1]** 49/5
**DC [1]** 2/13
**de [5]** 10/12 10/16 10/21 10/24 33/19
**de minimus [1]** 10/21
**deadline [1]** 34/20

**decent [1]** 6/7
**decide [3]** 40/2 41/7 41/8
**deciding [1]** 41/11
**decision [22]** 4/1 4/23 5/15 8/20 8/20 10/24 13/16 15/15 16/18 16/25 17/2 19/14 24/4 25/23 28/20 32/16 33/2 33/6 34/1 34/5 34/15 40/12
**declaration [3]** 17/18 17/19 44/13
**declarations [2]** 17/15 17/16
**deem [1]** 17/24
**defeating [1]** 45/7
**defendant [2]** 9/23 21/10
**defendants [4]** 1/12 2/11 3/15 10/11
**DEFENDERS [3]** 1/3 3/4 3/10
**DEFENDERS/BLUE [3]** 1/3 3/4 3/10
**deference [7]** 7/8 7/13 7/19 7/21 7/25 8/25 48/9
**define [1]** 41/4
**defines [1]** 21/13
**definition [1]** 41/17
**definitions [1]** 7/23
**degree [4]** 4/17 14/7 14/10 15/14
**delay [3]** 42/9 42/14 42/18
**demand [2]** 14/7 14/10
**dense [1]** 17/13
**Department [3]** 1/8 2/11 3/17
**depending [1]** 49/11
**depends [1]** 37/23

**depress [1]** 14/4
**described [5]** 6/3 33/19 34/8 37/10 37/11
**describes [2]** 23/13 34/1
**describing [1]** 34/23
**description [6]** 26/3 26/23 27/1 35/3 37/7 37/9
**descriptions [1]** 6/9
**descriptive [1]** 6/5
**designated [1]** 21/11
**designation [3]** 24/11 24/25 27/10
**designed [1]** 12/15
**determine [1]** 23/10
**determined [2]** 13/18 39/10
**developed [19]** 13/22 13/24 14/7 14/10 14/24 15/11 16/4 16/7 16/11 16/15 17/7 18/20 21/14 21/15 21/18 21/20 23/21 25/14 35/19
**developing [1]** 29/24
**develops [1]** 17/3
**deviation [2]** 12/3 12/8
**did [15]** 8/23 9/13 9/23 11/24 13/3 27/17 27/18 28/19 30/9 31/20 32/11 34/18 36/2 37/3 38/17
**didn't [14]** 9/20 13/1 26/20 27/24 30/21 31/12 31/22 37/14 37/17 37/19 38/10 44/4 47/10 47/15
**difference [2]** 11/19 43/6
**different [4]** 21/17 30/12 31/2 44/9
**difficult [1]** 24/21
**digging [1]** 13/13

Supp. Buss Decl. Ex. 1 - pg. 56 of 73

# D

**direct [2]** 14/3 14/18
**direction [1]** 15/9
**disagree [2]** 41/16 49/9
**disagreed [1]** 28/10
**disagrees [1]** 6/25
**disclose [2]** 26/5 26/13
**disclosed [2]** 27/6
36/12
**disclosure [2]** 27/16
27/21
**discretion [1]** 4/24
**discussed [6]** 13/12
14/9 20/6 20/16 33/5
36/12
**discusses [4]** 15/18
15/19 28/20 33/6
**disease [6]** 11/18 14/5
39/11 39/12 39/18 40/9
**diseased [3]** 40/1 41/1
41/14
**dispute [3]** 6/14 6/15
7/9
**disputed [2]** 24/18
24/19
**distinct [1]** 21/14
**distinction [3]** 17/4
25/11 25/13
**distinguishable [1]**
20/25
**district [7]** 1/1 1/2 1/9
1/19 2/16 17/20 39/14
**disturbance [2]** 43/3
43/4
**disturbed [1]** 43/1
**divergence [1]** 49/12
**diversity [2]** 33/7 35/2
**dividing [1]** 25/8
**Division [1]** 2/12
**do [42]** 3/22 8/17 10/7
11/21 15/17 20/20 22/7

23/24 24/2 24/9 24/14
24/17 24/18 28/19
29/11 31/7 31/19 31/22
31/22 31/25 32/7 33/9
35/9 35/15 38/8 39/25
40/22 41/8 42/6 42/15
44/17 44/25 45/21 46/2
46/18 46/21 46/23
46/24 46/25 47/1 49/2
49/4
**document [1]** 23/10
**does [9]** 6/8 20/7 22/15
22/17 30/16 34/6 34/18
48/1 48/2
**doesn't [11]** 10/24 24/6
25/16 40/1 41/2 41/18
41/22 42/16 43/17
43/24 49/8
**doing [4]** 10/3 29/13
34/8 35/8
**don't [23]** 5/25 6/4 7/20
8/4 8/12 17/16 20/16
21/23 23/19 24/5 24/8
25/3 25/11 25/17 28/14
30/19 31/3 38/5 41/6
41/10 43/17 47/5 48/24
**done [12]** 10/5 21/2
21/21 35/8 40/18 40/19
43/8 44/5 45/15 45/25
48/7 48/24
**doubt [1]** 10/16
**Doug [3]** 8/22 32/24
33/15
**Doug-fir [2]** 8/22 33/15
**Doug-firs [1]** 32/24
**Douglas [2]** 32/21
36/17
**Douglas-fir [2]** 32/21
36/17
**down [3]** 3/24 15/5
34/22
**downed [1]** 43/12

**draft [1]** 31/10
**dramatic [1]** 35/22
**drawn [1]** 14/13
**due [1]** 45/15

# E

**each [3]** 4/18 4/22
48/25
**earlier [2]** 7/18 38/25
**Earthrise [1]** 2/7
**EAs [2]** 11/25 31/10
**easily [1]** 29/1
**Eastern [1]** 30/2
**Eastside [30]** 5/3 5/5
6/21 7/3 9/9 11/7 11/9
11/20 12/1 12/1 12/10
12/12 12/13 12/14 17/1
20/5 21/1 21/4 21/25
25/16 26/10 26/13 27/9
27/19 29/19 30/2 30/7
30/23 30/24 31/1
**effect [1]** 7/7
**EIS [1]** 20/24
**EISes [1]** 31/10
**either [2]** 9/16 49/10
**elements [1]** 4/19
**else [1]** 45/13
**elsewhere [1]** 16/6
**emphasis [1]** 13/23
**emphasize [1]** 3/20
**employees [1]** 46/22
**endangered [1]** 28/21
**engage [1]** 34/1
**engaged [1]** 42/8
**enhancement [1]** 29/6
**enjoy [5]** 17/17 35/18
42/23 43/18 43/19
**enough [7]** 7/3 19/24
28/4 28/4 30/5 39/16
39/20
**entailed [1]** 9/20
**entire [25]** 5/24 6/7

# E

**entire... [23]** 8/16 13/14
14/24 15/20 15/21 16/8
17/5 17/15 17/19 17/21
17/24 18/13 18/18
18/22 19/13 19/20
19/21 19/25 22/21
22/22 23/2 24/25 31/16
**entirely [3]** 13/22 16/4
17/25
**entitled [4]** 7/7 42/23
43/15 50/6
**environment [2]** 2/12
46/7
**equal [1]** 5/4
**equipment [1]** 46/22
**equitable [2]** 42/18
42/19
**equities [3]** 4/11 42/1
47/24
**error [1]** 34/4
**ESA [1]** 28/25
**especially [1]** 31/23
**essentially [1]** 26/23
**established [3]** 5/5
15/2 15/7
**et [1]** 26/8
**et cetera [1]** 26/8
**evaluate [1]** 47/17
**evaluated [1]** 40/8
**evaluation [2]** 14/8
28/19
**even [9]** 7/10 9/3 9/23
21/13 26/11 35/2 37/16
42/17 48/19
**event [2]** 19/24 43/10
**ever [3]** 11/13 32/11
32/12
**everything [5]** 18/19
21/20 33/3 41/14 43/8
**evidence [8]** 24/20

