Supp. Buss Decl.

Exhibit 3



**FOREST SERVICE HANDBOOK
NATIONAL HEADQUARTERS (WO)
WASHINGTON, DC**

**FSH 1909.15 – NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK**

**CHAPTER - ZERO CODE**

**Amendment No.:**  1909.15-2011-4

**Effective Date:**  September 14, 2011

**Duration:**  This amendment is effective until superseded or removed.

**Approved:**  FAYE L. KRUEGER                    **Date Approved:**  09/09/2011
                    Associate Deputy Chief, NFS

**Posting Instructions:**  Amendments are numbered consecutively by handbook number and calendar year.  Post by document; remove the entire document and replace it with this amendment.  Retain this transmittal as the first page(s) of this document.  The last amendment to this handbook was 1909.15-2011-3 to 1909.15_60.

| New Document | 1909.15_zero_code | 20 Pages |
|---|---|---|
| **Superseded Document(s) by Issuance Number and Effective Date** | 1909.15_zero_code (Amendment 1909.15-2010-1, 09/30/2010) | 19 Pages |

**Digest:**

<u>04</u> - Establishes code and caption for field supplementation.

<u>08</u> - Establishes code and caption for field supplementation.

Supp. Buss Decl. Ex. 3 - pg. 1 of 20

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 2 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

## Table of Contents

**01 - PROPOSED ACTIONS SUBJECT TO THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) REQUIREMENTS (42 U.S.C. 4321 ET SEQ.)** .................3
**02 - OBJECTIVE** ...........................................................................................7
**04 - RESPONSIBILITY [RESERVED]** .......................................................7
**05 - DEFINITIONS** .........................................................................................7
**06 - SCHEDULE OF PROPOSED ACTIONS (SOPA)** ...............................17
    06.04 - Responsibility .................................................................. 18
    06.1 - Frequency of Distribution.................................................. 18
    06.2 - Schedule Format and Content ........................................... 18
**07 - EMERGENCY AND CLASSIFIED ACTIONS** ....................................19
**08 - OVERVIEW OF PROCESS [RESERVED]** .........................................20

Supp. Buss Decl. Ex. 3 - pg. 2 of 20

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE: 09/14/2011
DURATION: This amendment is effective until superseded or removed.

1909.15_zero_code
Page 3 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

This handbook provides guidance for implementing the National Environmental Policy Act (NEPA), the Council on Environmental Quality (CEQ) regulations (40 CFR parts 1500-1508), United States Department of Agriculture (USDA) NEPA Policies and Procedures (7 CFR part 1b), Forest Service NEPA Procedures (36 CFR part 220), and Forest Service Manual 1950. Guidance in this handbook applies to the fullest extent practicable to analyses and documents; however, work completed under previous policy and guidelines need not be revised.

The guidance in the handbook must be used in conjunction with other direction found throughout the Forest Service Manual (FSM) and Forest Service Handbooks (FSH). Specifically, use this handbook in conjunction with FSM 1950, Environmental Policy and Procedures, which sets forth the broad Forest Service objectives, policy, and responsibilities for meeting the requirements of the NEPA. Also, integrate the requirements in this handbook with the procedures set forth in FSM 1920 and FSH 1909.12 and the regulations implementing the National Forest Management Act (36 CFR part 219).

Specifically, this handbook provides guidance for analyzing and documenting the environmental consequences of proposed actions. Chapter 10 sets forth guidance on scoping and environmental analysis. Chapters 20, 30, and 40 contain the documentation and process guidance for environmental impact statements (EISs), categorical exclusions (CEs), and environmental assessments (EAs). Chapter 50 addresses implementing and monitoring guidance and chapter 60 provides references.

For ease of reference, Council on Environmental Quality (CEQ) regulations for implementing requirements of the National Environmental Policy Act (NEPA) are set out in **boldface type** and block-indented and Forest Service regulations, that supplement the CEQ regulations, are in **boldface type** and *italicized* and block-indented.

## 01 - PROPOSED ACTIONS SUBJECT TO THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) REQUIREMENTS (42 U.S.C. 4321 ET SEQ.)

Before determining whether or not NEPA applies to a proposal, consider whether or not the action has already been addressed in an environmental analysis and decision. Activities which merely implement a decision previously analyzed under NEPA are not new Federal actions requiring independent analysis. Many enforcement decisions, and decisions to administer contracts or authorizations, fall within this category because compliance with the terms and conditions of the decision, contract or authorization was considered in the NEPA effects analysis.

