```
 1            IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF OREGON

 3   BLUE MOUNTAIN BIODIVERSITY    )
     PROJECT, an Oregon non-profit )
 4   corporation,                  )
                                   )
 5           Plaintiff,            )  Case No. 2:20-cv-02158-MO
                                   )
 6      v.                         )
                                   )
 7   SHANE JEFFRIES, et al.,       )  September 29, 2021
                                   )
 8           Defendants.           )  Portland, Oregon
     _____)

 9

10

11

12

13

14

15                      Oral Argument

16               TRANSCRIPT OF PROCEEDINGS

17      BEFORE THE HONORABLE MICHAEL W. MOSMAN

18         UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25
```

```
 1

 2                             APPEARANCES

 3

 4    FOR THE PLAINTIFF:      Mr. Thomas C. Buchele
                              Ms. Bridgett Buss
 5                            Earthrise Law Center
                              10015 S.W. Terwilliger Blvd.
 6                            Portland, OR 97219

 7

 8                            Mr. Jesse Buss
                              Attorney at Law
 9                            411 5th Street
                              Oregon City, OR 97045
10

11

12    FOR THE DEFENDANT:      Mr. Sean C. Duffy
                              U.S. Department of Justice
13                            Environmental & Natural Resources Div.
                              150 M Street NE
14                            Washington, DC 20002

15

16    ALSO PRESENT:           Ms. Claire Deuter
                              Ms. Rebecca Harrison
17                            Ms. Beth Peer

18

19

20    COURT REPORTER:         Bonita J. Shumway, CSR, RMR, CRR
                              United States District Courthouse
21                            1000 S.W. Third Ave., Room 301
                              Portland, OR  97204
22                            (503) 326-8188

23

24

25
```

(P R O C E E D I N G S)

(September 29, 2021; 1:38 p.m.)

* * * * *

THE COURTROOM DEPUTY:  Your Honor, this is the time and place set for oral argument in Case No. 2:20-cv-2158-MO, Blue Mountain Biodiversity Project versus Jeffries, et al.

Counsel, can you introduce yourself for the record.

MR. BUCHELE:  Good afternoon, Your Honor.  Tom Buchele from Earthrise Law Center for the plaintiff.  I'm joined by --

THE COURT:  I'm going to ask to pause you there.  Go ahead and take a seat, because I'll hear you better if you're seated.  I know that goes against all your training.

MR. BUCHELE:  It does, Your Honor.  Thank you.

Tom Buchele with the Earthrise Law Center for the Blue Mountain Biodiversity Project.  I'm joined by our legal fellow, Bridgett Buss, and one of our students, Claire Deuter, and my co-counsel, Jesse Buss.

THE COURT:  Who will be arguing today?

MR. BUCHELE:  Mr. Buss and I will both be arguing.

THE COURT:  All right.  Thank you.

MR. DUFFY:  Good afternoon, Your Honor.  Sean Duffy for the Department of Justice.  I'm joined today with Rebecca Harrison, who is an attorney with the U.S. Department of Agriculture, and Beth Peer, who is an environmental coordinator

1   with the Forest Service.

2            THE COURT:  Are you going to be handling the

3   argument?

4            MR. DUFFY:  Yes, I will.

5            THE COURT:  Thank you.

6            I'd like to fairly narrowly limit argument here.

7   We're here both on a motion to compel that amounts to also an

8   objection to Judge Sullivan's F&R on this subject, and a motion

9   for preliminary injunction.

10            I agree with Judge Sullivan on the motion to compel,

11   including both the documents themselves and the privilege log,

12   and I am going to adopt her reasoning and deny the motion to

13   compel here, which means I'm also not going to consider

14   documents that are embodied in the request.  I don't need to

15   hear further argument on it.

16            So I want to consider then the motion for preliminary

17   injunction.  And there are a number of theories for getting at

18   different claims for preliminary injunction, and I'm going to

19   analyze them under the general test that the parties have

20   agreed on and that are fairly well settled in cases like this,

21   and I'm going to focus really on success on the merits only.

22            In my view of the factors I have to consider,

23   plaintiffs have established a very solid case for irreparable

24   harm, and the government's argument to the contrary I find

25   unpersuasive.  I don't accept the idea out of I think the

Northern District of California or elsewhere that something about the physical character of the forest can reduce the harm, instead find that whether it's a recent burn or old growth or whatever it may be, those are all areas susceptible to irreparable harm.  And then once you get past that sort of analytic obstacle, plaintiffs have a compelling showing here of irreparable harm.

The same, I think, goes for the balance of hardships. And that's, of course, pretty common in a case like this.  The hardships here favor plaintiff.  You have a loss of these trees that is, if not permanently irreplaceable, at least for multiple generations, swept away if plaintiffs lose, and for the government here, modest harm.  So in terms of the competing harms, I think that favors plaintiff.

The public interest is always hard to figure out, since you can state a public interest in both directions, but certainly there is a public interest in plaintiff's case here that I think any statement one might make of the competing public interests slightly favors plaintiff.

I will say on balance of hardships that since I'm about to turn to tentative thoughts on likelihood of success, that the balance of hardships, in my view, tips sharply in plaintiff's favor in this case.

So there are only two theories that I think are worth discussion on likelihood of success on the merits.  The first

1  is Claim 1, Count 5, in which the Blue Mountain Biodiversity

2  Project's argument is that the project is significant under

3  NEPA and requires an EIS, which was not done.  And this is

4  really -- I want to focus on context, not intensity.  I think

5  context is really the most important piece of this whole thing.

6  And we have the sort of thing that is not uncommon in a case

7  like this, in terms of the scale of focus that the parties are

8  engaging in.

9          So Blue Mountain Biodiversity Project wants to focus

10  on the Walton Lake recreation area, or at least something close

11  to that, only a couple hundred acres, and the Forest Service

12  wants to focus on the Ochoco National Forest as a whole, which

13  is something in excess of, I think, 800,000 acres, if I can

14  find it here.  845,498 acres.

15          So those are obviously, you know, a world apart in

16  scope.  I'll hear from the parties -- I'm not ruling today,

17  it's just my tentative view that while I'm not sure that the

18  proper context or scope to look at is the Walton Lake

19  recreation area, I am persuaded that the entire Ochoco National

20  Forest is taking the lens out too broadly and creating an

21  artificially large context that artificially deflates

22  substantial -- or significant impact.

23          I also am going to discuss Claim 1, Count 4, but

24  let's do these one at a time.  And so since it's plaintiff's

25  motion, I'll start with you on anything you might want to add

1    on the prong of likelihood of success on the merits, and

2    focusing only on context on Claim 1, Count 5.

3            MR. BUCHELE:  Certainly, Your Honor.

4            The CEQ regulation at issue here, 1508.27(a), I think

5    is quite clear on this, that it might be permissible to look at

6    more than one context, but in the situation where you've got a

7    site-specific project like this, you must look at the context

8    in the locale.  That's the language that they use, that the

9    regulation uses, and I think it would be -- the Forest Service

10   just didn't do that, if you consider the Walton Lake recreation

11   area to be the locale, which I think is the most logical

12   reading of the regulation.  There is just nothing in the Forest

13   Service's FONSI that ever does that, looks at significance in

14   the context of the 218-acre Walton Lake recreation area.

15           And all they do is they say the impacts are small or

16   insignificant, whether you compare them to the forest or all of

17   the developed recreation areas in the forest, which are

18   scattered over that forest.  And there is no attempt made to

19   ever look at the context in the locale.  And I think that is

20   the clear legal error here, that you could, under the reading

21   of 1508.27(a), look at all three of those areas, but the most

22   important of the three, when you're talking about a

23   site-specific project, is the context in the locale.  And the

24   impacts in the locale for Walton Lake are certainly

25   significant, and I would say dramatic.

1        THE COURT:  Isn't it almost always going to be the
2   case if you -- if this context you're examining to determine
3   significant impact is essentially the site of the project, then
4   wouldn't you almost always have significant impact in the site
5   of the project?
6        MR. BUCHELE:  Actually, no, Your Honor.  I think
7   that's actually not the case.  I think -- I do a lot of timber
8   sale litigation.  Often the project area for the timber sale
9   would be -- for example, I think in one case I'm working on
10  right now is almost 30,000 acres is the project area, but the
11  actual logging is 1200 acres.  So the context is the
12  30,000 acres, the watershed, typically, and there you would
13  have, I think, a much harder argument that the impacts are
14  significant.
15       THE COURT:  In this case, if you made the context the
16  Walton Lake recreation area, then it's almost tautological,
17  isn't it, that you'd have significant impact?
18       MR. BUCHELE:  I would agree with that, Your Honor,
19  because when you're talking about logging of 170-some acres out
20  of the 218, and I think as we indicated in our brief, I think
21  18 of those acres are the lake, so we're talking about almost
22  90 percent of the forested area is going to be impacted and
23  35 acres are going to be devastated for at least ten years,
24  essentially a clearcut, including more than 25 percent of the
25  visual influence area.

