TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

SEAN C. DUFFY (NY Bar No. 4103131)
Trial Attorney
Natural Resources Section
150 M Street NE
Washington, DC 20002
Tel: (202) 305-0445
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **BLUE MOUNTAINS BIODIVERSITY PROJECT**,<br> Plaintiff,<br><br> v.<br><br> **SHANE JEFFRIES**, *et al.*,<br> Defendants. | Case No. 2:20-cv-2158-MO<br><br>**DEFENDANTS' MOTION TO DISSOLVE INJUNCTION**<br>**Expedited Consideration Requested** |

## TABLE OF CONTENTS

MOTION.................................................................................................................... 1

Introduction............................................................................................................. 2

Background .............................................................................................................. 2

Standard of Review................................................................................................. 5

Argument ................................................................................................................. 6

      I.     The ruling against BMBP on the merits of its claim that the Forest Service had to prepare an EIS constitutes changed circumstances that warrant dissolution of the injunction.................................................................. 6

      II.    The Court's entry of summary judgment for Plaintiff on a portion of its claim regarding the public involvement process does not warrant continuation of the injunction. ................................................................. 9

      III.   If the preliminary injunction is not lifted by October 28, 2022, the public safety and public health benefits from the Project will likely be lost for another year, or more. ......................................................................... 11

Conclusion ............................................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*350 Mont. v. Haaland*,
   29 F.4th 1158 (9th Cir. 2022) ...................................................................................7

*Agostini v. Felton*,
   521 U.S. 203 (1997) ..................................................................................................6

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ..................................................................................8

*All. for Wild Rockies v. Kruger*,
   15 F. Supp. 3d 1052 (D. Mont. 2014) ......................................................................6

*Am. Trucking Ass'ns v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ..................................................................................8

*Credit Suisse First Boston Corp. v. Grunwald*,
   400 F.3d 1119 (9th Cir. 2005) ..................................................................................5

*In re Detroit Auto Dealers Ass'n, Inc.*,
   84 F.3d 787 (6th Cir. 1996) ......................................................................................5

*Earth Island Inst. v. Carlton*,
   626 F.3d 462 (9th Cir. 2010) ....................................................................................8

*Horne v. Flores*,
   557 U.S. 433 (2009) ..................................................................................................6

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ..................................................................................8

*Kleppe v. Sierra Club*,
   427 U.S. 390 (1976) ..................................................................................................7

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest
Serv.*,
   Case No. 2:16-cv-1648 (D. Or. Oct. 18, 2016), ECF No. 25 .................................11

*Moon v. GMAC Mortg. Corp.*,
   No. C08-969Z, 2008 WL 4741492 (W.D. Wash. Oct. 24, 2008) ............................6

*Munaf v. Geren*,
   553 U.S. 674 (2008) ..................................................................................................8

*Sharp v. Weston*,
  233 F.3d 1166 (9th Cir. 2000) ...................................................................6

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
  316 F.2d 804 (9th Cir. 1963) ....................................................................5

*United States v. Oregon*,
  769 F.2d 1410 (9th Cir. 1985) ..................................................................5

*Univ. of Haw. Pro. Assembly v. Cayetano*,
  125 F. Supp. 2d 1237 (D. Haw. 2000) ......................................................5

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .....................................................................................8

**Statutes**

National Environmental Policy Act (NEPA) ............................2, 3, 4, 5, 7, 8, 9, 10, 11

National Forest Management Act ....................................................2, 3, 4, 5

**Other Authorities**

36 C.F.R. § 220.6(e)(14) ...........................................................................11

40 C.F.R. § 1508.27(a) (2019) ....................................................................7

40 C.F.R. § 1508.27(b)(3), (4), (6) (2019) ...................................................8

Fed. R. Civ. P. 54(b) ..................................................................................5

Fed. R. Civ. P. 59(e) ..................................................................................5

Local Rule 7-1 ...........................................................................................1

## MOTION

Defendants move the Court for an order dissolving the preliminary injunction that prevents the Forest Service from implementing the Walton Lake Restoration Project ("Project"). *See* Oct. 13, 2021 Prelim. Inj. Order, ECF No. 60.  The basis for the injunction—a preliminary finding that Plaintiff is likely to succeed on the merits of its claim that the Forest Service had to prepare an environmental impact statement (EIS)—no longer holds because the Court has ruled for Defendants on the merits of that claim.