24/23 25/5 31/6 31/18
32/2 36/11 39/19
**evident [1]** 17/5
**exactly [1]** 37/13
**example [1]** 41/19
**exceed [1]** 30/2
**exception [55]**
**exceptions [14]** 5/9
9/14 12/19 17/1 19/11
26/12 26/14 27/19
27/25 29/20 30/14 31/3
31/25 32/2
**excess [2]** 5/4 30/9
**exclusion [11]** 25/22
25/25 27/5 28/15 29/22
38/21 38/24 39/1 40/16
40/17 48/12
**exclusions [4]** 26/11
28/17 40/4 40/20
**exclusive [1]** 32/6
**excuse [3]** 8/9 28/16
31/23
**exempt [2]** 10/12 17/1
**exist [1]** 10/24
**existing [1]** 5/1
**expand [2]** 9/17 35/19
**expeditiously [1]** 48/23
**experiences [1]** 14/2
**explain [4]** 13/3 31/12
37/19 38/2
**explained [1]** 32/19
**explaining [1]** 31/2
**explains [1]** 9/10
**explanation [2]** 13/3
43/21
**explanations [1]** 12/24
**explicitly [4]** 8/18
12/21 20/14 27/7
**express [1]** 28/11
**expressed [1]** 28/7
**extend [1]** 8/23
**extensive [1]** 24/17

**extent [2]** 22/6 32/20
**extraordinary [1]** 28/18
**extrapolate [1]** 30/14

# F

**F13 [3]** 13/24 16/6
21/13
**F220 [1]** 14/20
**face [1]** 9/6
**facilities [2]** 13/25
15/11
**fact [13]** 8/3 9/16 17/7
17/14 23/1 24/18 26/9
28/2 33/25 38/10 39/17
42/14 44/15
**facto [1]** 33/19
**factor [6]** 16/2 16/3
16/9 16/10 47/23 48/4
**factors [2]** 42/20 47/13
**factors: [1]** 4/9
**factors: the [1]** 4/9
**facts [5]** 24/9 24/15
30/19 30/20 37/23
**factual [2]** 23/3 25/6
**factually [1]** 23/1
**failing [3]** 30/6 30/13
30/22
**failure [7]** 20/17 23/16
23/17 23/19 26/4 26/13
26/19
**fair [1]** 24/12
**fall [5]** 23/22 24/2
42/11 45/9 46/24
**falling [2]** 17/11 17/13
**falls [1]** 47/17
**familiar [1]** 47/13
**far [4]** 5/15 22/9 24/14
25/1
**fatal [1]** 38/1
**favor [7]** 4/12 4/16
47/23 48/1 48/2 48/3
48/5

# F

**favors [2]** 47/25 48/15
**February [4]** 44/7
44/14 45/6 46/18
**federal [1]** 3/15
**feet [2]** 23/17 23/18
**field [4]** 23/7 36/2
36/10 36/12
**figure [1]** 30/16
**filed [1]** 42/11
**fine [1]** 13/11
**finger [1]** 14/17
**fir [16]** 8/21 8/22 32/21
32/21 33/8 33/15 33/17
33/18 34/16 34/24
36/17 36/17 38/9 38/10
38/12 38/14
**firs [3]** 32/24 32/24
33/5
**first [13]** 4/21 4/23 5/9
8/6 8/7 13/20 19/5
22/24 26/22 27/4 35/22
42/7 44/20
**Fish [1]** 26/20
**fit [1]** 43/17
**flag [1]** 28/3
**flip [5]** 7/15 7/18 7/19
7/24 48/10
**flip-flop [4]** 7/15 7/19
7/24 48/10
**flop [4]** 7/15 7/19 7/24
48/10
**focus [3]** 29/25 29/25
30/13
**focused [2]** 37/1 42/10
**follow [3]** 30/6 30/22
31/1
**following [2]** 43/3
46/21
**foot [1]** 14/20
**forbidding [1]** 5/3

**forcing [1]** 49/8
**foregoing [1]** 50/4
**forest [130]**
**forests [1]** 30/2
**form [1]** 26/7
**forward [2]** 21/5 44/10
**four [3]** 4/9 4/18 47/13
**fourth [1]** 20/9
**frankly [1]** 45/17
**freely [1]** 15/16
**fuel [1]** 17/13
**full [2]** 11/20 11/23
**full-on [1]** 11/23
**fully [1]** 28/14
**further [5]** 33/7 36/3
43/20 49/15 49/17
**furthermore [1]** 20/13
**future [3]** 35/17 42/24
46/3

# G

**gain [1]** 42/9
**game [2]** 42/12 42/14
**gaming [2]** 42/9 42/17
**gave [2]** 37/22 44/10
**General [1]** 3/16
**generally [1]** 25/8
**get [12]** 4/19 7/20 7/20
19/16 22/24 26/15
29/25 34/7 34/14 34/22
41/10 49/10
**gets [2]** 7/25 29/21
**give [4]** 7/19 25/19
29/1 47/6
**given [3]** 24/10 41/22
48/9
**gives [1]** 7/1
**glancingly [1]** 26/18
**gloss [1]** 4/14
**go [11]** 3/24 10/22 19/1
21/4 25/15 25/15 28/24
40/2 44/4 46/19 48/6

**goal [1]** 18/4
**goes [2]** 11/6 43/5
**going [20]** 3/22 6/11
7/19 21/13 29/1 29/5
29/20 30/8 31/24 32/6
32/17 34/3 35/22 39/19
40/2 40/12 43/9 44/2
47/14 48/13
**good [5]** 3/8 3/13 3/14
5/15 6/8
**goodness [1]** 4/7
**got [2]** 7/10 39/24
**gotten [2]** 10/3 42/13
**government [4]** 25/7
42/8 43/13 49/17
**government's [1]**
22/19
**grab [1]** 14/13
**grand [6]** 8/21 32/21
32/24 33/17 33/18
36/17
**grant [2]** 48/18 48/21
**Grassland [1]** 1/10
**great [1]** 9/19
**greater [5]** 23/16 26/14
27/14 27/20 28/12
**green [1]** 14/14
**ground [1]** 44/8
**grounds [2]** 11/12
48/19
**groups [1]** 33/9
**growth [4]** 11/10 11/21
12/14 20/16
**guess [3]** 5/16 26/12
32/10
**guide [2]** 8/12 23/7

# H

**had [16]** 9/16 12/23
21/2 28/10 29/6 30/6
30/17 30/23 31/6 31/7
31/18 32/1 32/5 32/22

**had... [2]** 44/6 47/17
**half [1]** 11/5
**hands [1]** 42/19
**happen [2]** 9/20 26/21
**happened [1]** 32/5
**happening [3]** 23/5 33/4 33/20
**happens [1]** 45/3
**hardship [2]** 43/25 44/2
**hardships [6]** 4/16 42/2 43/23 45/4 47/25 48/15
**hardwoods [1]** 35/16
**harm [11]** 4/11 42/3 42/5 42/7 42/15 43/2 43/22 43/25 44/8 44/20 47/22
**harmful [1]** 44/9
**harms [3]** 42/16 42/22 47/24
**Harris [1]** 3/16
**Harrison [1]** 2/20
**harvest [3]** 38/22 38/25 39/7
**harvesting [3]** 5/9 21/18 27/22
**has [25]** 4/19 7/12 8/1 9/9 10/17 12/19 16/6 21/10 26/1 26/12 26/22 32/4 38/21 39/6 39/16 40/25 41/22 42/3 42/4 42/8 42/15 43/13 43/24 44/1 48/10
**hasn't [1]** 27/1
**have [70]**
**having [1]** 39/9
**hazard [6]** 9/11 9/18 22/7 23/7 23/10 23/13
**Hazard-Tree [1]** 23/7

**he [1]** 46/20
**head [1]** 8/5
**headed [2]** 18/8 19/4
**health [72]**
**healthful [2]** 13/25 15/10
**healthy [2]** 21/22 41/1
**hear [2]** 13/10 13/11
**heard [1]** 30/4
**hearing [2]** 1/16 3/3
**heavily [1]** 34/13
**heels [1]** 42/11
**help [2]** 3/23 47/9
**here [42]** 3/18 4/4 4/8 5/17 5/23 7/5 10/12 12/7 13/10 14/20 14/22 14/25 14/25 15/5 16/3 20/19 21/2 24/22 26/21 28/15 28/18 29/1 31/18 32/1 32/7 33/4 34/15 38/24 40/14 42/5 42/23 43/17 43/22 43/24 45/24 47/16 47/20 47/24 48/2 48/7 48/12 48/15
**high [1]** 23/19
**higher [1]** 25/4
**highest [2]** 14/7 14/10
**highly [2]** 13/23 24/19
**hint [1]** 10/11
**his [2]** 1/11 46/21
**historical [3]** 7/1 12/18 12/24
**history [4]** 9/5 9/7 20/5 40/21
**hit [1]** 47/11
**holding [1]** 3/21
**Honor [45]** 3/2 3/8 3/14 8/8 9/7 10/19 10/23 11/6 11/19 12/11 12/22 13/1 13/9 22/7 22/23 23/3 23/25 24/5 24/16