> ***A Forest Service proposal is subject to the NEPA requirements when all of the following apply:***
>
> ***(1)The Forest Service has a goal and is actively preparing to make a decision on one or more alternative means of accomplishing that goal and the effects can be meaningfully evaluated (see 40 CFR 1508.23);*** *(36 CFR 220.4(a))*

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 4 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

An operative term in the CEQ definition of proposal is the term "stage."  Most mid-level analyses, for example watershed analyses, are simply a stage where the Forest Service identifies what possible management actions can be taken to move the Agency towards its desired future condition or "goals."  However, the results of these analyses generally are a description of the existing condition and a myriad of possible management actions.  It is not until the Forest Service determines that it wants to move forward with one or more possible actions that the Agency is at a stage where a NEPA "proposal" exists.  If the Agency does not know where or when an activity will occur or if it will occur at all then the effects of that action cannot be meaningfully evaluated.  Additionally, if the proposed action does not compel any direct action or inaction then it would be very difficult to meaningfully evaluate the effects of that proposed action, including alternatives and mitigations.  If a proposed action results in no tangible or perceptible effects on the environment then the effects of that action could not be meaningfully evaluated and it is unlikely that NEPA would apply.

> ### *(2)The proposed action is subject to Forest Service control and responsibility (see 40 CFR 1508.18);* (36 CFR 220.4(a))

The NEPA process applies to proposed "Federal" actions.  A non-Federal activity may be subject to the NEPA process when it requires a permit, regulatory decision, or funding from a Federal agency.  The following considerations may be useful when determining if a proposed action is subject to Forest Service control and responsibility and therefore if NEPA analysis and documentation is required.

There are currently few situations where a non-Federal entity may take action on National Forest System (NFS) lands without Forest Service authorization, or a proposal for Federal action.  Thus, a State, local, or private activity may be subject to NEPA if Forest Service action, approval or authorization is required (40 CFR 1508.18(b)(4)).  If a permit or other type of Forest Service authorization is required, or if the Forest Service can impose conditions that must be met by the non-Federal entity, then NEPA analysis is required.

When NEPA is required for state or private activities to occur on NFS lands, it is important to remember that the proposed action is only the action that is subject to Forest Service control and authority.  If there are additional activities proposed by the non-Federal entity that are outside of Forest Service control and authority then these other activities will probably need to be analyzed as connected actions.

When another Federal agency is acting on National Forest System lands and the action does not need Forest Service authorization, most likely that agency is required to prepare appropriate environmental analysis and documentation in accordance with NEPA.  The Forest Service NEPA responsibility would be for what, if any, actions are controlled by the Forest Service.  The Forest Service has some degree of control if the other Federal agency must have Forest Service authorization or approval, or the Forest Service can impose mandatory terms and conditions.

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 5 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

When the Forest Service does have some degree of control over the action then the Forest Service should coordinate with the other Federal agency to determine the best method for the agencies to comply with their NEPA responsibilities.

When the Forest Service is providing non-binding advice or recommendations, it is not controlling the activity.  Providing advice or recommendations is likely not subject to NEPA. However, these situations may require the Forest Service to provide analysis and expertise as a cooperating agency when another agency has decision authority.  The Forest Service often provides scientific data, evaluations, or opinions to other agencies and individuals.  See section 11.31b.

Evaluation of title claims made against NFS land does not constitute a proposal for Federal action under NEPA.  For example, when a party asserts that it owns a right-of-way to construct, maintain, or use a road across NFS land, the Forest Service, in conjunction with the Office of the General Counsel, must determine if a valid right of way exists, and what the scope of that right of way is.  The Forest Service is not making a decision to convey a property interest, but is simply making an assessment of the property rights that already exist.

When a Federal agency provides funding for non-Federal activities, the action may be "federalized" and subject to NEPA analysis.  The courts have applied a sliding scale test to evaluate the level of Federal control over a funded activity, considering both the level of funding and the degree the Federal agency conditions the use of the funds.  The key to determining whether or not the Forest Service is responsible for performing NEPA analysis is determining whether the Forest Service exercises control over the implementation of the action to be funded and to what degree implementation of the action is dependent on Forest Service funding.

Where the Forest Service provides funds for programs generally, such as for ecological restoration, but it does not control the specific projects the funds will be used for, it is unlikely that this will be deemed Federal action for purposes of NEPA.  Similarly, where the Forest Service provides only a small percentage of the funding for a project, it is unlikely that environmental analysis will be required under NEPA due to limited control and responsibility.