So -- and in addition to that, it's not just the acreage, it's four plan amendments, which is unprecedented. And that indicates that they are deviating from their management plan significantly.  And that I also think supports significance, the fact that they've had to do four separate plan amendments to do this project on this small area.  So it's not just the volume and amount of the logging or the type of logging, it's also the deviation from the plan and what the plan says is supposed to be done here.  I think those things together really indicate significance.

THE COURT:  Thank you very much.

Your response?

MR. DUFFY:  Thank you, Your Honor.

The CEQ regulations, taking a step back, they govern when the Forest Service is analyzing the project, and it has to do an environmental impact statement because there's significant impacts.  And they do, they require to look at context and intensity.  And I agree that in the finding of no significant impact, the discussion of context here is quite broad.

But taking a look at the bigger picture here, in the EA, the Forest Service analyzed impacts on a number of different resources for each of the different proposals.  And by necessity, in looking at those impacts, it was looking locally for many of those.  For example, on the vegetation in

1    the area, on soils, on aquatic species, each one of these --

2    each one of these analyses for these resources is going to have

3    a different scope, depending on the resource itself.  For

4    species, it might be quite broad.  It could be within the

5    watershed for some resources.

6           But I guess my point is that this finding of no

7    significant impact, though it does speak in very broad terms

8    about the small scope of this project within the broader

9    context of the forest, it's backed up by a significant

10   environmental analysis that looked -- that looked specifically

11   at this project in a localized sort of way.

12           THE COURT:  Thank you very much.

13           Let's turn to Claim 1, Count 4.  Here plaintiff's

14   argument is that the -- this ongoing contract violates NEPA as

15   an irretrievable commitment, the idea being, I guess, that if

16   the Forest Service is irretrievably committed to one course of

17   action, that it's not meaningfully considering alternatives.

18   Those are sort of fake considerations of alternatives.

19           And so that irretrievable commitment has, in the case

20   law, I think, most frequently occurred by an actual irrevocable

21   commitment of natural resources, making anything else, as I

22   said, sort of a chimerical consideration of alternatives.

23           Here, if I have plaintiff's argument right, you want

24   me to consider sort of irretrievable dedication of financial

25   resources as an irretrievable commitment, the idea being that

1  if the Forest Service here has either dedicated or will lose

2  money if any other plan is explored -- or rather is

3  implemented, that it won't meaningfully explore any other

4  alternative.  It will go with the only one that allows it to

5  either make or keep its money instead of losing money.  And in

6  terms of measuring the amount of money that might make that

7  meaningful, I think plaintiff suggests that the plaintiff -- or

8  the Ninth Circuit has suggested -- not held but suggested that

9  one way to think about that is if there's not enough money left

10  over if the Forest Service loses the money dedicated to the

11  current plan to do anything else, to start over and put in

12  place another plan.

13       That's how I understand the -- plaintiff's

14  irretrievable commitment argument under NEPA.  Do I have that

15  about right or do you need to amplify it a little?

16       MR. BUSS:  I believe you have it right, Your Honor.

17  The one thing I would clarify is it doesn't need to be a

18  100 percent absolute committed funding for natural resources.

19  All there has to be is a thumb on the scale that influences and

20  prejudices the choices of the reasonable range of alternatives.

21  So it doesn't have to be something that the Forest Service

22  can't take back.

23       THE COURT:  The way the Ninth Circuit has described

24  it, it would have to be a pretty big thumb, right?  It can't

25  just be any amount of money.  They suggest, at least, it has to

1    be an amount of money that makes actually backing up and

2    implementing a different plan unlikely because there isn't the

3    money to do it left over.

4            MR. BUSS:  Well, Your Honor, what constitutes a lot

5    of money is very subjective, depending on the project.  And

6    here we're talking about, yes, a relatively small geographic

7    area, and a total budget for this is about $78,000 that the

8    Forest Service has said it's going to spend by awarding that

9    contract to T2, but then there's this additional $36,000 in

10    timber value, which is mostly from Units 2 through 4 from the

11    large old trees.  So we're talking about a total value here of

12    about $114,000, give or take.  And in the grand scheme of

13    things, that's not a lot of money compared to some cases.  We

14    cited the *National Wildlife Foundation* case that Judge Simon

15    decided a few years ago that involved at least a few million

16    dollars, but we were talking about capital improvements to

17    dams, the four lower Snake River dams in that case.  So the

18    scale of the project there was much larger, four dams spanning

19    the Columbia River.  Here we only have a few-hundred-acre

20    parcel.  But $114,000 is a lot for that parcel, and I suggest

21    to the Court that it shouldn't be determinative how much money

22    there is, but rather context dependent whether that has put a

23    thumb on the scale and prejudiced the alternatives.

24            And here, as we said in the briefing, this is a

25    use-it-or-lose-it scenario.  The Forest Service's contracting

1   officer Mark Phillips said -- and I quote from AR 7897 -- "If

2   the treatment prescription changes drastically or wood product

3   values continue to decline, that contract awarded years ago

4   will be terminated without performance and we will lose those

5   appropriated dollars and likely not have the funds to compete

6   and complete a new project."

7         He went on to say that "Already having an awarded

8   contract and not having the funds is the second part of the

9   scenario that doesn't meet the good news category that I would

10   prefer not to share with a potentially less-than-understanding

11   public."

12         And it may be helpful, Your Honor, yes, the Ninth

13   Circuit has largely talked about this issue of limiting the

14   choice of reasonable alternatives under 40 C.F.R. 1506.1, but

15   as Judge Simon recently pointed out in that *National Wildlife*

16   *Federation* case, you also have 40 C.F.R. 1502.2(f), which is a

17   lesser burden on plaintiffs.  You only have to show the

18   prejudicing selection of alternatives.

19         And we have a fairly lengthy block quote in our reply

20   on this issue that we think accurately summarizes the law.

21   There's never been a Ninth Circuit case that says you have to

22   completely go all in before NEPA is complete, before you can

23   irretrievably commit resources.  *Metcalf* itself was applying

24   the standard of when you needed to prepare an EIS, at what

25   point have you passed -- have you gone too far.  But there's

 1  never been a standard saying that there has to be no escape for

 2  the Forest Service, Your Honor.

 3        THE COURT:  Thank you very much.

 4        Go ahead, sir.

 5        MR. DUFFY:  Thank you, Your Honor.  A couple of

 6  things.

 7        So this is a stewardship project that's in place,

 8  $78,000 of appropriated funds.  That's money that gets paid out

 9  to the contract partner because they're doing, in addition to

10  hauling away timber that has value, they're also doing work and

11  hauling leavings of no value.  This contract in no way

12  prejudices the Forest Service's decision.  There's absolutely

13  nothing on the record that suggests that.

14        THE COURT:  What's the status of payment there?  This

15  is a contract that was awarded for services rendered.  The

16  contracting -- the independent contractor was supposed to get

17  $78,000.

18        MR. DUFFY:  Right.

19        THE COURT:  Has that person already been paid that

20  money?

21        MR. DUFFY:  No, they have not.  And, in fact, as we

22  speak, that contract is being modified, and that's because from

23  the time it was awarded, the Forest Service has always retained

24  the authority to cancel the contract or to modify it, and

25  they're exercising that authority now.

```
 1            THE COURT:  So in your understanding, based on the
 2    record I have in front of me, not what's happened recently,
 3    what happens if this contract is significantly altered?
 4            MR. DUFFY:  So if the contract was significantly
 5    altered in a way that was going to cost the Forest Service
 6    more, they would have to seek additional funds.
 7            THE COURT:  I'm trying to go with the wording used in
 8    the email, and it says, "if the treatment prescription changes
 9    drastically."  I can't do much about wood product value, but
10    what does that mean, "if the treatment prescription changes
11    drastically"?  Do you know?
12            MR. DUFFY:  I really don't.  That's one person's
13    thoughts in an email.  I don't know precisely what they had in
14    mind when they wrote that.
15            THE COURT:  The concept -- backing up a little bit,
16    the concept of irretrievable commitment is, of course, that in
17    some way your analysis of alternatives is affected by losses
18    you might incur or trouble you might get in, like if you
19    actually committed to someone that they can extract natural
20    resources and then you have to back up on that, you'd probably
21    be out money for that or something.  That's the general idea,
22    that the thumb on the scale is that one alternative is much
23    more attractive than the others because the others are going to
24    cost the Forest Service in some way.
25            Is that the case here?  Are the other alternatives
```

1    going to cost the Forest Service something significant if

2    you're required to take -- to consider and maybe even engage in

3    a different alternative?  Is that consideration of an

4    alternative affected by the fact that anything other than Plan

5    A is going to cost you money?

6              MR. DUFFY:  Well, I don't believe that -- I don't

7    believe that that consideration -- there's any evidence that

8    that was a consideration in this case.  There's a couple of

9    things I can imagine, based on my experience in other cases,

10   where I've seen the Forest Service go through this contracting

11   process.  Yes, they would have to modify the contract if they

12   were going to do something that was different than what they

13   were planning back in 2015, and what I'm telling you today is

14   they are modifying the contract because there is something

15   different.  They could cancel the contract and find a new

16   contracting partner.  There's just any number of scenarios.  I

17   just -- I just cannot believe that $78,000 is a significant

18   enough sum that it would change the Forest Service's

19   consideration of the alternatives.