Expedited consideration is requested because the Forest Service needs to complete the important work authorized by the Project in the coming weeks, starting as early as October 23, 2022.  If the preliminary injunction is not dissolved, the anticipated timing to complete the work while the campground is closed could be significantly disrupted by unfavorable ground conditions due to moisture and snow accumulation.

In compliance with Local Rule 7-1, on the morning of October 13, 2022, undersigned counsel for Defendants contacted counsel for Plaintiff and sought conferral on this motion and the request for expedited consideration.  Counsel for Plaintiff indicated that it would not be available for conferral at any time on Thursday, October 13 or Friday, October 14.  As a result, the Parties conferred telephonically on October 17 to resolve the dispute that informs this motion.  Plaintiff indicates that it opposes this motion to dissolve the injunction and the request for expedited consideration.

**Introduction**

Dissolution of an injunction is warranted where there has been a significant change pertaining to the underlying reasons for the injunction.  Here, the Court issued a preliminary injunction, finding Plaintiff was likely to succeed, or raised serious questions on the merits, of its claim that the Forest Service had to prepare an EIS.  After extensive briefing on the merits, the Court issued a written opinion for Defendants on the substantive claims, and specifically concluding that the Forest Service does not have to issue an EIS.  Those ultimate merits conclusions mark a significant change in the underlying reasons for issuing the preliminary injunction and warrant its dissolution.  If the preliminary injunction is not dissolved, the timing to complete the Project's important work while the campground is closed could be jeopardized. The Court should grant expedited consideration, enter an order dissolving the injunction, and enter judgment for the Defendants.

**Background**

Plaintiff, Blue Mountains Biodiversity Project ("BMBP") brought this lawsuit in December 2020, challenging the Forest Service's approval of the Project.  Compl., ECF No. 1. The Project restores forest health and promotes public safety at a popular recreation site on the Ochoco National Forest by replacing tree stands stricken by laminated root rot disease with disease-resistant trees.  AR 8719.  The Project also aims to reduce the threat of catastrophic wildfire by thinning trees in overstocked stands to promote forest health.  AR 8718.

As amended, the Complaint alleges eleven claims: seven alleged violations of the National Environmental Policy Act (NEPA) and four alleged violations of the National Forest Management Act (NFMA).  Am. Compl.  ¶¶ 60-89, ECF No. 12.

BMBP moved for emergency relief to enjoin commercial timber harvest and sanitation

harvest in August 2021,.  Mot. for Prelim. Inj. or TRO, ECF No. 41 ("Pl.'s PI Mot.").  In

September 2021, the Court heard oral argument and issued a bench ruling granting BMBP's

motion based solely on its claim asserting that the Forest Service had to prepare an EIS, Claim 1,

Count 5.  The Court found that BMBP made a case for likely success on the merits, or serious

questions going to the merits of this single claim.  Sept. 29, 2021 Hr'g Tr. at 22:14-16, ECF No.

59.  It found that no other claim that BMBP presented was likely to succeed on the merits or

raise serious questions going to the merits.  *Id.* at 22:20-22.   The Court then issued an order

enjoining the Forest Service from allowing or implementing any commercial sanitation logging

in units affected by laminated root rot (units 2, 3, and 4), or commercial thinning in units 1-5,

that is authorized by the December 2020 Decision Notice approving the Project.  Oct. 13, 2021

Prelim. Inj. Order, ECF No. 60.

The parties then cross-moved for summary judgment on the merits of the claims.  On July

25, 2022, the Court heard oral arguments on the cross motions for summary judgment.  July 25,

2022 Hr'g Tr., ECF No. 83.  During the hearing, the Court granted summary judgment to the

government, and denied BMBP's motion for summary judgment, on these four claims:

- (Claim 1, Count 1).  NEPA claim regarding the adequacy of the public involvement
  process insofar as the Forest Service denied BMBP's request for an extension of time to
  file comments on the Project, *id.* at 11:11-13;

- (Claim 1, Count 6).  NEPA claim challenging the Forest Service's cumulative impacts
  analysis, *id.* at 28:12-20;

- (Claim 2, Count 1).  NFMA claim challenging the adequacy of the justification for site
  specific Forest Plan amendments, July 25, 2022 Mins. of Proceedings (ECF No. 80);

- (Claim 2, Count 3).  NFMA claim challenging the Forest Service's consideration of 2012 Planning Rule factors in approving site specific Forest Plan amendments, *id.*