24/25 25/4 25/12 28/25 29/3 29/15 29/19 30/20 30/25 31/4 31/19 36/7 37/10 37/12 37/18 37/24 39/20 40/14 41/6 41/12 41/20 44/12 47/4 49/3 49/16 49/18
**HONORABLE [1]** 1/18
**hope [2]** 35/15 49/5
**hopes [1]** 3/22
**host [2]** 27/12 32/18
**how [20]** 6/19 8/13 14/9 14/9 15/8 16/11 19/1 19/2 20/6 20/16 23/24 24/2 28/20 31/12 31/13 34/6 35/19 36/18 41/10 44/8
**However [2]** 8/18 12/11
**human [5]** 17/11 18/22 22/4 22/21 23/1
**hypothetical [1]** 37/22

**I**

**I'd [4]** 3/19 4/18 13/19 48/18
**I'll [16]** 4/22 5/13 5/20 6/1 8/3 8/7 8/12 13/12 14/17 21/7 25/19 27/4 42/2 47/6 48/4 49/10
**I'm [29]** 3/10 3/22 6/11 7/18 10/15 10/15 11/13 16/9 18/25 19/17 24/22 25/6 25/7 26/17 29/1 30/12 34/21 34/22 37/3 37/20 40/10 42/25 43/2 43/6 47/10 47/14 48/8 48/17 49/8
**I've [3]** 11/13 31/10 42/13
**idea [5]** 4/25 31/7 42/8 42/10 48/9
**Identification [1]** 23/7

**I**

if [68]
ignore [1] 14/14
impact [2] 26/3 35/21
impacted [2] 15/15
26/5
impacts [1] 9/19
implementation [1]
45/14
implemented [3] 44/15
44/15 44/18
implicitly [1] 12/21
important [2] 45/17
46/5
impressed [1] 48/8
improper [2] 25/24
26/2
improve [1] 12/15
improved [1] 4/3
in [191]
inadequate [5] 26/2
26/15 30/16 34/2 34/10
inadequately [1] 30/15
inadvertently [1] 14/14
inappropriate [1] 25/25
inch [1] 26/14
inches [5] 5/4 11/21
27/15 27/20 28/12
incidents [2] 25/5 25/7
include [1] 14/3
included [1] 24/16
including [8] 5/2 11/2
13/15 15/22 21/14
23/13 26/4 41/1
inconsistent [2] 7/20
20/21
incorporated [1] 9/13
increase [1] 9/19
incredible [1] 31/21
incremental [1] 42/22
indeed [1] 27/17

independent [1] 35/2
indicate [2] 17/15
27/22
indicates [1] 11/3
infected [2] 23/17
34/13
inference [4] 5/22 6/8
24/12 38/12
inferred [2] 8/16 8/17
infestation [1] 8/22
influence [3] 21/16
21/20 25/14
information [3] 10/5
20/11 45/18
informed [1] 38/14
initial [1] 18/10
injunction [10] 1/16
4/8 4/12 4/20 23/6
42/18 44/10 45/7 48/18
48/21
injunctive [1] 4/6
insects [4] 14/5 39/11
39/18 40/9
instructions [1] 27/10
integrated [2] 45/20
45/25
intended [2] 9/17 31/12
intent [1] 9/13
intention [1] 26/13
interest [5] 4/13 47/15
47/17 47/18 47/19
interested [1] 28/3
interests [1] 44/9
internally [2] 29/14
37/10
interpret [1] 11/10
interpretation [5] 7/8
9/2 9/8 9/21 13/4
interpretations [1]
7/15
interpreted [2] 12/2
40/22

interpreting [1] 9/6
into [6] 13/13 22/24
27/9 35/19 43/5 47/14
introduce [1] 3/7
invalid [1] 40/13
invites [1] 25/12
involve [1] 4/14
involved [1] 10/1
involvement [1] 29/21
irrelevant [1] 42/16
irreparable [10] 4/11
42/3 42/5 42/7 42/15
42/17 43/2 43/22 43/25
47/22
is [219]
is how [1] 36/18
isn't [8] 12/7 18/1
22/13 30/7 33/19 37/13
38/1 40/6
issue [12] 21/23 21/24
23/4 27/2 29/1 29/2
29/7 32/6 32/10 38/20
41/25 47/10
issues [6] 4/18 30/1
42/7 47/10 48/8 48/11
issuing [1] 4/1
it [113]
it's [42] 4/8 5/6 6/5
6/14 7/22 9/5 9/6 14/11
15/20 15/21 16/22 17/1
18/20 19/19 21/7 24/11
24/21 26/18 32/10
34/11 34/23 35/4 36/17
36/23 36/25 39/2 39/24
41/3 41/19 42/4 42/16
43/1 43/6 43/7 43/7
43/8 45/2 45/3 45/19
46/15 48/14 48/18
its [18] 6/19 7/2 7/8 7/8
7/16 7/16 7/25 9/6 9/23
9/24 11/25 24/11 26/13
39/5 43/19 43/24 43/25

**its... [1]** 48/12
**itself [5]** 9/8 11/7 21/13
25/2 25/12

# J

**Jess [1]** 3/11
**Jesse [1]** 2/4
**job [1]** 6/8
**John [2]** 2/11 3/15
**joined [1]** 3/10
**joint [3]** 49/7 49/8 49/8
**JUDGE [4]** 1/19 8/14
13/12 21/9
**just [40]** 3/20 4/22 5/13
6/4 7/22 8/5 10/17 12/6
13/11 14/17 15/17
15/20 16/23 17/10 19/9
19/16 21/10 24/13
26/18 28/6 31/23 32/4
33/19 33/24 34/2 34/9
34/9 36/1 36/14 38/7
40/2 40/3 40/5 40/6
41/14 41/19 42/2 42/11
42/21 49/9
**Justice [1]** 2/11
**justification [2]** 8/19
8/23
**justified [1]** 8/24

# K

**keeping [1]** 47/18
**key [1]** 7/5
**kind [2]** 11/18 32/4
**knew [2]** 30/8 42/10
**know [19]** 5/25 6/4
22/4 23/24 24/2 24/5
24/8 28/5 33/2 38/12
39/7 40/10 41/10 42/12
46/5 46/23 46/25 48/24
49/10

# L

**labeled [1]** 20/18
**Lake [1]** 4/2
**laminated [2]** 23/14
35/19
**language [9]** 22/8 26/7
39/24 40/15 40/22
40/25 41/2 41/18 41/21
**larch [4]** 35/10 35/12
35/16 35/24
**large [3]** 17/8 20/17
20/19
**largely [1]** 14/19
**larger [4]** 6/20 11/7
11/16 35/17
**largest [1]** 8/22
**last [3]** 12/17 36/9
38/20
**later [1]** 43/10
**law [6]** 2/4 2/7 3/11
4/25 7/7 39/6
**lawsuit [1]** 42/11
**lays [1]** 44/13
**LEAGUE [3]** 1/3 3/4 3/9
**learn [1]** 15/17
**least [9]** 8/1 18/10
23/15 33/20 38/22 39/5
42/8 43/6 44/22
**leaves [1]** 43/11
**leaving [2]** 33/6 33/14
**left [7]** 35/2 35/6 35/9
35/9 35/10 40/17 42/1
**legitimately [1]** 25/9
**length [1]** 3/22
**let [5]** 14/13 21/7 33/24
40/11 49/9
**let's [7]** 8/5 9/4 15/5
22/11 25/19 29/25
30/15
**letter [2]** 20/7 20/10
**level [1]** 23/15

**like [7]** 3/19 4/18 5/19
13/19 35/25 48/23 49/3
**likelihood [8]** 4/10 4/10
4/21 8/2 38/20 42/2
47/22 48/16
**likely [1]** 45/1
**limitation [1]** 11/3
**limitations [3]** 8/10
30/3 35/18
**limited [11]** 8/11 9/11
11/25 15/20 16/16
17/16 18/4 20/7 26/4
42/1 47/11
**limiting [5]** 16/2 16/3
16/9 16/10 41/3
**limits [2]** 8/9 11/15
**line [1]** 25/8
**list [1]** 32/1
**little [4]** 4/8 16/6 42/15
48/17
**live [1]** 23/13
**load [1]** 17/13
**located [3]** 13/21 16/4
16/14
**log [5]** 26/14 27/19
30/8 39/22 41/23
**logging [9]** 4/1 5/3 5/9
5/15 11/11 11/15 21/17
23/5 28/9
**long [1]** 7/11
**look [2]** 42/21 45/5
**Lookout [1]** 1/10
**lose [5]** 7/13 44/20
44/23 46/9 46/10
**lost [4]** 43/25 45/7 47/2
47/2
**lot [6]** 13/12 31/9 31/10
37/1 43/7 43/24
**lots [2]** 6/9 31/6
**low [1]** 23/16