There are some ministerial actions which a Federal agency is required by law to undertake, and the Agency does not have discretion not to act, or to control the action.  Occasionally, Congress may direct the Forest Service to take certain actions, such as sale, exchange, or disposal of land, and the Forest Service has no discretion whether or how to take the action.  In these cases it is not likely that the Forest Service is obligated to perform analysis and documentation under NEPA. The specific statutory wording is key in these circumstances and therefore it is important to consult with an Office of General Counsel attorney to verify whether or not NEPA applies in each specific situation.

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 6 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

*(3)The proposed action would cause effects on the natural and physical environment and the relationship of people with that environment (40 CFR 1508.14) that can be meaningfully evaluated (40 CFR 1508.23); and* (36 CFR 220.4(a))

Section 102 of NEPA requires Federal agencies to prepare detailed statements on the environmental impacts of proposed major Federal actions significantly affecting the quality of the human environment [42 U.S.C. 4332(2)(C)].  The CEQ regulations at 40 CFR 1508.14 state that the term *human environment*, as used in the Act, shall be interpreted comprehensively to include the natural and physical environment and the relationship of people with that environment.  The regulations further clarify that economic or social effects are not intended by themselves to require preparation of an environmental impact statement.  Consequently an action that results only in economic or social effects does not trigger the procedural requirements of NEPA.

If there are effects related to the natural and physical environment triggering the procedural requirements of NEPA, then any interrelated economic or social effects must also be analyzed.  Refer to the definition of effects contained at 40 CFR 1508.8 for a full explanation of the direct, indirect, cumulative, ecological, aesthetic, historic, cultural, economic, social, or health effects that must be analyzed.

*(4) The proposed action is not statutorily exempt from the requirements of section 102(2)(C) of the NEPA (42 USC 4332(2)(C)).*  (36 CFR 220.4(a))

Congress can create an express statutory exemption from NEPA.  The 2003 Interior and Related Agencies Appropriations Act provided that the issuance of special use authorizations for organizational camps is not subject to NEPA if the authorization is issued upon a change in control of the holder of an existing authorization, an authorization is renewed, or the authorization is amended to effectuate administrative changes or to include nondiscretionary environmental standards to conform to current law.  Other examples of express statutory exemptions from NEPA have included: specific timber salvage exemptions and certain fire and fuels management projects.  An exemption may be local or regional in application, so it is important to check with the regional office or Office of the General Counsel to determine whether a statutory exemption applies to a particular proposed action.

Process and analyses for removal and remediation actions under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) (have been deemed to supersede requirements for environmental analysis under NEPA.  This is in part because the CERCLA process has been deemed a functional equivalent of NEPA 102 (2), and in part because compliance with NEPA processes may frustrate the purposes of CERCLA to complete environmental cleanups in time to avoid complications from additional environmental degradation.

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

In some circumstances, Congress has enacted other legislation that requires Federal agencies to act in a time frame that does not permit compliance with NEPA.  Courts have required agencies to show that it is "impossible" and not just "difficult" to comply with NEPA under such circumstances.

## 02 - OBJECTIVE

To conduct and document environmental analyses and the related decisions associated with national forest resource management, cooperative forestry, and research activities in a consistent way.

## 04 - RESPONSIBILITY [RESERVED]

## 05 - DEFINITIONS

The definitions in boldface and block-indented are those taken directly from the CEQ regulations (40 CFR part 1508) or Forest Service regulations at 36 CFR part 220.  The remaining terms and definitions are those devised by the Forest Service and used throughout this handbook.

> Act.
>
> **. . . the National Environmental Policy Act, as amended (42 U.S.C. 4321, et seq.), which is also referred to as "NEPA."** (40 CFR 1508.2)

> Adaptive management.
>
> ***A system of management practices based on clearly identified intended outcomes and monitoring to determine if management actions are meeting those outcomes; and, if not, to facilitate management changes that will best ensure that those outcomes are met or re-evaluated. Adaptive management stems from the recognition that knowledge about natural resource systems is sometimes uncertain.*** (36 CFR 220.3)

> Categorical Exclusion.
>
> **. . . a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations (§1507.3) and for which, therefore, neither an environmental assessment nor an environmental impact statement is required.**  (40 CFR 1508.4)

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 8 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

Connected Actions.

Actions that:

**(i) Automatically trigger other actions which may require environmental impact statements.**

**(ii) Cannot or will not proceed unless other actions are taken previously or simultaneously.**

**(iii) Are interdependent parts of a larger action and depend on the larger action for their justification.**  (40 CFR 1508.25)

Cooperating Agency.