20             THE COURT:  I suppose there is an amount so small

21   that the Forest Service just doesn't really care very much, but

22   wouldn't you agree generally with the proposition that it's not

23   an abstract dollar amount I should look at, it's the dollar

24   amount as it relates to the project?  So if the Forest Service

25   has a small project that's going to cost them $100,000, and

1    Plan A will only cost them $100,000, and Plans B, C, and D will

2    result in them having to spend $200,000, none of that is, you

3    know, a gigantic amount of money, certainly nothing Congress is

4    going to care about this week, I'm sure, and --

5           MR. DUFFY:  That has nothing to do with that

6    analysis, however.

7           THE COURT:  I guess what I'm suggesting is isn't the

8    amount of money that might represent an irretrievable

9    commitment linked to some degree to the size of the project?

10   There may be a de minimus amount that's just too small to care

11   about, and you can't imagine the Forest Service would have its

12   decision making influenced by it, but I don't think we could

13   say there's like a floor of $25 million, and anything below

14   that cannot possibly represent an irretrievable commitment.

15   Wouldn't you agree with that?

16          MR. DUFFY:  I don't think there's a floor -- so yes,

17   I agree with that, but I think there's a bigger issue here, and

18   that is that this contract has nothing to do with that

19   analysis.  With the Forest Service's four alternatives in front

20   of it, it doesn't necessary need a contract in place.  They

21   could cancel it and get a new contract.  There's always going

22   to be one choice that's going to cost more than another choice,

23   but that's true of every single decision they make, whether

24   there's a contract in place or one that may be contemplated in

25   the future.

1          THE COURT:  I think the idea of irretrievable

2     commitment is, in part, not that one alternative costs more or

3     gains the Forest Service less in fees or something, but that

4     one represents a sort of a sunk cost and the others don't.  Is

5     that in play here?

6          MR. DUFFY:  I think that's part of it.  If there

7     was -- it's hard to get to the question of irretrievable here

8     because the Forest Service had no commitment under this

9     contract to even go through with it.

10          THE COURT:  That's your most fundamental position,

11     then, is that there's really nothing that's a sunk cost in this

12     case?

13          MR. DUFFY:  Correct.

14          THE COURT:  That at any point the Forest Service can

15     just back off, do something different, and the most you might

16     say is that the next person to show up might, you know, require

17     more money to do the services you want?

18          MR. DUFFY:  Yeah, that's correct.

19          THE COURT:  All right.  Thank you.

20          Do you wish to reply to that at all?

21          MR. BUSS:  Thank you, Your Honor, yes.

22          It bears emphasizing that without this contract, the

23     Forest Service cannot implement the Walton Lake project.  They

24     only got one bid last time.  There's a reason they're holding

25     on to it and have been holding on to it for five years, and

1    that reason is clearly expressed in the record by the actual

2    contracting officer, Mark Phillips, and he's the one in the

3    record that explains what will happen if this project gets

4    substantially modified.

5              We would object to the new evidence that's not in the

6    record that was just presented by counsel for the Forest

7    Service, saying that the contract is being modified and saying

8    what might happen next.  We know --

9              THE COURT:  How do I know on this record that this is

10   their only chance to do the Walton Lake project, this contract?

11   If they don't make this one work, they can't do the project.

12   How do I know that?

13             MR. BUSS:  Well, Your Honor, I -- first of all I

14   didn't say that.  They may be able to find a workaround, but

15   what we know is that the funding they have and that they're

16   afraid of losing is tied to this contract, which is absolutely

17   tied to cutting those 35 acres of 60-inch firs in Units 2

18   through 4.  It may be they could come up with alternative

19   arrangements, but the standard is not whether they could come

20   up with some other arrangement and find a different way to pay

21   for something.  As the briefing shows, the record is replete

22   with examples of how the Forest Service has been committed to

23   this project, has been committed to this particular alternative

24   for five years.  We don't need to go --

25             THE COURT:  I guess there are two things that don't,

1    I think, show irretrievable commitment.  One is the Forest

2    Service's commitment to a particular plan over time, since it

3    can just as easily be that they are committed to the plan they

4    like.  And it would be an odd way to prove irretrievable

5    commitment.  And the second is that they have chosen a plan

6    that rejects some more expensive option.  It can't be the case

7    that you aren't meaningfully considering an alternative if the

8    alternative is more expensive than the plan you choose.  That's

9    not what irretrievable commitment means, right?

10           MR. DUFFY:  Your Honor, in other contexts, yes, it

11   would not come down to which is the least expensive, but in

12   this case, the Forest Service has hitched -- they've hitched

13   their buggy to that horse, which is this contract.  So if they

14   had backed away from the 2016 contract --

15           THE COURT:  What does the Forest Service lose if it's

16   forced to consider other alternatives and then pick one?

17           MR. BUSS:  I'm sorry, Your Honor, I don't understand

18   the question.

19           THE COURT:  Well, irretrievable commitment is either

20   about money that you must pay out or money you -- well, for

21   your purposes, money -- money that you must pay out that you

22   wouldn't have to pay out if you got to stick with your original

23   plan or money that you lose that you wouldn't lose if you got

24   to stick with your original plan.  That's the theory of

25   irretrievable commitment, right, when you're talking about

1  money?

2       MR. BUSS:  It's not so much what they would lose,

3  Your Honor, it's what they fear they might lose.

4       THE COURT:  Understood.  So what is it that's on the

5  table as money that might be lost if they can't stick with

6  their original plan?

7       MR. BUSS:  Well, it's not so much money that would be

8  lost, Your Honor -- and I'll point out that the record does say

9  they will lose the appropriated dollars if the contract falls

10 through -- but they will lose the opportunity to do this

11 project.  So the focus isn't on, well, will the funds be lost.

12 The focus here is on can they do this project at all.

13      THE COURT:  I want to be clear about that.  Your

14 argument is not that losing appropriated funds represents a way

15 of seeing irretrievable commitment to this plan?

16      MR. BUSS:  Your Honor, from plaintiff's perspective,

17 our claims are in no way hitched on the Forest Service's loss

18 of money.  They haven't irretrievably committed the money, but

19 they have agreed to this contract for that amount of money, and

20 that contract is the linchpin alternative to the clear-cutting,

21 is the linchpin to making any of this work.

22      THE COURT:  Well, I thought I asked you a minute ago

23 whether you were arguing that the Forest Service is committed

24 to this contract because it can't make this project happen any

25 other way.  A minute ago I thought you said no, that's not your

1   argument.

2         MR. BUSS:  Yes, Your Honor.  We're relying on their

3   contracting officer who says they will lose this project if

4   the -- if they lose the contract, they won't be able to fund

5   it.  So it's a combination of losing funding and that funding

6   being the entire basis for this project that the Forest Service

7   wants to do.

8         THE COURT:  Thank you very much.

9         MR. BUSS:  Thank you.

10        THE COURT:  I appreciate the careful arguments here.

11  I want to remind you that I'm only making findings that have to

12  do with the injunctive phase.  I'm not going to make any

13  findings that rule on the absolute merits of the case.

14        But in my view, on Claim 1, Count 5, plaintiffs have

15  made a case for likelihood of success on the merits, or at a

16  minimum, serious questions going to the merits, and therefore,

17  because I've already ruled on the other prongs of the

18  preliminary injunction hearing or request in plaintiff's favor,

19  I am granting the request for a preliminary injunction.

20        I find no other claim or argument that has a

21  likelihood of success on the merits or serious questions going

22  to the merits, but that's fine.  This one will do, and one is

23  enough to get the preliminary injunction.

24        Have the -- has plaintiff submitted a form of

25  injunction already?

1          MR. BUCHELE:  We have not, Your Honor.  We put

2    language in our motion that was exactly the same language we

3    used back in 2016, and so it would probably be fairly easy to

4    negotiate with the government language for a proposed order.

5    We hope to do that certainly by Monday.

6          THE COURT:  Please do that.  Please submit a proposed

7    form of order for preliminary injunction by Monday.

8          Anything else from Blue Mountain Biodiversity

9    Project?

10          MR. BUCHELE:  No, Your Honor.

11          THE COURT:  Anything more from the Forest Service?

12          MR. DUFFY:  No, Your Honor.

13          THE COURT:  Thank you.  We'll be in recess.

14          THE COURTROOM DEPUTY:  This court is adjourned.

15          (Proceedings adjourned at 2:11 p.m.)