The Court granted summary judgment to BMBP on a portion of its NEPA claim regarding the adequacy of the public involvement process (Claim 1, Count 1).  Specifically, the Court concluded that a public information session held in June 2019 was NEPA-related and therefore required additional notice to BMBP.  July 25, 2022 Hr'g Tr. at 11:11-13.  The Court took the seven remaining claims under advisement.  *Id.*

On September 26, 2022, the Court issued a written opinion and order resolving the seven remaining claims it took under advisement.  Sept. 26, 2022 Op. & Order, ECF No. 82.  In its order, the Court granted summary judgment for the government on each of the seven remaining claims:

- (Claim 1, Count 5).  The claim on which the preliminary injunction is based:  the NEPA claim challenging the Forest Service's conclusion that the Project's environmental impacts were not significant and therefore did not require an EIS, *id.* at 11-15;

- (Claim 1, Count 2).  NEPA claim challenging the adequacy of the Forest Service's purpose and need statement in the Project's environmental assessment (EA), *id.* at 3-6;

- (Claim 1, Count 3).  NEPA claim challenging the range of alternatives considered by the Forest Service in the EA, *id.* at 6-8;

- (Claim 1, Count 4).  NEPA claim challenging whether maintaining a contract with T2 was an irretrievable commitment of resources, *id.* at 8-11;

- (Claim 2, Count 2).  NFMA claim challenging whether the  Forest Plan amendments were significant, *id*;

- (Claim 1, Count 7).  NEPA claim challenging whether the Forest Service took a hard look at environmental impacts to soils and presented that information in readily understandable format, *id* at 15-17;

- (Claim 2, Count 4).  NFMA challenge to the consistency of the Project's soils analysis with the Forest Plan standards, *id*.

After extensive motion practice, BMBP prevailed on summary judgment on just one portion of a single procedural claim (Claim 1 Count 1).  The government prevailed on summary judgment on the remaining portion of that procedural claim and on all other claims, both substantive and procedural.

## **Standard of Review**

Courts have "continuing jurisdiction to terminate, dissolve, vacate, or modify an injunction or an interlocutory order in the event that changed circumstances require it." *Univ. of Haw. Pro. Assembly v. Cayetano*, 125 F. Supp. 2d 1237, 1240 (D. Haw. 2000) (citing *United States v. Oregon*, 769 F.2d 1410, 1416 (9th Cir. 1985); *In re Detroit Auto Dealers Ass'n, Inc.*, 84 F.3d 787, 789 (6th Cir. 1996)).  "Federal Rule of Civil Procedure 54(b) states that a district court can modify an interlocutory order 'at any time' before entry of a final judgment, and we have long recognized 'the well-established rule that a district judge always has power to modify or to overturn an interlocutory order or decision while it remains interlocutory.'" *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) (quoting Fed. R. Civ. P. 54(b) and *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).  "Although a motion for reconsideration is subject to Rule 59(e)'s [28-day] time limit, there is no time limit on a motion to vacate or dissolve a preliminary injunction." *Id.*

A party seeking dissolution of an injunction must show there has been a significant

change in facts or law.  *All. for Wild Rockies v. Kruger*, 15 F. Supp. 3d 1052, 1054 (D. Mont.

2014) (citing *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)), *aff'd*, 664 F. App'x 674

(9th Cir. 2016.  "A significant change is one that pertains to the underlying reasons for

the injunction."  *Moon v. GMAC Mortg. Corp.*, No. C08-969Z, 2008 WL 4741492, at *2 (W.D.

Wash. Oct. 24, 2008) (citation omitted).  It is an abuse of discretion if, after the moving party

carries this burden, the court "refuses to modify an injunction . . . in light of such

changes."  *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Agostini v. Felton*, 521 U.S. 203,

215 (1997)).

## <u>Argument</u>

**I.      The ruling against BMBP on the merits of its claim that the Forest Service had to prepare an EIS constitutes changed circumstances that warrant dissolution of the injunction.**

In ruling on BMBP's motion for a preliminary injunction, the Court found that BMBP

had "made a case for likelihood of success on the merits, or at a minimum, serious questions

going to the merits" on Claim 1, Count 5.  Sept. 29, 2021 Hr'g Tr. at 22:14-16.  In that claim,

BMBP had argued that the Project's environmental impacts were significant and therefore

required the Forest Service to prepare an EIS.  Am. Compl. ¶¶ 71-75.  Because it had ruled in

Plaintiff's favor on the other prongs of the preliminary injunction request, the Court granted

BMBP's request for a preliminary injunction.  Sept. 29, 2021 Hr'g Tr. at 22:16-19.  The Court

found that none of the five additional claims BMBP presented from its complaint supporting its

preliminary judgment motion had a "likelihood of success on the merits" or presented "serious

questions going to the merits" warranting injunctive relief.  *Id.* at 22:20-22.