**MA-F13 [3]** 13/24 16/6 21/13

**made [6]** 30/17 30/23 38/25 41/13 41/13 47/21

**main [7]** 4/18 7/5 11/1 22/19 24/21 30/4 39/5

**maintaining [2]** 21/19 21/22

**majority [1]** 33/8

**make [10]** 10/16 10/20 20/20 30/17 30/22 40/11 42/4 43/14 43/20 48/10

**managed [4]** 43/14 43/16 43/19 47/20

**management [10]** 4/5 4/25 5/11 6/20 16/5 16/5 16/11 18/5 46/6 49/7

**Manual [1]** 23/9

**many [3]** 29/7 29/7 35/11

**map [1]** 14/13

**maps [1]** 24/16

**marginal [1]** 42/22

**markings [1]** 14/14

**matter [1]** 48/24

**matters [1]** 43/7

**may [12]** 4/14 4/14 14/13 20/10 20/11 25/15 30/14 36/7 42/11 44/19 46/4 47/4

**me [15]** 3/15 8/9 13/10 14/13 15/17 16/10 16/17 19/5 21/9 28/16 33/24 40/11 40/11 45/5 49/9

**mean [11]** 10/15 10/18 25/16 29/11 38/14 41/2

41/18 41/22 42/16 44/17 49/8

**meaning [2]** 12/9 41/22

**means [8]** 6/14 6/15 22/11 39/1 39/2 39/4 41/7 41/21

**meant [1]** 26/7

**medium [1]** 23/17

**meet [1]** 48/25

**meeting [1]** 21/21

**memo [15]** 4/1 5/15 8/20 8/20 10/25 13/16 16/18 16/25 24/4 28/20 33/2 33/6 34/1 34/5 34/15

**mentioned [4]** 13/21 26/19 26/19 35/12

**menu [1]** 14/15

**mere [1]** 37/25

**merits [7]** 4/10 4/17 4/21 8/2 48/7 48/13 48/16

**met [1]** 26/11

**methods [1]** 14/4

**MICHAEL [1]** 1/18

**microphone [1]** 13/10

**mid [1]** 36/2

**middle [2]** 39/25 40/25

**might [14]** 3/23 4/19 5/23 16/12 23/22 24/1 24/1 30/20 38/12 44/20 44/23 45/8 46/3 46/10

**Miller's [1]** 17/19

**mingled [1]** 16/22

**minimal [1]** 46/7

**minimum [1]** 48/13

**minimus [4]** 10/12 10/16 10/21 10/24

**misleading [2]** 26/6 38/18

**misunderstood [1]** 18/7

**Mitigation [1]** 23/8

**MO [2]** 1/5 3/4

**modifies [1]** 17/3

**modify [3]** 5/10 9/13 18/11

**moment [1]** 9/8

**more [7]** 29/7 30/1 35/16 36/19 37/7 37/9 48/17

**morning [3]** 3/8 3/13 3/14

**MOSMAN [1]** 1/18

**most [8]** 12/16 13/22 33/4 33/5 33/14 35/23 39/6 47/11

**mostly [1]** 38/10

**MOUNTAIN [2]** 1/3 1/10

**Mountains [2]** 3/5 3/10

**move [2]** 44/10 48/23

**Mr [3]** 2/4 2/7 2/11

**Mr. [5]** 17/20 31/17 36/9 44/13 49/4

**Mr. Buss [1]** 31/17

**Mr. Slater [2]** 17/20 44/13

**Mr. Tustin [1]** 49/4

**Mr. Tustin's [1]** 36/9

**Ms [2]** 2/20 2/20

**Ms. [3]** 17/18 17/19 49/13

**Ms. Coulter's [1]** 17/18

**Ms. Miller's [1]** 17/19

**Ms. Stephens [1]** 49/13

**much [5]** 7/15 8/13 27/9 42/4 48/10

**must [5]** 5/20 15/10 26/11 27/7 28/4

**my [18]** 3/8 3/11 3/14 3/19 14/17 15/13 25/19 30/10 31/5 32/15 37/2

Supp. Buss Decl. Ex. 1 - pg. 63 of 73

**my... [7]**  39/14 43/21
45/2 47/6 47/25 48/3
48/9

# N

**name [2]**  3/8 3/14
**narrowly [2]**  12/20
40/22
**national [14]**  1/9 1/10
4/5 4/25 5/1 5/11 10/1
11/8 16/1 16/8 25/1
25/8 25/16 25/17
**natural [2]**  2/12 14/1
**nature [3]**  17/7 24/10
47/19
**near [2]**  41/4 43/10
**necessarily [1]**  41/5
**necessary [8]**  13/18
28/22 32/19 39/8 39/11
39/17 39/22 40/9
**need [6]**  8/10 8/13 31/1
40/21 47/5 47/13
**needed [2]**  39/7 40/18
**needs [2]**  38/13 41/7
**negative [1]**  24/22
**NEPA [16]**  4/5 9/18
11/20 11/23 12/9 25/19
26/10 27/10 29/20
29/21 30/7 30/13 30/18
31/25 34/18 40/23
**never [4]**  12/14 31/10
32/5 42/13
**nevertheless [1]**  35/3
**next [4]**  44/6 44/11
44/21 44/24
**NFMA [2]**  29/18 48/8
**Ninth [2]**  7/6 39/6
**no [25]**  1/5 3/4 7/25
17/4 17/25 18/3 18/14
19/3 19/19 21/3 24/20
31/23 32/1 32/15 34/19
36/11 37/18 38/3 41/2
49/16 49/18
**No 2:16-cv-1648-MO
[1]**  3/4
**non [1]**  6/2
**non-campground [1]**
6/2
**None [1]**  23/19
**nonprofit [1]**  1/4
**not [119]**
**note [3]**  3/23 16/6
35/25
**noted [2]**  14/6 35/21
**notes [2]**  36/10 36/11
**nothing [4]**  21/22 29/4
30/1 40/24
**notice [30]**  27/8 27/11
27/12 29/4 29/5 29/23
29/24 30/10 31/11
31/19 31/20 32/1 32/16
32/21 32/24 32/24
34/15 34/17 34/18
34/22 36/14 36/15
36/15 36/20 36/22
36/24 37/4 37/5 37/11
37/15
**notices [2]**  29/8 31/9
**November [1]**  50/9
**now [12]**  4/7 5/22
16/23 18/25 19/4 25/6
39/1 40/10 42/23 42/25
46/5 49/1
**number [5]**  17/23 26/5
39/13 40/8 43/11

# O

**o0o [1]**  50/2
**object [1]**  30/6
**objecting [1]**  23/5
**objection [2]**  30/17
**objectives [2]**  21/21
46/6
**Ochoco [5]**  1/10 5/2
6/20 10/1 11/8
**October [2]**  1/8 49/14
**October 20th [1]**  49/14
**off [2]**  15/1 24/21
**offer [2]**  43/24 45/23
**Office [1]**  3/16
**official [2]**  1/11 50/11
**okay [2]**  37/21 46/19
**old [4]**  11/10 12/14
20/16 20/17
**on [87]**
**once [1]**  8/5
**one [22]**  5/16 6/1 8/6
10/9 16/15 17/23 24/8
25/24 26/2 28/15 28/16
28/16 30/21 36/14 39/5
39/24 41/25 44/1 45/8
45/23 45/24 47/15
**one-page [1]**  36/14
**ones [1]**  47/11
**only [18]**  5/11 6/16
6/23 8/20 10/9 14/11
16/7 16/24 18/16 19/18
22/20 23/4 29/2 29/20
31/25 35/17 44/7 45/23
**open [2]**  44/25 47/18
**opened [1]**  44/19
**opens [1]**  44/6
**operate [1]**  6/11
**operating [2]**  12/8 13/5
**opportunity [10]**  13/2
27/18 28/11 31/19 32/2
32/6 32/22 35/25 36/3
36/5
**options [1]**  14/3
**or [61]**
**oral [4]**  3/21 3/23 8/4
32/11

# O

**order [2]** 3/3 4/22
**OREGON [6]** 1/2 1/4 1/12 2/5 4/3 30/2
**organize [1]** 36/2
**original [2]** 9/9 50/6
**other [13]** 6/5 6/21 8/24 16/19 17/14 24/9 28/7 29/16 29/17 38/13 41/25 48/11 48/25
**otherwise [1]** 38/1
**our [12]** 5/7 20/6 22/17 23/3 31/2 32/5 33/6 37/13 37/20 40/14 40/15 41/21
**out [24]** 3/25 18/9 21/20 23/15 26/15 29/8 29/12 30/16 31/11 34/15 34/24 35/4 37/15 38/9 38/12 39/25 40/3 40/6 40/7 41/10 41/14 43/9 44/13 49/4
**outbreaks [1]** 14/5
**outdoor [1]** 14/1
**outside [6]** 13/15 14/21 15/22 23/5 23/21 24/3
**over [2]** 6/4 11/21
**overall [1]** 11/15
**own [7]** 6/9 6/18 7/2 7/8 7/8 7/16 7/16