**. . . any Federal agency other than a lead agency which has jurisdiction by law or special expertise with respect to any environmental impact involved in a proposal (or a reasonable alternative) for legislation or other major Federal action significantly affecting the quality of the human environment. The selection and responsibilities of a cooperating agency are described in §1501.6.  A State or local agency of similar qualifications or, when the effects are on a reservation, an Indian Tribe, may by agreement with the lead agency become a cooperating agency.**  (40 CFR 1508.5)

Council.

**. . . the Council on Environmental Quality established by Title II of the Act.** (40 CFR 1508.6)

Cumulative Actions.

**. . . actions, which when viewed with other proposed actions have cumulatively significant impacts and should therefore be discussed in the same impact statement.**  (40 CFR 1508.25)

Cumulative Impact.

**. . . the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time.** (40 CFR 1508.7)

Decision Document.

***A record of decision, decision notice, or decision memo.***  (36 CFR 220.3)

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE: 09/14/2011
DURATION: This amendment is effective until superseded or removed.

1909.15_zero_code
Page 9 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

Decision Memo.

*A concise written record of the responsible official's decision to implement an action categorically excluded from further analysis and documentation in an environmental impact statement (EIS) or environmental assessment (EA).* (36 CFR 220.3)

Decision Notice.

*A concise written record of the responsible official's decision when an EA and finding of no significant impact (FONSI) have been prepared.* (36 CFR 220.3)

Effects. (See also, "Cumulative Impact.")

**(a) Direct effects, which are caused by the action and occur at the same time and place.**

**(b) Indirect effects, which are caused by the action and are later in time or farther removed in distance, but are still reasonably foreseeable. Indirect effects may include growth inducing effects and other effects related to induced changes in the pattern of land use, population density or growth rate, and related effects on air and water and other natural systems, including ecosystems. Effects and impacts as used in these regulations are synonymous. Effects includes ecological (such as the effects on natural resources and on the components, structures, and functioning of affected ecosystems), aesthetic, historic, cultural, economic, social, or health, whether direct, indirect, or cumulative. Effects may also include those resulting from actions which may have both beneficial and detrimental effects, even if on balance the agency believes that the effect will be beneficial. (40 CFR 1508.8)**

Environmental Analysis. An investigation of a proposed action and alternatives to that action and their direct, indirect, and cumulative environmental impacts; the process which provides the necessary information for reaching an informed decision and the information needed for determining whether a proposed action may have significant environmental effects and for determining the type of environmental document required (ch.10).

Environmental Assessment.

**(a) . . . a concise public document for which a Federal agency is responsible that serves to:**

**(1) Briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact.**

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 10 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

**(2)  Aid an agency's compliance with the Act when no environmental impact statement is necessary.**

**(3)  Facilitate preparation of a statement when one is necessary.**

**(b) Shall include brief discussions of the need for the proposal, of alternatives as required by section 102(2)(E), of the environmental impacts of the proposed action and alternatives, and of a listing of agencies and persons consulted.**  (40 CFR 1508.9)

Environmental Design Arts.  Disciplines that integrate the design arts with natural and social sciences in planning and decisionmaking.

Environmental Document.  One of:

**. . . the documents specified in §1508.9 (environmental assessment), §1508.11 (environmental impact statement), §1508.13 (finding of no significant impact), and §1508.22 (notice of intent).**  (40 CFR 1508.10)

Environmental Impact Statement.

**. . . a detailed written statement as required by section 102(2)(C) of the Act.** (40 CFR 1508.11)

Environmental Justice.  The state (or condition) which all populations are provided the opportunity to comment before decisions are rendered on, are allowed to share in the benefits of, are not excluded from, and are not affected in a disproportionately high and adverse manner by government programs and activities affecting human health or the environment (USDA Regulation 5600-2 and CEQ Guidance).

Environmentally Preferable Alternative.

*… is the alternative that will best promote the national environmental policy as expressed in NEPA's section 101* **(42 USC 4321)***.  Ordinarily, the environmentally preferable alternative is that which causes the least harm to the biological and physical environment; it also is the alternative which best protects and preserves historic, cultural, and natural resources. In some situations, there may be more than one environmentally preferable alternative.* (36 CFR 220.3)

Federal Agencies.

**. . . all agencies of the Federal Government.  It does not mean the Congress, the Judiciary, or the President, including the performance of staff functions for the President in his Executive Office.**  (40 CFR 1508.12)

Supp. Buss Decl. Ex. 3 - pg. 10 of 20

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 11 of 20

FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE

Finding of No Significant Impact (FONSI).