--o0o--

        I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


*/s/Bonita J. Shumway*                    *October 5, 2021*
_____          _____
BONITA J. SHUMWAY, CSR, RMR, CRR     DATE
Official Court Reporter

MR. BUCHELE: [8]  3/7 3/13
3/19 7/2 8/5 8/17 22/25 23/9
MR. BUSS: [10]  11/15 12/3
18/20 19/12 20/16 21/1 21/6
21/15 22/1 22/8
MR. DUFFY: [16]  3/21 4/3
9/12 14/4 14/17 14/20 15/3
15/11 16/5 17/4 17/15 18/5
18/12 18/17 20/9 23/11
THE COURT: [34]
THE COURTROOM DEPUTY:
[2]  3/2 23/13

$
$100,000 [2]  16/25 17/1
$114,000 [2]  12/12 12/20
$200,000 [1]  17/2
$25 [1]  17/13
$25 million [1]  17/13
$36,000 [1]  12/9
$78,000 [4]  12/7 14/8 14/17
16/17

-
--o0o [1]  24/2

/
/s/Bonita [1]  24/9

1
100 percent [1]  11/18
1000 [1]  2/21
10015 [1]  2/5
1200 acres [1]  8/11
150 [1]  2/13
1502.2 [1]  13/16
1506.1 [1]  13/14
1508.27 [2]  7/4 7/21
170-some [1]  8/19
18 [1]  8/21
1:38 [1]  3/2

2
20002 [1]  2/14
2015 [1]  16/13
2016 [2]  20/14 23/3
2021 [3]  1/7 3/2 24/9
218 [1]  8/20
218-acre [1]  7/14
25 percent [1]  8/24
29 [2]  1/7 3/2
2:11 [1]  23/15
2:20-cv-02158-MO [1]  1/5
2:20-cv-2158-MO [1]  3/5

3
30,000 acres [2]  8/10 8/12
301 [1]  2/21
326-8188 [1]  2/22
35 acres [2]  8/23 19/17

4
40 [2]  13/14 13/16
411 [1]  2/9

5
503 [1]  2/22
5th [1]  2/9

6
60-inch [1]  19/17

7
7897 [1]  13/1

8
800,000 acres [1]  6/13
8188 [1]  2/22
845,498 acres [1]  6/14

9
90 percent [1]  8/22
97045 [1]  2/9
97204 [1]  2/21
97219 [1]  2/6

A
able [2]  19/14 22/4
about [20]  5/2 5/21 7/22 8/19
8/21 10/8 11/9 11/15 12/6 12/7
12/11 12/12 12/16 13/13 15/9
17/4 17/11 20/20 20/25 21/13
above [1]  24/6
above-entitled [1]  24/6
absolute [2]  11/18 22/13
absolutely [2]  14/12 19/16
abstract [1]  16/23
accept [1]  4/25
accurately [1]  13/20
acre [2]  7/14 12/19
acreage [1]  9/2
acres [10]  6/11 6/13 6/14 8/10
8/11 8/12 8/19 8/21 8/23 19/17
action [1]  10/17
actual [3]  8/11 10/20 19/1
actually [4]  8/6 8/7 12/1 15/19
add [1]  6/25
addition [2]  9/1 14/9
additional [2]  12/9 15/6
adjourned [2]  23/14 23/15

adopt [1]  4/12
affected [2]  15/17 16/4
afraid [1]  19/16
afternoon [2]  3/8 3/22
against [1]  3/13
ago [4]  12/15 13/3 21/22 21/25
agree [6]  4/10 8/18 9/18 16/22
17/15 17/17
agreed [2]  4/20 21/19
Agriculture [1]  3/25
ahead [2]  3/12 14/4
al [2]  1/7 3/6
all [12]  3/13 3/21 5/4 7/15 7/16
7/21 11/19 13/22 18/19 18/20
19/13 21/12
allows [1]  11/4
almost [5]  8/1 8/4 8/10 8/16
8/21
already [4]  13/7 14/19 22/17
22/25
also [8]  2/16 4/7 4/13 6/23 9/4
9/8 13/16 14/10
altered [2]  15/3 15/5
alternative [10]  11/4 15/22
16/3 16/4 18/2 19/18 19/23
20/7 20/8 21/20
alternatives [12]  10/17 10/18
10/22 11/20 12/23 13/14 13/18
15/17 15/25 16/19 17/19 20/16
always [5]  5/15 8/1 8/4 14/23
17/21
am [4]  4/12 6/19 6/23 22/19
amendments [2]  9/2 9/6
amount [11]  9/7 11/6 11/25
12/1 16/20 16/23 16/24 17/3
17/8 17/10 21/19
amounts [1]  4/7
amplify [1]  11/15
analyses [1]  10/2
analysis [4]  10/10 15/17 17/6
17/19
analytic [1]  5/6
analyze [1]  4/19
analyzed [1]  9/22
analyzing [1]  9/15
another [2]  11/12 17/22
any [10]  5/18 11/2 11/3 11/25
16/7 16/16 18/14 21/21 21/24
22/12
anything [7]  6/25 10/21 11/11
16/4 17/13 23/8 23/11
apart [1]  6/15
APPEARANCES [1]  2/2
applying [1]  13/23
appreciate [1]  22/10

## A

appropriated [4] 13/5 14/8 21/9 21/14
aquatic [1] 10/1
AR [1] 13/1
are [23] 4/2 4/14 4/17 4/20 5/4 5/24 5/24 6/7 6/15 7/15 7/17 7/24 8/13 8/21 8/23 9/3 10/18 15/23 15/25 16/14 19/25 20/3 21/17
area [12] 6/10 6/19 7/11 7/14 8/8 8/10 8/14 8/22 8/25 9/6 10/1 12/7
areas [3] 5/4 7/17 7/21
aren't [1] 20/7
arguing [3] 3/19 3/20 21/23
argument [14] 1/15 3/5 4/3 4/6 4/15 4/24 6/2 8/13 10/14 10/23 11/14 21/14 22/1 22/20
arguments [1] 22/10
arrangement [1] 19/20
arrangements [1] 19/19
artificially [2] 6/21 6/21
as [12] 6/12 8/20 10/14 10/21 10/25 12/24 13/15 14/21 16/24 19/21 20/3 21/5
ask [1] 3/11
asked [1] 21/22
attempt [1] 7/18
attorney [2] 2/8 3/24
attractive [1] 15/23
authority [2] 14/24 14/25
Ave [1] 2/21
awarded [4] 13/3 13/7 14/15 14/23
awarding [1] 12/8
away [3] 5/12 14/10 20/14

## B

back [6] 9/14 11/22 15/20 16/13 18/15 23/3
backed [2] 10/9 20/14
backing [2] 12/1 15/15
balance [3] 5/8 5/20 5/22
based [2] 15/1 16/9
basis [1] 22/6
be [40]
bears [1] 18/22
because [11] 3/12 8/19 9/16 12/2 14/9 14/22 15/23 16/14 18/8 21/24 22/17
been [6] 13/21 14/1 14/19 18/25 19/22 19/23
before [3] 1/17 13/22 13/22

being [5] 10/15 10/25 14/22 19/7 22/6
believe [4] 11/16 16/6 16/7 16/17
below [2] 17/13 24/4
Beth [2] 2/17 3/25
better [1] 3/12
bid [1] 18/24
big [1] 11/24
bigger [2] 9/21 17/17
BIODIVERSITY [6] 1/3 3/6 3/16 6/1 6/9 23/8
bit [1] 15/15
block [1] 13/19
BLUE [6] 1/3 3/6 3/16 6/1 6/9 23/8
Blvd [1] 2/5
Bonita [3] 2/20 24/9 24/10
both [4] 3/20 4/7 4/11 5/16
Bridgett [2] 2/4 3/17
brief [1] 8/20
briefing [2] 12/24 19/21
broad [3] 9/20 10/4 10/7
broader [1] 10/8
broadly [1] 6/20
Buchele [3] 2/4 3/9 3/15
budget [1] 12/7
buggy [1] 20/13
burden [1] 13/17
burn [1] 5/3
Buss [5] 2/4 2/8 3/17 3/18 3/20

## C

C.F.R [2] 13/14 13/16
California [1] 5/1
can [10] 3/7 5/2 5/16 6/13 13/22 15/19 16/9 18/14 20/3 21/12
can't [8] 11/22 11/24 15/9 17/11 19/11 20/6 21/5 21/24
cancel [3] 14/24 16/15 17/21
cannot [3] 16/17 17/14 18/23
capital [1] 12/16
care [3] 16/21 17/4 17/10
careful [1] 22/10
case [23] 1/5 3/5 4/23 5/9 5/17 5/23 6/6 8/2 8/7 8/9 8/15 10/19 12/14 12/17 13/16 13/21 15/25 16/8 18/12 20/6 20/12 22/13 22/15
cases [3] 4/20 12/13 16/9
category [1] 13/9
cause [1] 24/6
Center [3] 2/5 3/9 3/15
CEQ [2] 7/4 9/14

certainly [5] 5/17 7/3 7/24 17/3 23/5
certified [1] 24/7
certify [1] 24/4
chance [1] 19/10
change [1] 16/18
changes [3] 13/2 15/8 15/10
character [1] 5/2
chimerical [1] 10/22
choice [3] 13/14 17/22 17/22
choices [1] 11/20
choose [1] 20/8
chosen [1] 20/5
Circuit [4] 11/8 11/23 13/13 13/21
cited [1] 12/14
City [1] 2/9
claim [6] 6/1 6/23 7/2 10/13 22/14 22/20
claims [2] 4/18 21/17
Claire [2] 2/16 3/17
clarify [1] 11/17
clear [4] 7/5 7/20 21/13 21/20
clear-cutting [1] 21/20
clearcut [1] 8/24
clearly [1] 19/1
close [1] 6/10
co [1] 3/18
co-counsel [1] 3/18
Columbia [1] 12/19
combination [1] 22/5
come [3] 19/18 19/19 20/11
commit [1] 13/23
commitment [17] 10/15 10/19 10/21 10/25 11/14 15/16 17/9 17/14 18/2 18/8 20/1 20/2 20/5 20/9 20/19 20/25 21/15
committed [8] 10/16 11/18 15/19 19/22 19/23 20/3 21/18 21/23
common [1] 5/9
compare [1] 7/16
compared [1] 12/13
compel [3] 4/7 4/10 4/13
compelling [1] 5/6
compete [1] 13/5
competing [2] 5/13 5/18
complete [2] 13/6 13/22
completely [1] 13/22
concept [2] 15/15 15/16
conformed [1] 24/7
Congress [1] 17/3
consider [7] 4/13 4/16 4/22 7/10 10/24 16/2 20/16
consideration [5] 10/22 16/3