On the parties' cross motions for summary judgment, the Court addressed the merits of

BMBP's claim that the Forest Service had to prepare an EIS, now with full briefing before it.  As

this Court noted, whether an agency must prepare an EIS turns on whether the Project is considered significant under NEPA, which is determined by looking at the Project's (i) context and (ii) intensity.  Sept. 26, 2022 Op. & Order at 11 (citation omitted).

As for context, the Court first determined that it is appropriate to look at both the EA and the Forest Service's Decision Notice (DN) and Finding of no Significant Impact (FONSI) in determining whether the agency adequately stated reasons for its determination that the Project would not cause significant impacts.  Sept. 26, 2022 Op. & Order at 12 (citing *350 Mont. v. Haaland*, 29 F.4th 1158, 1163 (9th Cir. 2022)).  The Court next looked to the NEPA regulations promulgated by the Council on Environmental Quality (CEQ), which instruct agencies in evaluating context to analyze actions "in several contexts such as society as a whole . . . the affected region, the affected interests, and the locality."  *Id.* at 13 (alteration in original) (quoting 40 C.F.R. § 1508.27(a) (2019)).  Upon reviewing the EA, the Court determined that the Forest Service properly looked at environmental impacts on a variety of levels, including the locality level.  *Id.* at 13; *see Kleppe v. Sierra Club*, 427 U.S. 390, 413-14 (1976) (noting that determining the particular "identification of the geographic area" within which environmental impacts may occur "is a task assigned to the special competency" of the agency.).

As for intensity, the Court noted the ten factors that the CEQ regulations identify for examining the intensity of an action, and specifically the three factors BMBP had identified regarding the Project.  These are the (i) "unique characteristics of the geographic area"; (ii) the "degree to which effects on the quality of the human environment are likely to be highly controversial"; and (iii) the "degree to which an action may establish a precedent for future actions with significant effects."  Sept. 26, 2022 Op. & Order at 13 (quoting 40 C.F.R. § 1508.27(b)(3), (4), (6) (2019)).  Finding two of the factors—unique characteristics and potential

for precedential effect—to strongly support the government's position, and referring back to the discussion of context, the Court concluded that it could not find the Project to be significant, and thus an EIS is not required under NEPA. *Id.* at 14-15. This finding necessitates dissolution of the preliminary injunction.

"A preliminary injunction is an 'extraordinary and drastic remedy.'" *Munaf v. Geren*, 553 U.S. 674, 689 (2008), that should "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Among the criteria for obtaining preliminary injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (internal citation omitted). If the plaintiff has shown that the balance of hardships "tips sharply toward the plaintiff," that it is likely to suffer irreparable harm, and that an injunction is in the public interest, a showing of "serious questions going to the merits . . . can support issuance of an injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (citation omitted).

Here, the likelihood of BMBP's success (or serious questions) that supported its claim that the Forest Service needed to prepare an EIS is no longer present in light of the Court's merits determination on that claim. At the preliminary injunctive stage, the Court found that BMBP "made a case for likelihood of success on the merits, or at a minimum, serious questions going to the merits" and enjoined the Forest Service from undertaking the Project on that basis. Sept. 29, 2021 Hr'g Tr. at 22:14-16. In doing so, the Court made clear that it was "only making findings that have to do with the injunctive phase" and that it was "not going to make any findings that rule on the absolute merits of the case" at that time. *Id.* at 22:11-13. It thus left

open the ultimate merits determination on BMBP's claim that NEPA required the Forest Service
to prepare an EIS.