# P

**P.O [1]** 2/13
**page [3]** 16/25 23/12 36/14
**panel [1]** 39/15
**paragraph [2]** 17/18 17/19
**parcel [5]** 4/2 5/24 6/4 6/7 8/17
**parcels [3]** 6/10 6/13

**Pardon [1]** 21/9
**parenthetical [7]** 9/10 9/12 9/17 10/25 11/3 20/7 20/8
**part [5]** 5/16 26/20 36/23 36/25 39/5
**participate [1]** 27/17
**particular [3]** 6/21 10/8 11/10
**particularly [1]** 48/11
**parties [6]** 3/25 4/7 27/17 45/4 47/16 49/7
**parts [2]** 23/15 26/12
**past [3]** 6/18 9/21 13/3
**pay [1]** 40/2
**paying [2]** 45/21 46/1
**Pendleton [1]** 1/2
**people [17]** 6/3 13/25 14/23 15/1 15/16 17/21 19/20 24/3 24/6 24/9 24/12 25/12 28/7 28/9 32/24 33/3 35/4
**percent [10]** 5/14 5/21 13/15 14/21 15/22 16/8 16/21 18/16 43/4 43/4
**perimeter [1]** 14/22
**permitting [1]** 9/17
**person [1]** 46/24
**persons [1]** 28/4
**phone [1]** 49/10
**pine [2]** 35/13 35/24
**pines [2]** 20/19 35/11
**place [2]** 3/2 16/11
**plaintiff [22]** 1/5 2/4 3/9 4/4 4/19 6/15 7/1 7/17 8/1 9/22 25/23 26/1 38/10 42/3 42/4 42/8 42/13 43/24 47/25 48/15 49/2 49/15
**plaintiff's [13]** 4/12 4/16 6/19 8/19 9/1

17/7 28/15 47/23 48/2 48/3 48/5
**plaintiffs [26]** 5/12 7/11 7/13 7/14 8/7 13/4 16/23 17/14 18/10 19/7 19/17 20/6 24/22 26/18 27/6 27/17 28/5 28/6 32/22 36/5 42/22 43/17 47/21 48/2 48/6 48/22
**plan [18]** 5/1 6/21 10/1 10/3 10/9 10/14 11/8 11/15 12/4 13/23 15/9 16/5 16/10 16/11 21/2 21/13 25/12 43/1
**plans [1]** 7/9
**plausible [4]** 7/12 9/1 9/5 9/6
**play [3]** 11/17 43/5 48/9
**point [6]** 7/6 12/17 12/18 17/23 36/9 46/3
**pointing [1]** 26/15
**ponderosa [4]** 20/19 35/11 35/13 35/24
**popularity [1]** 17/22
**portion [3]** 19/13 35/14 45/16
**Portland [3]** 1/12 2/8 2/17
**position [12]** 9/1 18/13 18/14 20/21 22/13 22/17 22/25 23/3 24/10 35/1 39/14 40/7
**positions [5]** 3/24 6/18 12/25 20/21 45/3
**possible [1]** 45/22
**posted [1]** 36/16
**posting [1]** 29/8
**potential [3]** 23/16 23/18 23/19
**potentially [2]** 46/14 47/1

**precious [1]** 42/15
**predicate [1]** 42/6
**preference [1]** 49/2
**prejudiced [1]** 27/21
**preliminary [3]** 1/16 4/20 23/6
**present [2]** 2/20 24/3
**presumably [1]** 44/6
**prevail [1]** 44/24
**prevent [2]** 14/4 15/25
**previously [4]** 10/17 12/19 20/22 43/16
**primarily [1]** 8/21
**primary [1]** 11/9
**primeval [1]** 43/19
**principal [1]** 27/24
**principally [1]** 4/24
**prior [2]** 40/21 44/18
**probably [4]** 8/1 26/4 39/19 44/14
**proceedings [3]** 1/17 49/21 50/5
**process [4]** 10/22 12/9 29/22 40/23
**project [29]** 1/4 3/5 3/10 10/11 12/15 13/15 13/18 14/11 15/20 15/21 16/14 17/5 17/7 17/8 17/16 17/20 17/21 18/6 18/18 19/14 20/24 21/4 33/9 35/14 36/16 44/11 44/14 45/15 45/23
**projects [3]** 12/16 20/25 40/21
**proposal [1]** 28/8
**propose [3]** 25/8 35/8 48/25
**proposed [11]** 4/6 5/15 5/17 24/20 25/22 26/1

**26/4 32/14 39/17 49/7 49/8
proposes [2]** 27/12 33/25
**protect [6]** 11/9 12/13 13/18 18/17 19/12 19/12
**protectable [1]** 11/21
**protected [1]** 20/19
**protecting [3]** 6/12 22/4 22/10
**protection [3]** 5/18 6/12 21/25
**protects [1]** 17/2
**prove [1]** 24/22
**proves [1]** 17/22
**provide [10]** 13/24 15/10 20/15 27/11 27/18 33/7 33/23 35/17 36/1 46/7
**provided [5]** 20/11 27/20 36/3 36/4 45/17
**provides [2]** 13/17 20/17
**providing [2]** 34/19 34/20
**public [52]**
**public's [1]** 44/21
**purchaser [2]** 45/21 46/2
**purpose [4]** 11/8 11/9 12/13 42/9
**purposes [6]** 8/9 8/10 11/16 24/14 35/3 39/23
**pursuing [1]** 14/1
**put [7]** 4/14 24/11 29/4 31/11 31/17 31/20 32/2
**puts [1]** 32/24
**putting [1]** 5/16

**Q**

**qualify [1]** 23/16

**quality [1]** 27/21
**question [8]** 6/10 12/7 15/13 24/2 32/15 33/24 39/9 48/1
**questions [4]** 3/24 6/1 48/6 48/13
**quite [4]** 36/17 39/3 42/24 43/17
**quo [1]** 43/7

**R**

**raised [3]** 32/11 42/7 48/6
**ranger [2]** 1/9 17/20
**rather [2]** 8/4 43/8
**rationale [1]** 13/20
**read [2]** 7/20 12/19
**reading [10]** 6/22 7/10 7/11 7/12 7/16 7/19 7/24 20/2 20/4 27/9
**real [4]** 21/23 43/23 47/25 48/8
**reality [1]** 33/25
**really [17]** 5/25 7/14 7/22 10/25 11/13 13/13 19/5 26/7 29/18 31/23 38/24 39/4 39/5 42/3 42/13 43/13 47/18
**reason [1]** 41/2
**reasons [12]** 6/17 6/21 7/1 7/2 8/24 10/2 15/1 18/19 25/24 26/1 28/16 34/12
**Rebecca [2]** 2/20 3/16
**rebid [1]** 45/22
**rebut [3]** 6/25 10/16 24/15
**rebutting [1]** 6/8
**received [1]** 13/6
**receives [1]** 17/8
**recent [1]** 9/25
**recess [3]** 47/7 47/8

**recess... [1]** 49/19
**recipient [1]** 45/21
**recognized [1]** 10/7
**record [14]** 3/7 13/17
15/3 15/8 15/17 21/15
23/12 24/6 24/17 24/23
25/4 29/14 36/10 50/5
**recreate [6]** 14/24
15/11 17/15 17/21
19/20 25/13
**recreating [3]** 6/4
15/16 17/8
**recreation [26]** 13/22
13/24 14/2 14/6 14/7
14/10 15/12 15/18
15/19 16/4 16/7 16/11
16/15 17/3 17/6 18/3
18/15 18/20 21/11
21/14 23/21 25/1 35/20
35/21 46/7 47/2
**recreational [5]** 5/10
6/6 17/24 18/12 21/19
**red [1]** 28/3
**reducing [1]** 4/16
**reference [2]** 27/25
30/13
**referred [1]** 37/2
**referring [3]** 9/22 20/23
38/17
**regard [2]** 13/5 29/8
**Regarding [3]** 8/15
8/25 9/21
**regularly [1]** 24/3
**regulations [1]** 27/10
**relatively [1]** 14/1
**reliance [3]** 25/25 26/9
27/18
**relied [5]** 10/5 10/24
16/18 18/17 23/8
**relief [1]** 4/6