**. . . a document by a Federal agency briefly presenting the reasons why an action, not otherwise excluded (§1508.4), will not have a significant effect on the human environment and for which an environmental impact statement therefore will not be prepared.  It shall include the environmental assessment or a summary of it and shall note any other environmental documents related to it (§1501.7(a)(5)).**  (40 CFR 1508.13)

Floodplains.  As defined by E.O. 11988, as amended, lowland and relatively flat areas adjoining inland and coastal waters including flood-prone areas of offshore islands, and including, at a minimum, that area subject to a one percent or greater chance of flooding in any given year.

Human Environment.

**. . . shall be interpreted comprehensively to include the natural and physical environment and the relationship of people with that environment.  . . . This means that economic or social effects are not intended by themselves to require preparation of an environmental impact statement. When an environmental impact statement is prepared and economic or social and natural or physical environmental effects are interrelated, then the environmental impact statement will discuss all of these effects on the human environment.**  (40 CFR 1508.14)

Irretrievable.  A term that applies to the loss of production, harvest, or use of natural resources.  For example, some or all of the timber production from an area is lost irretrievably while an area is serving as a winter sports site.  The production lost is irretrievable, but the action is not irreversible.  If the use changes, it is possible to resume timber production.

Irreversible.  A term that describes the loss of future options.  Applies primarily to the effects of use of nonrenewable resources, such as minerals or cultural resources, or to those factors, such as soil productivity that are renewable only over long periods of time.

Jurisdiction by Law.

**. . . agency authority to approve, veto, or finance all or part of the proposal.**
(40 CFR 1508.15)

Lead Agency.

**. . . the agency or agencies preparing or having taken primary responsibility for preparing the environmental impact statement.**  (40 CFR 1508.16)

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 12 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

This also applies to environmental assessments (see 40 CFR 1506.2).

Legislation.  For purposes of this handbook,

**. . . a bill or legislative proposal to Congress developed by or with the significant cooperation and support of a Federal agency, but does not include requests for appropriations.  The test for significant cooperation is whether the proposal is in fact predominantly that of the agency rather than another source.  Drafting does not by itself constitute significant cooperation. Proposals for legislation include requests for ratification of treaties.  Only the agency which has primary responsibility for the subject matter involved will prepare a legislative environmental impact statement.**  (40 CFR 1508.17)

Major Federal Action.

**. . . includes actions with effects that may be major and which are potentially subject to Federal control and responsibility.  Major reinforces but does not have a meaning independent of significantly (§1508.27).  Actions include the circumstance where the responsible officials fail to act and that failure to act is reviewable by courts or administrative tribunals under the Administrative Procedure Act or other applicable law as agency action.**

**(a) Actions include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies; new or revised agency rules, regulations, plans, policies, or procedures; and legislative proposals (§1506.8, 1508.17). Actions do not include funding assistance solely in the form of general revenue sharing funds, distributed under the State and Local Fiscal Assistance Act of 1972, 31 U.S.C. 1221 et seq., with no Federal agency control over the subsequent use of such funds.  Actions do not include bringing judicial or administrative civil or criminal enforcement actions.**

**(b) Federal actions tend to fall within one of the following categories:**

**(1) Adoption of official policy, such as rules, regulations, and interpretations adopted pursuant to the Administrative Procedure Act, 5 U.S.C. 551 et seq.; treaties and international conventions or agreements; formal documents establishing an agency's policies which will result in or substantially alter agency programs.**

**(2) Adoption of formal plans, such as official documents prepared or approved by federal agencies which guide or prescribe alternative uses of Federal resources, upon which future agency actions will be based.**

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 13 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

**(3)  Adoption of programs, such as a group of concerted actions to implement a specific policy or plan; systematic and connected agency decisions allocating agency resources to implement a specific statutory program or executive directive.**

**(4)  Approval of specific projects, such as construction or management activities located in a defined geographic area.  Projects include actions approved by permit or other regulatory decision as well as Federal and federally assisted activities.**  (40 CFR 1508.18)

Mitigation.

**(a) Avoiding the impact altogether by not taking a certain action or parts of an action.**

**(b) Minimizing impacts by limiting the degree or magnitude of the action and its implementation.**

**(c) Rectifying the impact by repairing, rehabilitating, or restoring the affected environment.**

**(d) Reducing or eliminating the impact over time by preservation and maintenance operations during the life of the action.**

**(e) Compensating for the impact by replacing or providing substitute resources or environments.**  (40 CFR 1508.20)

NEPA Process.