## C

consideration... [3]  16/7 16/8 16/19
considerations [1]  10/18
considering [2]  10/17 20/7
constitutes [1]  12/4
contemplated [1]  17/24
context [17]  6/4 6/5 6/18 6/21 7/2 7/6 7/7 7/14 7/19 7/23 8/2 8/11 8/15 9/18 9/19 10/9 12/22
contexts [1]  20/10
continue [1]  13/3
contract [30]
contracting [6]  12/25 14/16 16/10 16/16 19/2 22/3
contractor [1]  14/16
contrary [1]  4/24
coordinator [1]  3/25
corporation [1]  1/4
correct [3]  18/13 18/18 24/5
cost [9]  15/5 15/24 16/1 16/5 16/25 17/1 17/22 18/4 18/11
costs [1]  18/2
could [7]  7/20 10/4 16/15 17/12 17/21 19/18 19/19
counsel [3]  3/7 3/18 19/6
Count [5]  6/1 6/23 7/2 10/13 22/14
couple [3]  6/11 14/5 16/8
course [3]  5/9 10/16 15/16
court [6]  1/1 1/18 2/20 12/21 23/14 24/11
Courthouse [1]  2/20
creating [1]  6/20
CRR [2]  2/20 24/10
CSR [2]  2/20 24/10
current [1]  11/11
cutting [2]  19/17 21/20
cv [2]  1/5 3/5

## D

dams [3]  12/17 12/17 12/18
DATE [1]  24/10
DC [1]  2/14
de [1]  17/10
decided [1]  12/15
decision [3]  14/12 17/12 17/23
decline [1]  13/3
dedicated [2]  11/1 11/10
dedication [1]  10/24
DEFENDANT [1]  2/12
Defendants [1]  1/8
deflates [1]  6/21
degree [1]  17/9

deny [1]  4/12
Department [3]  2/12 3/23 3/24
dependent [1]  12/22
depending [2]  10/3 12/5
described [1]  11/23
determinative [1]  12/21
determine [1]  8/2
Deuter [2]  2/16 3/17
devastated [1]  8/23
developed [1]  7/17
deviating [1]  9/3
deviation [1]  9/8
didn't [2]  7/10 19/14
different [10]  4/18 9/23 9/23 10/3 12/2 16/3 16/12 16/15 18/15 19/20
directions [1]  5/16
discuss [1]  6/23
discussion [2]  5/25 9/19
DISTRICT [5]  1/1 1/2 1/18 2/20 5/1
Div [1]  2/13
do [31]
documents [2]  4/11 4/14
does [6]  3/14 7/13 10/7 15/10 20/15 21/8
doesn't [5]  11/17 11/21 13/9 16/21 17/20
doing [2]  14/9 14/10
dollar [2]  16/23 16/23
dollars [3]  12/16 13/5 21/9
don't [13]  4/14 4/25 15/12 15/13 16/6 16/6 17/12 17/16 18/4 19/11 19/24 19/25 20/17
done [2]  6/3 9/9
down [1]  20/11
dramatic [1]  7/25
drastically [3]  13/2 15/9 15/11
Duffy [2]  2/12 3/22

## E

EA [1]  9/22
each [3]  9/23 10/1 10/2
Earthrise [3]  2/5 3/9 3/15
easily [1]  20/3
easy [1]  23/3
EIS [2]  6/3 13/24
either [3]  11/1 11/5 20/19
else [3]  10/21 11/11 23/8
elsewhere [1]  5/1
email [2]  15/8 15/13
embodied [1]  4/14
emphasizing [1]  18/22
engage [1]  16/2
engaging [1]  6/8

enough [3]  11/9 16/18 22/23
entire [2]  6/19 22/6
entitled [1]  24/6
environmental [4]  2/13 3/25 9/16 10/10
error [1]  7/20
escape [1]  14/1
essentially [2]  8/3 8/24
established [1]  4/23
et [2]  1/7 3/6
even [2]  16/2 18/9
ever [2]  7/13 7/19
every [1]  17/23
evidence [2]  16/7 19/5
exactly [1]  23/2
examining [1]  8/2
example [2]  8/9 9/25
examples [1]  19/22
excess [1]  6/13
exercising [1]  14/25
expensive [3]  20/6 20/8 20/11
experience [1]  16/9
explains [1]  19/3
explore [1]  11/3
explored [1]  11/2
expressed [1]  19/1
extract [1]  15/19

## F

fact [3]  9/5 14/21 16/4
factors [1]  4/22
fairly [4]  4/6 4/20 13/19 23/3
fake [1]  10/18
falls [1]  21/9
far [1]  13/25
favor [3]  5/10 5/23 22/18
favors [2]  5/14 5/19
fear [1]  21/3
Federation [1]  13/16
fees [1]  18/3
fellow [1]  3/17
few [3]  12/15 12/15 12/19
few-hundred-acre [1]  12/19
figure [1]  5/15
financial [1]  10/24
find [7]  4/24 5/3 6/14 16/15 19/14 19/20 22/20
finding [2]  9/18 10/6
findings [2]  22/11 22/13
fine [1]  22/22
firs [1]  19/17
first [2]  5/25 19/13
five [2]  18/25 19/24
floor [2]  17/13 17/16
focus [7]  4/21 6/4 6/7 6/9 6/12

## F

**focus... [2]** 21/11 21/12
**focusing [1]** 7/2
**FONSI [1]** 7/13
**forced [1]** 20/16
**foregoing [1]** 24/4
**forest [44]**
**forested [1]** 8/22
**form [2]** 22/24 23/7
**Foundation [1]** 12/14
**four [5]** 9/2 9/5 12/17 12/18 17/19
**frequently [1]** 10/20
**front [2]** 15/2 17/19
**fund [1]** 22/4
**fundamental [1]** 18/10
**funding [4]** 11/18 19/15 22/5 22/5
**funds [6]** 13/5 13/8 14/8 15/6 21/11 21/14
**further [1]** 4/15
**future [1]** 17/25

## G

**gains [1]** 18/3
**general [2]** 4/19 15/21
**generally [1]** 16/22
**generations [1]** 5/12
**geographic [1]** 12/6
**get [6]** 5/5 14/16 15/18 17/21 18/7 22/23
**gets [2]** 14/8 19/3
**getting [1]** 4/17
**gigantic [1]** 17/3
**give [1]** 12/12
**go [8]** 3/11 11/4 13/22 14/4 15/7 16/10 18/9 19/24
**goes [2]** 3/13 5/8
**going [24]** 3/11 4/2 4/12 4/13 4/18 4/21 6/23 8/1 8/22 8/23 10/2 12/8 15/5 15/23 16/1 16/5 16/12 16/25 17/4 17/21 17/22 22/12 22/16 22/21
**gone [1]** 13/25
**good [3]** 3/8 3/22 13/9
**got [4]** 7/6 18/24 20/22 20/23
**govern [1]** 9/14
**government [2]** 5/13 23/4
**government's [1]** 4/24
**grand [1]** 12/12
**granting [1]** 22/19
**growth [1]** 5/3
**guess [4]** 10/6 10/15 17/7 19/25