At the summary judgment stage, the Court resolved the ultimate determination on the
merits of the substantive claims in Defendants' favor and specifically granted summary judgment
for Defendants on the merits of the claim that the Forest Service does not have to prepare an EIS.
Sept. 26, 2022 Op. & Order 11-15.  That adjudication on the merits at the summary judgment
stage supersedes the Court's preliminary finding.  In doing so, it also supersedes the one
determination necessary to support the decision to enjoin the Project.  The ultimate determination
that the Forest Service does not have to prepare an EIS is a significant change in law from the
Court's preliminary determination that BMBP was likely to succeed or raised serious questions
going to the merits of that claim.  With the Court's ultimate merits determination on the EIS
claim, there is no longer a basis for maintaining the injunction, and the Court should order that it
is dissolved.

II.    **The Court's entry of summary judgment for Plaintiff on a portion of its claim
       regarding the public involvement process does not warrant continuation of the
       injunction.**

The Court's entry of summary judgment on BMBP's procedural claim that the Forest
Service should have invited it to a June 2019 public outreach meeting does not warrant
continuation of the injunction.  *See* AR 6012 (meeting notice).  An injunction based on a
procedural error in additional notice to BMBP about the meeting is unwarranted and would serve
no useful purpose.

The outreach meeting invited all members of the public—including members of BMBP—
to attend.  The announcement was posted to the Forest Service's website and circulated to
numerous local media outlets beforehand.  *See* AR 6014-15 (listing among many recipients, the
Bend Bulletin, the Herald News, the Blue Mountain Eagle, Nugget News, KVAL News, KWOS

News, KPOV.org, the Central Oregonian, Crestview Cable). BMBP was not prejudiced in its efforts to participate in the public NEPA process by not attending the June 2019 meeting, even assuming they were unaware of it.

The Forest Service issued a scoping notice in August 2019, with a proposed Project that included site-specific Forest Plan amendments. BMBP presented its views on the science of laminated root disease and on the appropriateness of the proposed Forest Plan amendments in its comments on the proposed Project. AR 6161-64 (BMBP scoping comments); AR 6193-6202 (BMBP's counsel comments). BMBP had a full opportunity to participate in the NEPA process, it availed itself of that opportunity, and it suffered no prejudice by not attending a public outreach meeting, which was widely announced to the public.

In its ruling, the Court found a violation of NEPA because the June 2019 meeting was NEPA-related, and it lacked the notice that NEPA requires. July 25, 2022 Hr'g Tr. 11:4-6. However, any error that the notice violation caused is harmless because Plaintiff participated fully in the NEPA process, submitting comments and objections at every step, until the Forest Service approved the Project. On this point, the Court asked Plaintiff's counsel during oral argument "what do you win if you win this much but you then eventually participate in the NEPA process?" *Id.* at 9:17-18. Plaintiff's response was that "[t]he remedy is a finding that [the Forest Service] should have done that," *i.e.* provided notice of the June 2019 meeting. *Id.* at 9:25–10:1.

In granting summary judgment for BMBP on its claim that NEPA required it to provide notice of the June 2019 meeting, the Court has provided BMBP with the finding—the sole remedy it sought—and the only appropriate remedy on this procedural claim. *See* July 25, 2022 Hr'g Tr. 11:4-6 ("I do find that the June 2019 meeting was a NEPA-related hearing or meeting,

that the notice was inadequate."); July 25, 2022 Dkt. Entry (granting summary judgment on the

NEPA notice claim for the June 2019 hearing).  Because BMBP has obtained all of the relief it is

entitled to on its meeting notice claim under NEPA, the Court should provide no additional relief

as to this claim.

**III.    If the preliminary injunction is not lifted by October 28, 2022, the public safety and public health benefits from the Project will likely be lost for another year, or more.**

The Forest Service initially proposed to treat root rot at Walton Lake in December 2015.

In doing so, it relied on a categorical exclusion for sanitation harvest of trees to control insects or

disease.  AR 5057-99 (Dec. 15, 2015 Decision Memo); 36 C.F.R. § 220.6(e)(14).  BMBP

challenged that decision in June 2016, and the Court preliminarily enjoined most parts of the

project.  *See* Order Granting Plaintiff's Motion for Preliminary Injunction, *League of Wilderness

Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, Case No. 2:16-cv-1648 (D. Or.

Oct. 18, 2016), ECF No. 25.  The 2015 project was later withdrawn.

Seven years later, the dangers posed by laminated root rot and the forest health conditions

on the project area have not gone away.  Weakened root structures and progressing mortality of

trees with laminated root rot threaten visitors within striking distance of trees that may fall.  AR

6291.  Structurally unstable trees also pose significant hazards to visitors hiking and recreating in

areas where they are widespread.  *Id*.  While the Forest Service has been felling 10-20 hazard

trees within striking distance of roads or other infrastructure each year, AR 7627, that alone

cannot adequately address the forest health and public safety concerns posed by root rot disease.