**rely [7]** 5/5 5/6 5/18 6/20
18/1 27/22 28/17
**relying [12]** 6/12 18/21
19/11 20/6 21/1 21/3
22/20 22/21 26/18 27/8
28/2 31/15
**remain [2]** 33/9 35/24
**remaining [4]** 5/20 6/9
6/13 48/4
**remedy [2]** 42/18 42/19
**remember [1]** 8/5
**removal [3]** 28/11
32/20 34/12
**remove [5]** 27/12 27/13
32/18 32/18 46/2
**removed [7]** 32/17
32/20 32/25 33/3 33/8
33/14 35/23
**removing [6]** 5/20
27/13 27/14 33/4 33/15
34/6
**repeatedly [2]** 38/16
39/14
**replace [1]** 46/12
**replant [2]** 35/15 35/16
**replanting [1]** 33/22
**reply [5]** 6/7 8/19 10/10
12/23 21/7
**report [4]** 14/6 15/18
17/6 35/21
**REPORTER [2]** 2/16
50/11
**reprise [1]** 38/24
**request [1]** 23/6
**requested [1]** 48/21
**required [3]** 9/19 28/20
36/4
**requirement [2]** 12/3
28/13
**requires [3]** 12/4 15/14
31/21
**research [1]** 10/4

**resistant [2]** 33/22
35/15
**resolution [1]** 48/24
**resolve [2]** 49/10 49/11
**resolved [1]** 44/3
**resource [2]** 45/20
45/25
**Resources [1]** 2/12
**respond [3]** 36/5 36/9
47/4
**responded [3]** 26/22
26/25 27/1
**respondent's [1]** 8/17
**responds [1]** 39/4
**response [8]** 9/24
10/11 13/4 13/6 24/7
26/16 27/3 37/2
**rest [2]** 13/16 21/12
**restraining [1]** 3/3
**restrictions [1]** 21/17
**restrictively [1]** 12/2
**retaining [1]** 33/19
**retention [1]** 33/9
**revenue [1]** 45/16
**right [20]** 12/17 12/18
13/7 14/15 17/23 18/25
19/23 21/6 25/18 34/9
37/10 38/8 38/11 38/19
39/24 42/24 44/5 45/9
47/3 49/1
**risk [8]** 17/10 19/9
19/18 19/19 23/2 23/13
23/20 25/9
**River [1]** 1/9
**RMR [2]** 2/16 50/10
**Road [2]** 14/19 28/9
**roads [3]** 20/8 24/21
43/10
**roadside [3]** 9/11 9/18
22/6
**Rockies [3]** 4/15 48/1
48/20

**Room [1]** 2/17
**root [3]** 8/22 23/14 35/19
**rot [3]** 8/22 23/14 35/19
**roughly [1]** 14/22
**roving [1]** 39/15
**rubric [2]** 48/5 48/19
**rule [3]** 6/20 11/12 39/2
**rules [1]** 7/9
**ruling [1]** 47/6

**S**

**S.W [2]** 2/8 2/17
**safe [4]** 13/24 15/10 21/19 46/7
**safety [42]** 4/4 5/19 6/13 6/17 6/17 6/23 6/24 7/4 8/15 8/20 8/23 9/2 9/10 10/6 11/4 11/11 14/8 14/11 15/1 17/2 17/11 18/5 18/18 18/24 19/12 21/22 22/1 22/4 22/5 22/11 22/12 22/12 22/16 22/18 22/20 22/22 23/1 23/4 31/5 31/15 31/16 31/17
**said [16]** 17/21 26/7 27/19 29/25 30/5 30/15 30/23 31/2 31/17 32/17 34/9 37/2 37/15 39/22 47/21 48/14
**sales [1]** 31/10
**same [8]** 9/14 29/4 29/9 29/15 30/17 30/22 43/25 46/15
**sanitation [3]** 38/22 38/25 39/7
**saw [2]** 37/1 37/5
**say [32]** 6/5 11/14 12/1 17/16 17/17 18/1 26/10

34/18 37/17 38/4 38/5 38/9 38/11 38/14 39/18 40/1 40/8 40/10 41/18 41/22 42/2 42/23 43/14 46/19
**saying [12]** 9/4 10/17 12/7 12/8 18/9 24/8 31/1 34/9 40/6 41/9 41/9 46/9
**says [16]** 6/16 15/9 16/25 17/1 21/24 27/12 30/11 34/15 36/16 39/1 39/21 39/24 39/25 40/24 40/25 41/24
**scale [1]** 26/3
**schedule [3]** 49/1 49/7 49/9
**science [2]** 39/15 40/15
**scientific [1]** 39/16
**scientifically [1]** 40/13
**scientists [3]** 39/9 40/8 40/18
**scope [5]** 9/10 9/13 9/17 9/19 23/6
**scoping [32]** 10/4 25/24 26/15 27/8 27/11 27/11 29/2 29/4 29/23 29/24 30/11 31/9 31/11 31/19 32/1 32/16 32/21 32/23 34/2 34/17 34/18 34/20 34/22 36/15 36/20 36/21 36/23 37/3 37/5 37/11 37/15 48/11
**scoping comments [1]** 34/20
**scoping: [1]** 26/2
**scoping: one [1]** 26/2
**score [1]** 23/15
**Screen [1]** 26/13

6/21 7/3 9/9 11/7 11/9 11/20 12/1 12/2 12/10 12/13 12/14 17/1 20/5 20/9 20/14 21/1 21/4 21/25 25/16 26/10 27/9 27/19 29/19 30/3 30/7 30/9 30/23 30/24 31/1 31/12 31/13 31/23 36/11
**Screens' [1]** 12/12
**second [9]** 5/18 15/5 18/18 18/24 19/11 19/16 26/6 35/14 42/21
**Section [3]** 26/10 26/19 28/13
**see [2]** 37/3 44/3
**seeing [1]** 43/2
**seek [1]** 42/19
**seeking [2]** 12/7 30/24
**seeks [1]** 4/6
**seems [1]** 5/19
**seen [3]** 31/9 31/10 31/11
**sentence [1]** 31/22
**separate [3]** 33/18 35/6 48/19
**separately [1]** 21/15
**series [1]** 38/23
**serious [2]** 48/6 48/13
**seriousness [1]** 49/11
**serve [1]** 35/18
**SERVICE [58]**
**Service's [9]** 6/9 6/18 12/24 13/2 24/10 27/3 27/21 40/21 46/6
**Service's disclosure [1]** 27/21
**set [1]** 3/3
**setting [3]** 9/7 14/1 30/21
**several [1]** 10/8