**. . . all measures necessary for compliance with the requirements of section 2 and Title I of NEPA.**  (40 CFR 1508.21)

Notice of Intent.

**. . . a notice that an environmental impact statement will be prepared and considered.**  (40 CFR 1508.22)

PALS (Planning Appeals and Litigation System).   A Forest Service web-based data entry and reporting tool that captures key planning, decision, appeal and litigation information for projects.  The data entered onto this system by Forest Service personnel is also used to automatically publish some items of interest to the public, including the Schedule of Proposed Actions, responses to appeals of project decisions, and responses to objections of proposed actions, to public websites.

Preferred Alternative.  The alternative(s) which the Agency believes would best fulfill the purpose and need for the proposal, consistent with the Agency's statutory mission and responsibilities, giving consideration to environmental, social, economic, and other factors and disclosed in an EIS.

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE: 09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 14 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

<u>Prime Farmland, Rangeland, and Forest Land</u>.  (See Departmental Regulation
(DR) 9500-3 and in section 65.21)

<u>Project Initiation Letter</u>.  A letter from the responsible official to the interdisciplinary
team which includes a clear statement of the proposed action and the purpose and need
for that action; cites any documents, assessments, and public involvement used to
generate the proposed action and the purpose and need; assigns team membership and
leadership; defines expected time frames for analysis and documentation; and identifies
the resources available to the team.  The letter can also describe minimum expectations
for scoping, responsible official and team interactions during key analysis phases such as
issue identification and alternative development.

<u>Proposal</u>.

**. . . exists at that stage in the development of an action when an agency
subject to the Act has a goal and is actively preparing to make a decision on
one or more alternative means of accomplishing that goal and the effects can
be meaningfully evaluated . . .  A proposal may exist in fact as well as by
agency declaration that one exists.  (40 CFR 1508.23)**

<u>Proposed Action</u>.  A proposal made by the Forest Service to authorize or implement an
action to meet a specific purpose and need (see definition for "proposal").  A proposed
action exists when the Agency gives public notice of a proposal.

<u>Reasonably Foreseeable Future Actions</u>.

***Those Federal or non-Federal activities not yet undertaken, for which there are
existing decisions, funding, or identified proposals. Identified proposals for
Forest Service actions are described in 220.4(a)(1.)***  (36 CFR 220.3)

<u>Record of Decision</u>.  A concise public record of the responsible official's decision to
implement an action when an environmental impact statement (EIS) has been prepared.

<u>Referring Agency</u>.

**. . . the Federal agency which has referred any matter to the Council after a
determination that the matter is unsatisfactory from the standpoint of public
health or welfare or environmental quality.  (40 CFR 1508.24)**

<u>Responsible Official</u>.

***The Agency employee who has the authority to make and implement a decision
on a proposed action.***  (36 CFR 220.3)

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE: 09/14/2011
DURATION: This amendment is effective until superseded or removed.

1909.15_zero_code
Page 15 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

Schedule of Proposed Actions (SOPA).

*A Forest Service document that informs the public about those proposed and ongoing Forest Service actions for which a record of decision, decision notice or decision memo would be or has been prepared. The SOPA also identifies a contact for additional information on any proposed actions.* (36 CFR 220.3)

Scope.

**. . . the range of actions, alternatives, and impacts to be considered in an environmental impact statement.** (40 CFR 1508.25)

Scoping.

**…an early and open process for determining the scope of issues to be addressed and for identifying the significant issues related to a proposed action.** (40 CFR 1501.7)

Significantly. This term includes both context and intensity:

**(a) Context. This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), the affected region, the affected interests, and the locality. Significance varies with the setting of the proposed action. For instance, in the case of a site-specific action, significance would usually depend upon the effects in the locale rather than in the world as a whole. Both short- and long-term effects are relevant.**

**(b) Intensity. This refers to the severity of impact. Responsible officials must bear in mind that more than one agency may make decisions about partial aspects of a major action. The following should be considered in evaluating intensity:**

**(1) Impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial.**

**(2) The degree to which the proposed action affects public health or safety.**

**(3) Unique characteristics of the geographic area such as proximity to historic or cultural resources, park lands, prime farmlands, wetlands, wild and scenic rivers, or ecologically critical areas.**

**(4) The degree to which the effects on the quality of the human environment are likely to be highly controversial.**

**(5) The degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks.**

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 16 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

**(6) The degree to which the action may establish a precedent for future actions with significant effects or represents a decision in principle about a future consideration.**

**(7) Whether the action is related to other actions with individually insignificant but cumulatively significant impacts.  Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment.   Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts.**