## H

**had [4]** 9/5 15/13 18/8 20/14
**handling [1]** 4/2
**happen [3]** 19/3 19/8 21/24
**happened [1]** 15/2
**happens [1]** 15/3
**hard [2]** 5/15 18/7
**harder [1]** 8/13
**hardships [4]** 5/8 5/10 5/20 5/22
**harm [5]** 4/24 5/2 5/5 5/7 5/13
**harms [1]** 5/14
**Harrison [2]** 2/16 3/24
**has [22]** 9/15 10/19 11/1 11/8 11/19 11/23 11/25 12/8 12/22 13/13 14/1 14/10 14/19 14/23 16/25 17/5 17/18 19/22 19/23 20/12 22/20 22/24
**hauling [2]** 14/10 14/11
**have [38]**
**haven't [1]** 21/18
**having [3]** 13/7 13/8 17/2
**He [1]** 13/7
**he's [1]** 19/2
**hear [3]** 3/12 4/15 6/16
**hearing [1]** 22/18
**held [1]** 11/8
**helpful [1]** 13/12
**her [1]** 4/12
**here [26]**
**hitched [3]** 20/12 20/12 21/17
**holding [2]** 18/24 18/25
**Honor [24]** 3/4 3/8 3/14 3/22 7/3 8/6 8/18 9/13 11/16 12/4 13/12 14/2 14/5 18/21 19/13 20/10 20/17 21/3 21/8 21/16 22/2 23/1 23/10 23/12
**HONORABLE [1]** 1/17
**hope [1]** 23/5
**horse [1]** 20/13
**how [5]** 11/13 12/21 19/9 19/12 19/22
**however [1]** 17/6
**hundred [2]** 6/11 12/19

## I

**I'd [1]** 4/6
**I'll [4]** 3/12 6/16 6/25 21/8
**I'm [18]** 3/9 3/11 3/16 3/23 4/13 4/18 4/21 5/20 6/16 6/17 8/9 15/7 16/13 17/4 17/7 20/17 22/11 22/12
**I've [2]** 16/10 22/17
**idea [5]** 4/25 10/15 10/25 15/21

**imagine [2]** 16/9 17/11
**impact [7]** 6/2 8/3 8/4 8/17 9/16 9/19 10/7
**impacted [1]** 8/22
**impacts [6]** 7/15 7/24 8/13 9/17 9/22 9/24
**implement [1]** 18/23
**implemented [1]** 11/3
**implementing [1]** 12/2
**important [2]** 6/5 7/22
**improvements [1]** 12/16
**inch [1]** 19/17
**including [2]** 4/11 8/24
**incur [1]** 15/18
**independent [1]** 14/16
**indicate [1]** 9/10
**indicated [1]** 8/20
**indicates [1]** 9/3
**influence [1]** 8/25
**influenced [1]** 17/12
**influences [1]** 11/19
**injunction [8]** 4/9 4/17 4/18 22/18 22/19 22/23 22/25 23/7
**injunctive [1]** 22/12
**insignificant [1]** 7/16
**instead [2]** 5/3 11/5
**intensity [2]** 6/4 9/18
**interest [3]** 5/15 5/16 5/17
**interests [1]** 5/19
**introduce [1]** 3/7
**involved [1]** 12/15
**irreparable [3]** 4/23 5/5 5/7
**irreplaceable [1]** 5/11
**irretrievable [16]** 10/15 10/19 10/24 10/25 11/14 15/16 17/8 17/14 18/1 18/7 20/1 20/4 20/9 20/19 20/25 21/15
**irretrievably [3]** 10/16 13/23 21/18
**irrevocable [1]** 10/20
**is [97]**
**isn't [5]** 8/1 8/17 12/2 17/7 21/11
**issue [4]** 7/4 13/13 13/20 17/17
**it [52]**
**it's [19]** 5/3 6/17 6/24 8/16 9/1 9/2 9/6 9/8 10/9 10/17 12/8 16/22 16/23 18/7 20/15 21/2 21/3 21/7 22/5
**its [2]** 11/5 17/11
**itself [2]** 10/3 13/23

## J

**JEFFRIES [2]** 1/7 3/6

**J**

**Jesse [2]**  2/8 3/18
**joined [3]**  3/10 3/16 3/23
**JUDGE [5]**  1/18 4/8 4/10 12/14 13/15
**just [14]**  6/17 7/10 7/12 9/1 9/7 11/25 16/16 16/17 16/17 16/21 17/10 18/15 19/6 20/3
**Justice [2]**  2/12 3/23

**K**

**keep [1]**  11/5
**know [10]**  3/13 6/15 15/11 15/13 17/3 18/16 19/8 19/9 19/12 19/15

**L**

**lake [9]**  6/10 6/18 7/10 7/14 7/24 8/16 8/21 18/23 19/10
**language [4]**  7/8 23/2 23/2 23/4
**large [2]**  6/21 12/11
**largely [1]**  13/13
**larger [1]**  12/18
**last [1]**  18/24
**law [6]**  2/5 2/8 3/9 3/15 10/20 13/20
**least [6]**  5/11 6/10 8/23 11/25 12/15 20/11
**leavings [1]**  14/11
**left [2]**  11/9 12/3
**legal [2]**  3/16 7/20
**lengthy [1]**  13/19
**lens [1]**  6/20
**less [2]**  13/10 18/3
**less-than-understanding [1]**  13/10
**lesser [1]**  13/17
**let's [2]**  6/24 10/13
**like [8]**  4/6 4/20 5/9 6/7 7/7 15/18 17/13 20/4
**likelihood [5]**  5/21 5/25 7/1 22/15 22/21
**likely [1]**  13/5
**limit [1]**  4/6
**limiting [1]**  13/13
**linchpin [2]**  21/20 21/21
**linked [1]**  17/9
**litigation [1]**  8/8
**little [2]**  11/15 15/15
**locale [5]**  7/8 7/11 7/19 7/23 7/24
**localized [1]**  10/11
**locally [1]**  9/25
**log [1]**  4/11

**logging [4]**  8/11 8/19 9/7 9/8
**logical [1]**  7/11
**look [8]**  6/18 7/5 7/7 7/19 7/21 9/17 9/21 16/23
**looked [2]**  10/10 10/10
**looking [2]**  9/24 9/24
**looks [1]**  7/13
**lose [13]**  5/12 11/1 12/25 13/4 20/15 20/23 20/23 21/2 21/3 21/9 21/10 22/3 22/4
**loses [1]**  11/10
**losing [4]**  11/5 19/16 21/14 22/5
**loss [2]**  5/10 21/17
**losses [1]**  15/17
**lost [3]**  21/5 21/8 21/11
**lot [4]**  8/7 12/4 12/13 12/20
**lower [1]**  12/17

**M**

**made [3]**  7/18 8/15 22/15
**make [7]**  5/18 11/5 11/6 17/23 19/11 21/24 22/12
**makes [1]**  12/1
**making [4]**  10/21 17/12 21/21 22/11
**management [1]**  9/4
**many [1]**  9/25
**Mark [2]**  13/1 19/2
**may [5]**  5/4 13/12 17/10 17/24 19/14 19/18
**maybe [1]**  16/2
**me [2]**  10/24 15/2
**mean [1]**  15/10
**meaningful [1]**  11/7
**meaningfully [3]**  10/17 11/3 20/7
**means [2]**  4/13 20/9
**measuring [1]**  11/6
**meet [1]**  13/9
**merits [8]**  4/21 5/25 7/1 22/13 22/15 22/16 22/21 22/22
**Metcalf [1]**  13/23
**MICHAEL [1]**  1/17
**might [13]**  5/18 6/25 7/5 10/4 11/6 15/18 15/18 17/8 18/15 18/16 19/8 21/3 21/5
**million [2]**  12/15 17/13
**mind [1]**  15/14
**minimum [1]**  22/16
**minimus [1]**  17/10
**minute [2]**  21/22 21/25
**MO [2]**  1/5 3/5
**modest [1]**  5/13
**modified [3]**  14/22 19/4 19/7

**modify [2]**  14/24 16/11
**modifying [1]**  16/14
**Monday [2]**  23/5 23/7
**money [30]**
**more [10]**  7/6 8/24 15/6 15/23 17/22 18/2 18/17 20/6 20/8 23/11
**MOSMAN [1]**  1/17
**most [6]**  6/5 7/11 7/21 10/20 18/10 18/15
**mostly [1]**  12/10
**motion [7]**  4/7 4/8 4/10 4/12 4/16 6/25 23/2
**MOUNTAIN [6]**  1/3 3/6 3/16 6/1 6/9 23/8
**Mr [3]**  2/4 2/8 2/12
**Mr. [1]**  3/20
**Mr. Buss [1]**  3/20
**Ms [4]**  2/4 2/16 2/16 2/17
**much [12]**  8/13 9/11 10/12 12/18 12/21 14/3 15/9 15/22 16/21 21/2 21/7 22/8
**multiple [1]**  5/12
**must [3]**  7/7 20/20 20/21
**my [7]**  3/18 4/22 5/22 6/17 10/6 16/9 22/14

**N**

**narrowly [1]**  4/6
**National [4]**  6/12 6/19 12/14 13/15
**natural [4]**  2/13 10/21 11/18 15/19
**NE [1]**  2/13
**necessary [1]**  17/20
**necessity [1]**  9/24
**need [5]**  4/14 11/15 11/17 17/20 19/24
**needed [1]**  13/24
**negotiate [1]**  23/4
**NEPA [4]**  6/3 10/14 11/14 13/22
**never [2]**  13/21 14/1
**new [4]**  13/6 16/15 17/21 19/5
**news [1]**  13/9
**next [2]**  18/16 19/8
**Ninth [4]**  11/8 11/23 13/12 13/21
**no [16]**  1/5 3/5 7/18 8/6 9/18 10/6 14/1 14/11 14/11 14/21 18/8 21/17 21/25 22/20 23/10 23/12
**non [1]**  1/3
**non-profit [1]**  1/3
**none [1]**  17/2