AR 7769, 7773.

So long as the Project remains enjoined, the forest health issues will also remain

unabated.  The dry mixed conifer areas stocked with ponderosa pine, Douglas-fir, western larch,

and grand fir stands will remain overstocked with smaller, shade tolerant species, which compete

with larger trees for water and nutrients.  AR 7572.  The competition for water and nutrients

continues to make the trees susceptible to infestations from bark beetles, which attack stressed,

damaged, or weakened trees.  AR 6292.  Unless the injunction is dissolved, and these stands are

thinned to reduce competition stress, the large trees, which provide much of the visual character

of the campground, will remain at high risk to mortality from insects and disease. AR 7605.

In both the stands infected by root rot and the stands where forest health needs to be

addressed, fuels and fires present an additional forest health and public safety concern.  Annual

felling of hazard trees within the moist mixed conifer stands, combined with a high incidence of

windthrown trees (*i.e.* trees uprooted by wind) has resulted in an accumulation of hazardous

fuels.  AR 6390.  Current fuel loads in these stands are estimated to be 20–40 tons per acre, well

above desired fuel levels, AR 7627 (figure 26), 7619-20 (figure 20), and are expected to increase

as root rot spreads through host trees.  *Id*.  In the overstocked dry mixed conifer stands, the dense

understory below larger trees serve as ladder fuels, which can promote uncharacteristically

severe wildfire that burns the crowns of otherwise fire-tolerant ponderosa pine and Douglas-fir

trees.  AR7573, 6390.  Commercial and non-commercial thinning, piling, and prescribed burning

treatments restore resiliency and reduce the probability of crown fires.  AR 6390.  Unless the

injunction is dissolved, fuel accumulations in both the moist and dry mixed conifer stands will

remain at a level inconsistent with the Forest Plan objective to provide safe and healthful

facilities for visitors to enjoy.  AR 7627-28.

The Forest Service seeks expedited consideration.  The campground closes on October

15, 2022 and potential implementation of the Project could begin the week of October 23, 2022.

Second Decl. of Shane Jeffries ¶ 2 ("Second Jeffries Decl."), attached as Exhibit 1;

https://www.fs.usda.gov/recarea/ochoco/recarea/?recid=77527 (announcing that the area status is

now closed) (visited Oct. 17, 2022).  Without expedited consideration and an order dissolving

the injunction, the Project could be delayed another year.  The logistics of completing the Project

depend heavily on weather because operations with equipment cannot occur when the ground is

too wet or when the snow accumulates beyond a certain depth.  *Id.*  Operations cannot begin

until the campground and day use are closed to the public because there would be timber felling,

equipment operations, and hauling along a one-way loop road, which is the only road that the

public can use to use and access campsites.  *See* Decl. of Shane Jeffries ¶ 13, ECF No. 49-1

("Jeffries Decl.").  Starting work while the campground is closed will allow the commercial

thinning and sanitation harvest work to be completed before the winter weather shuts down

operations.  *Id.*  If the work cannot be started until the spring, the contractor is likely to encounter

unfavorable wet and muddy conditions, which could prevent it from completing the work before

the campground opens again in mid-May.  *Id.*  In addition, allowing the harvest work to

commence in the fall will allow replanting to take place in the spring when soils are moist.  *Id.*

Dissolving the injunction now will allow the Forest Service to complete this important work this

year.

## Conclusion

The Court should dissolve the preliminary injunction and enter judgment for

Defendants because it has granted summary judgment for Defendants on the merits, including on

the merits of the claim that served as the basis for the preliminary injunction pending an ultimate

decision on the merits.  Further delay in allowing the Project to move forward will only prohibit

the Forest Service from implementing the important public safety and forest health benefits that

the Project achieves.

Dated:  October 17, 2022                    TODD KIM
                                            Assistant Attorney General

United States Department of Justice
Environment & Natural Resources Division

*/s/ Sean C. Duffy*
SEAN C. DUFFY
Trial Attorney
Natural Resources Section
150 M Street NE
Washington, DC 20002
Tel: (202) 305-0445 / Fax: (202) 305-0506
sean.c.duffy@usdoj.gov

*Attorneys for Defendants*