**sharply [4]** 4/16 48/2 48/3 48/5

**shifting [1]** 45/3

**short [1]** 40/23

**should [5]** 8/10 10/12 32/5 39/23 41/23

**shouldn't [1]** 38/24

**show [10]** 4/19 7/14 7/17 7/17 12/3 16/17 24/17 43/18 44/1 48/16

**showing [6]** 4/17 15/14 24/9 31/18 42/3 47/22

**shown [3]** 40/12 42/5 48/10

**shows [1]** 10/13

**shrubs [1]** 35/16

**Shumway [3]** 2/16 50/9 50/10

**side [1]** 30/21

**signature [2]** 50/7 50/7

**significant [2]** 30/1 30/1

**signing [1]** 50/4

**similar [1]** 40/21

**simply [6]** 9/12 13/1 22/19 30/25 40/6 48/14

**since [7]** 4/8 27/24 32/10 35/4 35/23 43/15 48/17

**sir [1]** 28/24

**site [16]** 10/9 12/4 14/25 17/22 21/2 21/3 21/15 21/18 21/21 24/10 42/23 42/25 42/25 43/3 43/14 43/16

**site-specific [4]** 10/9 12/4 21/2 21/3

**sites [4]** 14/7 14/10 21/14 21/19

**situation [1]** 43/18

**sizes [8]** 27/13 27/14 27/23 28/3 32/19 32/25 34/16 37/15

**SLATER [3]** 1/9 17/20 44/13

**slippery [1]** 4/9

**slow [2]** 15/5 34/21

**small [5]** 10/11 14/11 14/23 23/22 45/16

**smaller [1]** 10/18

**Snow [3]** 9/22 12/2 20/24

**so [86]**

**some [14]** 3/22 4/17 5/22 7/1 11/18 15/14 20/11 33/8 33/14 35/11 35/11 35/16 39/15 48/25

**somehow [3]** 10/12 27/7 30/5

**someone [3]** 23/21 23/22 42/17

**something [6]** 26/17 41/3 41/21 47/16 47/20 49/4

**sometimes [1]** 4/9

**somewhat [1]** 13/5

**sorry [2]** 37/3 47/10

**sort [6]** 12/6 15/15 19/7 38/24 39/15 43/18

**sought [3]** 10/17 25/22 48/21

**special [8]** 5/10 6/6 17/3 17/24 18/3 18/12 18/15 21/11

**species [12]** 20/18 27/12 27/23 27/23 28/21 32/18 32/18 33/22 34/13 35/9 35/15 37/16

**specific [7]** 10/9 11/8 12/4 21/2 21/3 29/9

**specifically [9]** 9/9 10/2 11/17 12/1 16/4 23/8 27/25 31/24 40/25

**speculative [1]** 46/4

**spend [1]** 8/13

**spread [2]** 39/11 39/17

**spring [5]** 35/15 44/6 44/11 44/24 45/9

**stages [1]** 40/11

**standard [1]** 4/8

**standing [1]** 23/23

**stands [2]** 21/22 41/23

**start [3]** 8/6 9/4 32/9

**started [1]** 18/9

**starting [2]** 9/8 11/2

**state [2]** 3/19 27/7

**stated [4]** 4/3 8/18 8/18 18/19

**STATES [10]** 1/1 1/7 1/8 1/19 2/16 3/5 5/23 5/25 6/3 13/8

**status [1]** 43/7

**Stephens [1]** 49/13

**steps [1]** 28/16

**still [5]** 6/10 24/4 29/8 30/10 43/11

**Street [1]** 2/5

**strength [2]** 39/6 48/8

**strict [1]** 12/3

**structured [1]** 45/19

**student [1]** 3/11

**subject [1]** 28/5

**submit [2]** 49/7 49/8

**submitted [1]** 31/6

**subspecies [2]** 34/16 34/24

**substantial [4]** 7/8 7/13 43/11 48/9

**succeeding [1]** 8/2

**success [5]** 4/10 4/17 4/21 38/21 48/16

successful [1]  10/21
such [5]  5/9 10/11
14/25 16/10 16/15
sufficient [2]  27/16
30/7
suggested [1]  43/13
summer [1]  45/9
support [4]  20/2 20/4
24/6 25/4
supported [3]  23/7
28/8 28/10
supporting [1]  24/23
suppose [1]  35/1
supposed [1]  40/10
sure [8]  10/15 10/15
11/13 12/6 15/6 26/17
36/23 43/6
swallows [2]  11/12
39/2
system [4]  24/17 42/9
42/15 42/17

## T

table [1]  23/12
tactical [1]  42/9
take [13]  4/18 4/22 8/6
12/24 13/2 24/14 39/25
40/3 40/6 41/14 41/25
47/6 47/14
taken [5]  20/22 26/11
35/4 43/9 47/8
taking [8]  29/12 34/15
34/24 37/15 38/9 38/11
40/7 49/1
talk [7]  13/20 17/19
19/2 27/4 33/2 34/6
47/15
talking [5]  15/21 16/25
19/1 34/11 46/17
talks [2]  15/20 15/23

taxpayers [1]  46/8
tell [2]  16/12 38/10
telling [3]  16/10 19/5
35/4
temporary [1]  3/3
tentative [3]  3/19 3/20
25/19
tentatively [1]  26/24
term [2]  33/21 41/3
terms [3]  5/16 6/8 39/8
Terwilliger [1]  2/8
Tessa [2]  2/20 3/11
text [12]  6/22 7/10 7/11
7/12 7/16 7/19 7/24 9/8
11/2 11/6 11/10 11/25
texts [1]  7/23
textual [5]  6/15 11/1
11/5 20/2 20/4
textually [1]  12/18
than [8]  8/4 23/17
23/18 27/14 27/20
28/12 30/2 36/19
thank [18]  3/12 3/18
4/7 8/8 8/14 13/7 13/9
14/17 21/6 21/9 25/18
28/23 32/8 36/6 38/19
47/9 49/16 49/18
that [303]
that's [51]
their [13]  13/4 17/14
17/16 26/23 26/24 27/1
27/8 27/20 28/11 40/7
40/18 41/19 47/22
them [6]  4/19 6/2 24/14
35/17 47/14 47/22
themselves [3]  23/20
26/10 31/24
then [21]  7/10 7/13
7/18 10/21 12/14 12/17
16/15 16/17 17/9 19/8
19/23 35/14 39/2 39/5
43/4 44/4 44/8 44/24

theories [2]  4/22 8/5
theory [2]  4/23 12/14
there [61]
there's [23]  5/22 14/20
16/10 17/4 17/10 19/14
23/12 24/20 25/3 25/4
28/25 31/22 34/19
38/13 39/3 39/13 41/1
43/2 43/21 45/16 47/10
47/17 47/19
therefore [3]  8/1 18/21
48/21
these [7]  11/15 12/19
26/14 34/16 37/15 40/7
41/9
thesis [1]  17/9
they [75]
they'd [1]  48/16
they're [18]  3/20 10/21
12/7 12/8 12/8 14/1
15/7 17/16 20/23 22/20
22/21 23/16 23/18
29/13 29/22 30/22 34/6
41/10
they're removing [1]
34/6
they've [1]  6/2
thin [1]  36/17
thing [8]  18/5 29/4
29/10 29/15 32/4 43/5
44/3 44/7
things [1]  44/5
think [38]  5/22 5/24 6/8
7/5 7/11 8/17 18/7 18/8
18/23 19/3 21/23 24/5
25/11 26/24 26/24 27/2
27/9 27/16 29/1 29/17
30/19 34/11 37/23 38/5
38/8 38/17 39/6 41/6
42/6 42/21 43/11 43/17
43/19 43/21 44/23

# T

**think...** [3]  47/11 48/13 48/17

**think that** [1]  18/23

**thinks** [1]  7/2

**thinning** [15]  4/2 20/16 26/7 29/3 29/9 30/11 30/21 32/9 34/2 34/3 34/9 34/9 34/12 37/2 38/17

**third** [4]  2/17 26/9 26/12 27/1

**this** [101]

**Thomas** [1]  2/7

**those** [19]  9/24 10/7 12/24 20/24 20/25 21/18 23/15 23/19 24/6 24/24 28/8 29/9 29/15 30/19 30/20 31/2 36/11 39/4 48/18

**though** [3]  19/17 37/16 38/9

**thought** [2]  18/9 30/10

**threat** [2]  20/18 39/10

**threatened** [1]  28/21

**three** [1]  26/1

**through** [9]  8/21 10/22 11/20 11/22 24/17 24/20 24/24 42/18 47/14

**throughout** [11]  8/16 17/15 17/18 17/21 19/9 19/13 19/20 24/13 25/13 25/17 32/4

**timber** [2]  31/9 46/2

**time** [9]  3/2 8/9 8/9 8/13 23/22 42/1 47/11 48/25 49/1

**timing** [1]  45/15

**tip** [1]  48/2

**tipping** [2]  4/11 4/16

**tips** [3]  47/23 48/3 48/5 48/10

**today** [5]  3/16 40/7 45/8 49/6 49/15

**together** [2]  16/22 29/18

**told** [1]  15/17

**Tom** [1]  3/9

**too** [1]  27/9

**total** [1]  5/14

**touching** [1]  41/5

**towards** [1]  48/23

**tracked** [1]  11/13

**trail** [1]  24/17

**trails** [4]  14/25 24/13 24/21 24/24

**transcript** [3]  1/17 50/5 50/6

**treatment** [1]  14/3

**tree** [4]  23/7 23/17 23/22 24/1

**trees** [43]  5/4 9/12 9/18 11/16 11/21 17/11 17/13 20/17 22/7 23/10 23/10 23/13 23/14 26/5 26/14 27/13 27/13 27/14 27/19 28/12 29/13 32/17 33/14 33/14 34/16 35/4 35/17 35/23 37/16 38/13 38/15 39/9 40/1 40/1 40/7 40/8 41/1 41/1 41/9 41/11 43/9 43/11 43/25