**(8) The degree to which the action may adversely affect districts, sites, highways, structures, or objects listed in or eligible for listing in the National Register of Historic Places or may cause loss or destruction of significant scientific, cultural, or historical resources.**

**(9) The degree to which the action may adversely affect an endangered or threatened species or its habitat that has been determined to be critical under the Endangered Species Act of 1973.**

**(10) Whether the action threatens a violation of Federal, State, or local law or requirements imposed for the protection of the environment.** (40 CFR 1508.27)

Similar Actions.  Actions which --

**. . . when viewed with other reasonably foreseeable or proposed agency actions, have similarities that provide a basis for evaluating their environmental consequences together, such as common timing or geography.** (40 CFR 1508.25)

Special Expertise.

**. . . statutory responsibility, agency mission, or related program experience.** (40 CFR 1508.26)

Tiering.

**. . . the coverage of general matters in broader environmental impact statements (such as national program or policy statements) with subsequent narrower statements or environmental analyses (such as regional or basin wide program statements or ultimately site-specific statements) incorporating by reference the general discussions and concentrating solely on the issues specific to the statement subsequently prepared.  Tiering is appropriate when the sequence of statements or analyses is:**

**(a) From a program, plan, or policy environmental impact statement to a program, plan, or policy statement or analysis of lesser scope or to a site-specific statement or analysis.**

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 17 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

**(b) From an environmental impact statement on a specific action at an early stage (such as need and site selection) to a supplement (which is preferred) or a subsequent statement or analysis at a later stage (such as environmental mitigation).  Tiering in such cases is appropriate when it helps the lead agency to focus on the issues which are ripe for decision and exclude from consideration issues already decided or not yet ripe.**  (40 CFR 1508.28)

Wetlands.  As defined by E.O. 11990, areas that are inundated by surface or ground water with a frequency sufficient to support (and that under normal circumstances do or would support) a prevalence of vegetation or aquatic life that requires saturated or seasonally saturated soil conditions for growth and reproduction.

## 06 - SCHEDULE OF PROPOSED ACTIONS (SOPA)

***Schedule of Proposed Actions (SOPA).  A Forest Service document that informs the public about those proposed and ongoing Forest Service actions for which a record of decision, decision notice, or decision memo would be or has been prepared.  The SOPA also includes a contact for additional information on any proposed action.***  (36 CFR 220.3)

The SOPA provides notice of upcoming proposals which may undergo environmental analysis and documentation to interested and affected agencies, organizations, and persons.  The purpose of the schedule of proposed actions is to give early informal notice of proposals so the public can become aware of Forest Service activities and indicate their interest in specific proposals.

***The SOPA shall not be used as the sole scoping mechanism for a proposed action.***  (36 CFR 220.4(e)(3))

The SOPA is published automatically to the World-Wide Web at the end of each quarter by the planning, appeals and litigation system (PALS).  PALS is an internal web-based data entry and reporting tool that captures key planning, decision, appeal and litigation information for projects.

Certain project information, including data related to proposed projects, decisions, and appeals and litigation of decisions, must be entered into the Planning, Appeals and Litigation System (PALS).  Most information can be entered into PALS anytime before the end of each fiscal quarter (the last day of September, December, March, and June).  Project information should be entered into PALS in a timely manner so that the current SOPA is as accurate as possible.  Decision information should be entered into PALS immediately after a decision has been signed to assure the automated appeals notifications produced by PALS are timely and accurate.  In addition to the decision itself, the ability of the decision to be implemented is also tracked in the PALS.  The conclusion to withdraw a decision voluntarily, the reversal of a decision in appeal or a court case directing constraint of a decision all require notation (action) in PALS.

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 18 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

## 06.04 - Responsibility

***The responsible official shall ensure the SOPA is updated and notify the public of the availability of the SOPA.***  (36 CFR 220.4(d))

SOPA managers, unit managers, and those with project data entry roles in PALS can update project information within PALS.  However, each SOPA manager within PALS is responsible for reviewing project information entered into PALS and accepting or declining new and updated projects before these are included for quarterly publication to the World-Wide Web.

## 06.1 - Frequency of Distribution

PALS automatically distributes the SOPA quarterly to interested and affected agencies, organizations, and individuals through the use of a public SOPA website:

Districts and forests should make paper copies of the SOPA available to people upon request.

The schedule should include proposed actions which are anticipated to be categorically excluded from documentation in an EIS or an EA and for which a decision memo would be required (ch.30).

For those proposed actions which are planned and analyzed between publications of the schedule, include notice of the action and the status in the next schedule.