**N**

Northern [1]  5/1
not [32]
nothing [6]  7/12 14/13 17/3
 17/5 17/18 18/11
now [2]  8/10 14/25
number [3]  4/17 9/22 16/16

**O**

o0o [1]  24/2
object [1]  19/5
objection [1]  4/8
obstacle [1]  5/6
obviously [1]  6/15
occurred [1]  10/20
Ochoco [2]  6/12 6/19
October [1]  24/9
odd [1]  20/4
off [1]  18/15
officer [3]  13/1 19/2 22/3
Official [1]  24/11
Often [1]  8/8
old [2]  5/3 12/11
once [1]  5/5
one [24]  3/17 5/18 6/24 7/6 8/9
 10/1 10/2 10/16 11/4 11/9
 11/17 15/12 15/22 17/22 17/24
 18/2 18/4 18/24 19/2 19/11
 20/1 20/16 22/22 22/22
ongoing [1]  10/14
only [11]  4/21 5/24 6/11 7/2
 11/4 12/19 13/17 17/1 18/24
 19/10 22/11
opportunity [1]  21/10
option [1]  20/6
oral [2]  1/15 3/5
order [2]  23/4 23/7
OREGON [4]  1/2 1/3 1/8 2/9
original [4]  20/22 20/24 21/6
 24/6
other [11]  11/2 11/3 15/25 16/4
 16/9 19/20 20/10 20/16 21/25
 22/17 22/20
others [3]  15/23 15/23 18/4
our [6]  3/16 3/17 8/20 13/19
 21/17 23/2
out [11]  4/25 5/15 6/20 8/19
 13/15 14/8 15/21 20/20 20/21
 20/22 21/8
over [5]  7/18 11/10 11/11 12/3
 20/2

**P**

p.m [2]  3/2 23/15
paid [2]  14/8 14/19

parcel [2]  12/20 12/20
part [3]  13/8 18/2 18/6
particular [2]  19/23 20/2
parties [3]  4/19 6/7 6/16
partner [2]  14/9 16/16
passed [1]  13/25
past [1]  5/5
pause [1]  3/11
pay [4]  19/20 20/20 20/21
 20/22
payment [1]  14/14
Peer [2]  2/17 3/25
percent [3]  8/22 8/24 11/18
performance [1]  13/4
permanently [1]  5/11
permissible [1]  7/5
person [2]  14/19 18/16
person's [1]  15/12
perspective [1]  21/16
persuaded [1]  6/19
phase [1]  22/12
Phillips [2]  13/1 19/2
physical [1]  5/2
pick [1]  20/16
picture [1]  9/21
piece [1]  6/5
place [5]  3/5 11/12 14/7 17/20
 17/24
plaintiff [9]  1/5 2/4 3/9 5/10
 5/14 5/19 11/7 11/7 22/24
plaintiff's [8]  5/17 5/23 6/24
 10/13 10/23 11/13 21/16 22/18
plaintiffs [5]  4/23 5/6 5/12
 13/17 22/14
plan [19]  9/2 9/4 9/6 9/8 9/9
 11/2 11/11 11/12 12/2 16/4
 17/1 20/2 20/3 20/5 20/8 20/23
 20/24 21/6 21/15
planning [1]  16/13
Plans [1]  17/1
play [1]  18/5
Please [2]  23/6 23/6
point [4]  10/6 13/25 18/14 21/8
pointed [1]  13/15
Portland [3]  1/8 2/6 2/21
position [1]  18/10
possibly [1]  17/14
potentially [1]  13/10
precisely [1]  15/13
prefer [1]  13/10
prejudiced [1]  12/23
prejudices [2]  11/20 14/12
prejudicing [1]  13/18
preliminary [7]  4/9 4/16 4/18
 22/18 22/19 22/23 23/7

prepare [1]  13/24
prescription [3]  13/2 15/8
 15/10
PRESENT [1]  2/16
presented [1]  19/6
pretty [2]  5/9 11/24
privilege [1]  4/11
probably [2]  15/20 23/3
proceedings [3]  1/16 23/15
 24/5
process [1]  16/11
product [2]  13/2 15/9
profit [1]  1/3
project [33]
Project's [1]  6/2
prong [1]  7/1
prongs [1]  22/17
proper [1]  6/18
proposals [1]  9/23
proposed [2]  23/4 23/6
proposition [1]  16/22
prove [1]  20/4
public [5]  5/15 5/16 5/17 5/19
 13/11
purposes [1]  20/21
put [3]  11/11 12/22 23/1

**Q**

question [2]  18/7 20/18
questions [2]  22/16 22/21
quite [3]  7/5 9/19 10/4
quote [2]  13/1 13/19

**R**

range [1]  11/20
rather [2]  11/2 12/22
reading [2]  7/12 7/20
really [7]  4/21 6/4 6/5 9/10
 15/12 16/21 18/11
reason [2]  18/24 19/1
reasonable [2]  11/20 13/14
reasoning [1]  4/12
Rebecca [2]  2/16 3/23
recent [1]  5/3
recently [2]  13/15 15/2
recess [1]  23/13
record [10]  3/7 14/13 15/2 19/1
 19/3 19/6 19/9 19/21 21/8 24/5
recreation [6]  6/10 6/19 7/10
 7/14 7/17 8/16
reduce [1]  5/2
regulation [3]  7/4 7/9 7/12
regulations [1]  9/14
rejects [1]  20/6
relates [1]  16/24

**R**

**relatively [1]**  12/6
**relying [1]**  22/2
**remind [1]**  22/11
**rendered [1]**  14/15
**replete [1]**  19/21
**reply [2]**  13/19 18/20
**REPORTER [2]**  2/20 24/11
**represent [2]**  17/8 17/14
**represents [2]**  18/4 21/14
**request [3]**  4/14 22/18 22/19
**require [2]**  9/17 18/16
**required [1]**  16/2
**requires [1]**  6/3
**resource [1]**  10/3
**resources [9]**  2/13 9/23 10/2 10/5 10/21 10/25 11/18 13/23 15/20
**response [1]**  9/12
**result [1]**  17/2
**retained [1]**  14/23
**right [10]**  3/21 8/10 10/23 11/15 11/16 11/24 14/18 18/19 20/9 20/25
**River [2]**  12/17 12/19
**RMR [2]**  2/20 24/10
**Room [1]**  2/21
**rule [1]**  22/13
**ruled [1]**  22/17
**ruling [1]**  6/16

**S**

**S.W [2]**  2/5 2/21
**said [5]**  10/22 12/8 12/24 13/1 21/25
**sale [2]**  8/8 8/8
**same [2]**  5/8 23/2
**say [8]**  5/20 7/15 7/25 13/7 17/13 18/16 19/14 21/8
**saying [3]**  14/1 19/7 19/7
**says [4]**  9/9 13/21 15/8 22/3
**scale [5]**  6/7 11/19 12/18 12/23 15/22
**scattered [1]**  7/18
**scenario [2]**  12/25 13/9
**scenarios [1]**  16/16
**scheme [1]**  12/12
**scope [4]**  6/16 6/18 10/3 10/8
**Sean [2]**  2/12 3/22
**seat [1]**  3/12
**seated [1]**  3/13
**second [2]**  13/8 20/5
**seeing [1]**  21/15
**seek [1]**  15/6

**seen [1]**  16/16
**selection [1]**  13/18
**separate [1]**  9/5
**September [2]**  1/7 3/2
**serious [2]**  22/16 22/21
**Service [30]**
**Service's [7]**  7/13 12/25 14/12 16/18 17/19 20/2 21/17
**services [2]**  14/15 18/17
**set [1]**  3/5
**settled [1]**  4/20
**SHANE [1]**  1/7
**share [1]**  13/10
**sharply [1]**  5/22
**should [1]**  16/23
**shouldn't [1]**  12/21
**show [3]**  13/17 18/16 20/1
**showing [1]**  5/6
**shows [1]**  19/21
**Shumway [3]**  2/20 24/9 24/10
**signature [2]**  24/7 24/7
**significance [3]**  7/13 9/5 9/10
**significant [13]**  6/2 6/22 7/25 8/3 8/4 8/14 8/17 9/17 9/19 10/7 10/9 16/1 16/17
**significantly [3]**  9/4 15/3 15/4
**signing [1]**  24/4
**Simon [2]**  12/14 13/15
**since [4]**  5/16 5/20 6/24 20/2
**single [1]**  17/23
**sir [1]**  14/4
**site [4]**  7/7 7/23 8/3 8/4
**site-specific [2]**  7/7 7/23
**situation [1]**  7/6
**size [1]**  17/9
**slightly [1]**  5/19
**small [7]**  7/15 9/6 10/8 12/6 16/20 16/25 17/10
**Snake [1]**  12/17
**so [27]**
**soils [1]**  10/1
**solid [1]**  4/23
**some [8]**  8/19 10/5 12/13 15/17 15/24 17/9 19/20 20/6
**someone [1]**  15/19
**something [11]**  5/1 6/10 6/13 11/21 15/21 16/1 16/12 16/14 18/3 18/15 19/21
**sorry [1]**  20/17
**sort [7]**  5/5 6/6 10/11 10/18 10/22 10/24 18/4
**spanning [1]**  12/18
**speak [2]**  10/7 14/22
**species [2]**  10/1 10/4
**specific [2]**  7/7 7/23