**trial** [5]  44/3 44/4 44/7 45/4 45/6

**tried** [2]  7/14 31/6

**tries** [1]  6/25

**trip** [3]  36/2 36/10 36/12

**tromping** [1]  24/12

**true** [8]  5/6 7/9 9/14 10/23 15/17 17/9 30/9

**try** [1]  49/3

**trying** [4]  30/2 31/7 34/22 43/18

**turn** [5]  4/20 8/7 25/19 27/4 46/18

**TURNER** [1]  1/9

**turns** [1]  27/2

**Tustin** [3]  2/11 3/15 49/4

**Tustin's** [1]  36/9

**twice** [1]  7/21

**two** [15]  4/22 5/8 7/15 7/20 19/10 21/14 21/17 25/24 25/24 26/12 26/22 34/24 37/16 47/16 49/6

**types** [1]  32/17

# U

**U.S** [2]  3/17 26/20

**unclean** [1]  42/19

**under** [9]  4/25 7/13 26/11 30/7 30/19 39/6 41/23 48/1 48/4

**understand** [3]  5/12 5/13 19/3

**understood** [1]  18/8

**undiseased** [1]  40/1

**undisturbed** [2]  42/24 43/15

**unexceptional** [1]  19/7

**unit** [3]  16/5 40/3 41/13

**UNITED** [10]  1/1 1/7 1/8 1/19 2/16 3/5 5/23 5/25 6/3 13/8

**units** [9]  8/21 8/24 16/24 23/14 23/15 24/20 35/7 35/22 41/23

**unless** [1]  5/4

**unprecedented** [2]  31/5 32/3

**until [5]** 44/7 44/11 44/14 45/6 46/21
**up [9]** 4/18 8/4 8/6 12/24 13/2 29/1 40/17 41/25 48/14
**upcoming [1]** 42/12
**upon [2]** 43/3 46/16
**us [2]** 31/20 44/2
**use [19]** 5/10 6/6 14/17 17/4 17/24 18/3 18/12 18/15 25/5 25/7 26/13 29/20 31/4 31/4 31/8 31/24 32/2 32/11 37/14
**used [4]** 8/19 16/1 23/10 26/6
**uses [2]** 21/11 24/11
**using [3]** 29/22 31/20 42/14
**utilize [2]** 13/25 14/4

## V

**vacuum [1]** 13/5
**value [1]** 47/2
**variety [2]** 14/2 48/7
**various [2]** 6/17 23/13
**vast [1]** 33/8
**vegetation [3]** 5/10 17/3 18/12
**version [3]** 7/18 7/18 8/1
**versus [4]** 16/18 32/9 43/8 43/10
**very [11]** 8/12 9/25 14/11 14/23 15/2 17/7 17/8 20/18 32/21 38/18 48/18
**view [5]** 33/12 43/15 44/8 47/25 48/3
**views [5]** 3/19 3/20 25/20 27/20 28/11

**violates [1]** 4/5
**violating [1]** 31/13
**violation [3]** 4/24 30/13 30/18
**virtue [1]** 17/11
**visited [1]** 13/23
**visual [6]** 21/16 21/20 21/21 25/14 29/6 35/21

## W

**wait [4]** 44/2 44/7 44/14 45/6
**walking [1]** 17/17
**Walton [1]** 4/2
**wander [1]** 15/1
**want [9]** 3/19 3/23 5/23 38/20 40/6 41/25 42/22 43/14 49/6
**wanted [4]** 28/5 28/8 39/21 40/16
**was [40]** 4/23 4/24 5/2 8/16 8/17 8/19 9/3 10/9 10/10 10/13 10/14 12/9 13/18 18/15 20/8 20/11 21/1 26/2 26/2 27/6 27/16 28/4 28/10 28/14 28/20 28/22 30/5 31/7 31/16 32/19 32/21 34/17 36/15 36/15 36/21 37/19 41/13 45/23 46/3 47/11
**wash [2]** 47/16 47/20
**Washington [1]** 2/13
**wasn't [2]** 10/24 15/13
**way [9]** 24/8 27/2 31/8 31/25 36/12 42/20 43/21 45/19 46/6
**ways [3]** 7/20 34/7 44/9
**we [46]** 3/21 3/24 6/2 8/4 11/15 13/1 13/6 16/6 16/21 18/15 18/23

18/23 20/15 21/3 22/7 23/4 27/8 27/16 27/22 30/8 30/9 31/17 31/18 32/1 33/2 33/5 34/7 35/12 35/14 38/14 38/14 39/22 40/6 41/14 42/1 44/2 44/13 44/24 45/17 46/5 46/17 46/20 47/10 47/11 47/15 49/4
**we'll [4]** 19/16 22/4 32/10 49/19
**we're [10]** 11/2 16/25 19/11 30/24 34/15 37/15 38/11 40/7 42/23 43/15
**we've [3]** 13/12 20/5 47/1
**weeds [1]** 22/24
**weeks [1]** 49/6
**well [28]** 3/25 4/23 10/10 10/13 10/14 10/19 11/19 11/22 15/18 18/23 22/14 23/25 32/13 33/15 34/7 37/6 37/13 38/7 39/18 40/6 40/10 41/16 44/2 44/13 45/2 45/14 46/20 48/14
**went [2]** 11/20 11/22
**were [21]** 8/24 10/8 18/7 27/21 28/6 28/8 28/9 28/21 29/5 29/24 30/8 30/10 31/13 31/13 31/15 31/16 31/20 32/6 34/8 35/2 36/12
**weren't [2]** 3/21 48/19
**what [66]**
**what's [6]** 22/25 35/6 35/9 39/7 39/8 39/10
**whatever [2]** 30/5 30/14
**whatsoever [1]** 24/21

**when [14]** 11/17 26/7 26/19 28/2 29/22 29/24 31/11 31/23 33/15 35/8 38/14 38/16 39/25 42/17

**where [20]** 6/3 8/22 11/2 15/16 16/12 16/12 16/15 16/17 18/7 19/3 24/19 25/9 31/12 32/19 33/20 34/14 34/15 45/20 46/1 47/17

**whether [7]** 7/22 8/15 10/20 22/25 23/10 42/4 42/14

**which [30]** 7/23 7/25 8/21 8/24 9/22 9/23 9/25 10/9 11/1 11/6 12/16 14/20 15/16 18/11 21/11 21/12 21/20 23/8 23/14 24/2 24/11 30/4 31/1 32/3 34/8 35/14 37/7 38/9 38/17 49/9

**while [1]** 14/1

**who [3]** 14/23 28/8 40/8

**who's [1]** 7/10

**whole [6]** 17/6 40/3 41/13 42/12 43/4 45/2

**whom [1]** 46/13

**why [16]** 6/22 7/2 8/4 11/14 11/24 13/17 15/2 26/1 30/7 31/2 32/19 36/19 38/23 39/15 43/21 46/17

**Wild [3]** 4/15 48/1 48/20

**WILDERNESS [3]** 1/3 3/4 3/9

**Wildlife [1]** 26/20

**will [9]** 3/22 27/14 32/18 33/8 33/22 33/22 35/12 35/17 35/23

**win [2]** 45/7 46/18

**wins [1]** 7/24

**winter [1]** 42/12

**wish [2]** 12/25 25/15

**within [14]** 5/10 11/7 12/8 13/22 13/25 16/4 16/14 17/3 18/6 18/12 24/4 40/18 49/4 49/6

**without [5]** 10/3 26/14 41/11 43/20 50/6

**Wolf [6]** 9/22 9/25 10/8 10/13 12/3 20/24

**won [1]** 44/7

**woods [1]** 15/1

**word [6]** 32/11 37/14 37/17 37/25 38/4 38/5

**work [3]** 46/3 47/14 49/3

**worried [1]** 34/21

**worry [1]** 8/12

**would [44]** 4/12 6/6 6/20 7/13 9/18 9/20 10/5 12/14 12/16 15/25 16/13 16/16 23/14 23/22 27/22 29/7 30/17 30/23 31/6 31/17 32/9 32/19 32/25 34/5 34/10 35/1 35/3 35/25 36/17 36/19 39/18 43/11 44/8 44/8 44/18 44/25 45/15 45/24 46/15 46/20 46/20 48/23 49/3 49/5

**wouldn't [6]** 3/21 11/14 22/14 34/11 37/16 39/15

**wouldn't characterize [1]** 22/14

**write [2]** 39/22 40/17

**written [2]** 36/1 39/23

**Y**

**year [6]** 44/15 44/16 44/17 44/21 46/21 47/2

**years [1]** 35/23

**yes [27]** 12/11 12/21 13/1 16/14 16/20 17/12 17/12 19/10 19/22 20/1 22/2 22/18 22/23 28/6 33/1 33/21 34/5 34/25 35/5 36/8 37/5 44/12 44/22 45/10 45/12 46/11 46/20

**yet [1]** 34/21

**you [136]**

**you'd [3]** 44/4 44/5 46/12

**you're [24]** 9/4 10/20 18/21 19/3 19/5 19/5 19/8 19/19 24/8 25/21 27/13 28/2 29/20 31/24 33/13 34/3 34/23 34/24 35/8 38/9 40/2 41/9 46/9 47/13

**you've [4]** 12/23 15/17 33/19 34/8

**your [69]**

**yourself [1]** 3/7

Supp. Buss Decl. Ex. 1 - pg. 73 of 73