## 06.2 - Schedule Format and Content

The PALS database automatically generates the SOPA based on data input into the system.  For the purposes of publishing the SOPA, at a minimum, project data input in PALS must include:

1. Name of the administrative unit and time period covered by the schedule.

2. Description of the upcoming projects and/or activities which are expected to undergo environmental analysis in the time period specified.

3. Location of the proposed action including the State, county, and where appropriate, the ranger district and the legal land description.

4. The estimated date when scoping may begin.

5. The estimated date of the decision.

6. A name, address, and telephone number of the person to contact for information and/or to be placed on the mailing list.

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 19 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

7.  Status of the environmental analysis including dates of any *Federal Register* or other legal notices and dates of decision documents planned or previously published or issued, and the estimated implementation date(s).

## 07 - EMERGENCY AND CLASSIFIED ACTIONS

1.  <u>Emergency Actions</u>.

**Where emergency circumstances make it necessary to take an action with significant environmental impact without observing the provisions of these regulations, the Federal agency taking the action should consult with the Council about alternative arrangements. Agencies and the Council will limit such arrangements to actions necessary to control the immediate impacts of the emergency.  Other actions remain subject to NEPA review.**  (40 CFR 1506.11)

Forest Service NEPA regulations set forth agency procedures for complying with the above CEQ regulation:

*(b)  Emergency responses.*

*When the responsible official determines that an emergency exists that makes it necessary to take urgently needed actions before preparing a NEPA analysis and any required documentation in accordance with the provisions in sections 220.5, 220.6, and 220.7 of this part, then the following provisions apply.*

*(1) The responsible official may take actions necessary to control the immediate impacts of the emergency and are urgently needed to mitigate harm to life, property, or important natural or cultural resources. When taking such actions, the responsible official shall take into account the probable environmental consequences of the emergency action and mitigate foreseeable adverse environmental effects to the extent practical.*

*(2) If the responsible official proposes emergency actions other than those  actions described in paragraph (b)(1), and such actions are not likely to have significant environmental impacts, the responsible official shall document that determination in an EA and FONSI prepared in accord with these regulations.  If the responsible official finds that the nature and scope of proposed emergency actions are such that they must be undertaken prior to preparing any NEPA analysis and documentation associated with a CE or an EA and FONSI, the responsible official shall consult with the Washington Office about alternative arrangements for NEPA compliance. The Chief or Associate Chief of the Forest Service may grant emergency alternative arrangements under NEPA for environmental assessments, findings of*

WO AMENDMENT 1909.15-2011-4
EFFECTIVE DATE:  09/14/2011
DURATION:  This amendment is effective until superseded or removed.

1909.15_zero_code
Page 20 of 20

**FSH 1909.15 - NATIONAL ENVIRONMENTAL POLICY ACT HANDBOOK
CHAPTER - ZERO CODE**

*no significant impact and categorical exclusions (FSM 1950.41a). Consultation with the Washington Office shall be coordinated through the appropriate regional office.*

*(3)  If the responsible official proposes emergency actions other than those actions described in paragraph (b)(1) and such actions are likely to have significant environmental impacts, then the responsible official shall consult with CEQ, through the appropriate regional office and the Washington Office, about alternative arrangements in accordance with CEQ regulations at 40 CFR 1506.11 as soon as possible.*  (36 CFR 220.4(b))

2.  <u>Classified Actions</u>.

**. . . (c) Agency procedures may include specific criteria for providing limited exceptions to the provisions of these regulations for classified proposals. They are proposed actions which are specifically authorized under criteria established by an Executive Order or statute to be kept secret in the interest of national defense or foreign policy and are in fact properly classified pursuant to such Executive Order or statute.  Environmental assessments and environmental impact statements which address classified proposals may be safeguarded and restricted from public dissemination in accordance with agencies' own regulations applicable to classified information.  These documents may be organized so that classified portions can be included as annexes, in order that the unclassified portions can be made available to the public.**  (40 CFR 1507.3(c))

*To the extent practicable, the responsible official shall segregate any information that has been classified pursuant to Executive order or statute. The responsible official shall maintain the confidentiality of such information in a manner required for the information involved. Such information may not be included in any publicly disclosed documents. If such material cannot be reasonably segregated, or if segregation would leave essentially meaningless material, the responsible official must withhold the entire analysis document from the public; however, the responsible official shall otherwise prepare the analysis documentation in accord with applicable regulations.*  (36 CFR 220.4(g))

## 08 - OVERVIEW OF PROCESS [RESERVED]