**specifically [1]**  10/10
**spend [2]**  12/8 17/2
**standard [3]**  13/24 14/1 19/19
**start [2]**  6/25 11/11
**state [1]**  5/16
**statement [2]**  5/18 9/16
**STATES [3]**  1/1 1/18 2/20
**status [1]**  14/14
**step [1]**  9/14
**stewardship [1]**  14/7
**stick [3]**  20/22 20/24 21/5
**Street [2]**  2/9 2/13
**students [1]**  3/17
**subject [1]**  4/8
**subjective [1]**  12/5
**submit [1]**  23/6
**submitted [1]**  22/24
**substantial [1]**  6/22
**substantially [1]**  19/4
**success [6]**  4/21 5/21 5/25 7/1 22/15 22/21
**suggest [1]**  11/25 12/20
**suggested [2]**  11/8 11/8
**suggesting [1]**  17/7
**suggests [2]**  11/7 14/13
**Sullivan [1]**  4/10
**Sullivan's [1]**  4/8
**sum [1]**  16/18
**summarizes [1]**  13/20
**sunk [2]**  18/4 18/11
**supports [1]**  9/4
**suppose [1]**  16/20
**supposed [2]**  9/9 14/16
**sure [2]**  6/17 17/4
**susceptible [1]**  5/4
**swept [1]**  5/12

**T**

**T2 [1]**  12/9
**table [1]**  21/5
**take [4]**  3/12 11/22 12/12 16/2
**taking [3]**  6/20 9/14 9/21
**talked [1]**  13/13
**talking [7]**  7/22 8/19 8/21 12/6 12/11 12/16 20/25
**tautological [1]**  8/16
**telling [1]**  16/13
**ten [1]**  8/23
**tentative [2]**  5/21 6/17
**terminated [1]**  13/4
**terms [4]**  5/13 6/7 10/7 11/6
**Terwilliger [1]**  2/5
**test [1]**  4/19
**than [8]**  7/6 8/24 13/10 15/23 16/4 16/12 17/22 20/8

20/2

**T**

Thank [13] 3/14 3/21 4/5 9/11 9/13 10/12 14/3 14/5 18/19 18/21 22/8 22/9 23/13
that [163]
that's [24] 5/9 7/8 8/7 11/13 12/13 14/7 14/8 14/22 15/12 15/21 16/25 17/10 17/22 17/23 18/6 18/10 18/11 18/18 19/5 20/8 20/24 21/4 21/25 22/22
their [5] 9/3 19/10 20/13 21/6 22/2
them [5] 4/19 7/16 16/25 17/1 17/2
themselves [1] 4/11
then [8] 4/16 5/5 8/3 8/16 12/9 15/20 18/11 20/16
theories [2] 4/17 5/24
theory [1] 20/24
there [18] 3/11 4/17 5/17 5/24 7/12 7/18 8/12 11/19 12/2 12/18 12/22 14/1 14/14 16/14 16/20 17/10 18/6 19/25
there's [16] 9/16 11/9 12/9 13/21 13/25 14/12 16/7 16/8 16/16 17/13 17/16 17/17 17/21 17/24 18/11 18/24
therefore [1] 22/16
these [5] 5/10 6/24 10/1 10/2 10/2
they [43]
they're [5] 14/9 14/10 14/25 18/24 19/15
they've [2] 9/5 20/12
thing [3] 6/5 6/6 11/17
things [5] 9/9 12/13 14/6 16/9 19/25
think [29]
Third [1] 2/21
this [55]
Thomas [1] 2/4
those [10] 5/4 6/15 7/21 8/21 9/9 9/24 9/25 10/18 13/4 19/17
though [1] 10/7
thought [2] 21/22 21/25
thoughts [2] 5/21 15/13
three [2] 7/21 7/22
through [5] 12/10 16/10 18/9 19/18 21/10
thumb [4] 11/19 11/24 12/23 15/22
tied [2] 19/16 19/17
timber [4] 8/7 8/8 12/10 14/10
time [5] 3/4 6/24 14/23 18/24

tips [1] 5/22
today [4] 3/19 3/23 6/16 16/13
together [1] 9/10
Tom [2] 3/8 3/15
too [3] 6/20 13/25 17/10
total [2] 12/7 12/11
training [1] 3/13
transcript [3] 1/16 24/5 24/6
treatment [3] 13/2 15/8 15/10
trees [2] 5/10 12/11
trouble [1] 15/18
true [1] 17/23
trying [1] 15/7
turn [2] 5/21 10/13
two [2] 5/24 19/25
type [1] 9/7
typically [1] 8/12

**U**

U.S [2] 2/12 3/24
uncommon [1] 6/6
under [6] 4/19 6/2 7/20 11/14 13/14 18/8
understand [2] 11/13 20/17
understanding [2] 13/10 15/1
Understood [1] 21/4
UNITED [3] 1/1 1/18 2/20
Units [2] 12/10 19/17
unlikely [1] 12/2
unpersuasive [1] 4/25
unprecedented [1] 9/2
up [7] 10/9 12/1 15/15 15/20 18/16 19/18 19/20
use [2] 7/8 12/25
use-it-or-lose-it [1] 12/25
used [2] 15/7 23/3
uses [1] 7/9

**V**

value [5] 12/10 12/11 14/10 14/11 15/9
values [1] 13/3
vegetation [1] 9/25
versus [1] 3/6
very [8] 4/23 9/11 10/7 10/12 12/5 14/3 16/21 22/8
view [4] 4/22 5/22 6/17 22/14
violates [1] 10/14
visual [1] 8/25
volume [1] 9/7

**W**

Walton [8] 6/10 6/18 7/10 7/14 7/24 8/16 18/23 19/10

want [7] 4/16 6/4 6/25 10/23 18/17 21/13 22/11
wants [3] 6/9 6/12 22/7
was [14] 6/3 9/24 12/18 13/23 14/15 14/16 14/23 15/4 15/5 16/8 16/12 18/7 19/6 23/2
Washington [1] 2/14
watershed [2] 8/12 10/5
way [12] 10/11 11/9 11/23 14/11 15/5 15/17 15/24 19/20 20/4 21/14 21/17 21/25
we [19] 6/6 8/20 12/13 12/16 12/19 12/24 13/4 13/19 13/20 14/21 17/12 19/5 19/8 19/15 19/24 23/1 23/1 23/2 23/5
We'll [1] 23/13
we're [5] 4/7 8/21 12/6 12/11 22/2
week [1] 17/4
well [9] 4/20 12/4 16/6 19/13 20/19 20/20 21/7 21/11 21/22
went [1] 13/7
were [4] 12/16 16/12 16/13 21/23
what [17] 9/8 12/4 13/24 15/3 15/10 15/13 16/12 16/13 17/7 19/3 19/8 19/15 20/9 20/15 21/2 21/3 21/4
what's [2] 14/14 15/2
whatever [1] 5/4
when [6] 7/22 8/19 9/15 13/24 15/14 20/25
where [2] 7/6 16/10
whether [6] 5/3 7/16 12/22 17/23 19/19 21/23
which [12] 4/13 6/1 6/3 6/12 7/11 7/17 9/2 12/10 13/16 16/16 20/11 20/13
while [1] 6/17
who [4] 3/19 3/24 3/25 22/3
whole [2] 6/5 6/12
Wildlife [2] 12/14 13/15
will [16] 3/19 3/20 4/4 5/20 11/1 11/4 13/4 13/4 17/1 17/1 19/3 21/9 21/10 21/11 22/3 22/22
wish [1] 18/20
within [2] 10/4 10/8
without [3] 13/4 18/22 24/6
won't [2] 11/3 22/4
wood [2] 13/2 15/9
wording [1] 15/7
work [3] 14/10 19/11 21/21
workaround [1] 19/14
working [1] 8/9

**W**

**world [1]** 6/15
**worth [1]** 5/24
**would [18]** 7/9 7/25 8/9 8/12
8/18 11/17 11/24 13/9 15/6
16/11 16/18 17/11 19/5 20/4
20/11 21/2 21/7 23/3
**wouldn't [5]** 8/4 16/22 17/15
20/22 20/23
**wrote [1]** 15/14

**Y**

**Yeah [1]** 18/18
**years [5]** 8/23 12/15 13/3 18/25
19/24
**yes [8]** 4/4 12/6 13/12 16/11
17/16 18/21 20/10 22/2
**you [70]**
**you'd [2]** 8/17 15/20
**you're [6]** 3/12 7/22 8/2 8/19
16/2 20/25
**you've [1]** 7/6
**your [34]**
**yourself [1]** 3/7