Tom Buchele, OSB No. 081560
Earthrise Law Center
10101 S. Terwilliger Blvd.
Portland, OR 97219-7799
Tel: 503-768-6736
Fax: 503-768-6642
E-mail: tbuchele@lclark.edu

Jesse A. Buss, OSB No. 122919
Willamette Law Group
411 Fifth Street
Oregon City, OR 97045-2224
Tel: 503-656-4884
Fax: 503-608-4100
E-mail: jesse@WLGpnw.com

Attorneys for Plaintiff Blue Mountains Biodiversity Project

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| **BLUE MOUNTAINS BIODIVERSITY PROJECT**, an Oregon non-profit corporation;<br><br>Plaintiff,<br><br>v.<br><br>**SHANE JEFFRIES**, in his official capacity as Ochoco National Forest Supervisor; and<br>**UNITED STATES FOREST SERVICE**, an agency of the United States Department of Agriculture,<br><br>Defendants. | Case No. 2:20-cv-2158-MO<br><br>**PLAINTIFF'S MOTION FOR REMAND WITH PARTIAL VACATUR UNDER 5 U.S.C. § 706(a)(2)(A)**<br><br>**Expedited Consideration Requested**<br><br>**Oral Argument Requested** |

## MOTION FOR REMAND WITH PARTIAL VACATUR

Plaintiff Blue Mountains Biodiversity Project ("BMBP") respectfully moves the Court for an order pursuant to 5 U.S.C. § 706(a)(2)(A) remanding and partially vacating the Defendants' December 7, 2020, Decision Notice for the Walton Lake Restoration Project and Project-Specific Forest Plan Amendments ("DN"), AR 8713–93. The Court must also address this motion before it rules on Defendants' October 17th Motion, ECF No. 84, which in its supporting memorandum asks for a judgment in its favor, without remand and without vacatur. *Id.* at 6. Therefore, because Defendants have requested and the Court has granted expedited consideration of Defendants' October 17th Motion, *see* ECF Nos. 84, 86, 88, BMBP must also request expedited consideration of this motion requesting partial vacatur.

In accordance with Local Rule 7-1(a)(1), BMBP conferred telephonically with counsel for Defendants regarding remedy, including vacatur, on Monday October 17, 2022. This conferral occurred during the same conversion during which the parties conferred regarding Defendants' motion for dissolution of injunction. Defendants oppose BMBP's motion for partial vacatur.

Vacatur is the standard and presumed remedy for violations of the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706(2) ("reviewing court shall hold unlawful and set aside"). Specifically, in order to remedy Defendants' violation of BMBP's public participation rights under the National Environmental Policy Act ("NEPA") and the APA, which the Court found when it ruled for BMBP on Claim 1, Count 1, of its Amended Complaint, *see* July 25, 2022 Hr'g Tr. 11:3–6; ECF No. 80 (Minute Order), BMBP requests the Court vacate the DN's approval of Forest Plan Amendment 3 (change in visual quality objective) and Amendment 4 (waiver of 5 acre patch size standard) and the approval of the commercial sanitation logging

authorized in units 2, 3, and 4, and commercial thinning authorized in units 1–5, which depend on those two amendments for their validity. *See* AR 8723 (DN explaining that Amendments 3 and 4 are needed for units being treated for laminated root rot and where even-aged management in patches over 5 acres would occur in the visual influence area).

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

This Court found that the Defendants violated NEPA and the APA by failing to give BMBP actual notice of the public informational meeting that Defendants hosted in June of 2019. This meeting was, in effect, the beginning of the third iteration of the Walton Lake Project (the "Project") and the beginning of the public process for this third iteration. Although the Project's on-the-ground components remained essentially unchanged since its first iteration in 2015, legally the Forest Service did make a significant change to the Project in 2019 by adding two additional Plan Amendments. Those amendments, reducing the Visual Quality Objective for the recreation area and waiving the 5-acre patch size limitation for the visual influence area, were essential in order for the Service to authorize the commercial thinning and sanitation logging in Units 1–5. Because BMBP was effectively excluded from this first public meeting where these two new amendments and/or the supposed factual/scientific basis for them (i.e. the supposed need to remove all firs to eradicate laminated root rot) were likely discussed, in violation of NEPA, BMBP's meaningful participation in the public NEPA process was prejudiced and the Forest Service's ultimate approval of those two amendments violates NEPA and the APA. Vacatur of the DN's approval of those two amendments and the commercial thinning and sanitation logging that depends upon those amendments is the presumed and appropriate remedy for such a violation of the APA. This remedy, tailored to the Service's specific NEPA violation, amounts to partial vacatur of the Service's decision.

Judicial review of a NEPA action is governed by the APA. 5 U.S.C. §§ 701-706. Remand with vacatur is the standard remedy for violations of the APA. *League of Wilderness Defs. v. Peña*, No. 3:12-CV-02271-HZ, 2015 WL 1567444, at *1 (D. Or. Apr. 6, 2015) ("*LOWD II*"),

citing *Alaska Conservation Council v. U.S. Army Corps of Engineers*, 486 F.3d 638, 654 (9th Cir. 2007) ("Under the APA, the normal remedy for an unlawful agency action is to 'set aside' the action. 5 U.S.C. § 706(2)."); *League of Wilderness Defs. v. U.S. Forest Serv.*, No. 3:10-CV-01397-SI, 2012 WL 13042847, at *2 (D. Or. Dec. 10, 2012) ("*LOWD I*"). "The burden is on [the Forest Service] to show that compelling equities demand anything less than [partial vacatur]." *Western Watersheds Project v. Zinke,* 441 F. Supp. 3d 1042, 1083 (D. Idaho 2020). BMBP's Amended Complaint expressly sought declaratory and injunctive relief and vacatur as remedies for Defendants' violations of the APA. ECF No. 12 at 27 (Prayer for Relief (a), (b), (c) and (d)). Although Defendants' October 17, 2022, Motion to Dissolve Injunction only seeks to dissolve the Court's October 13, 2021, preliminary injunction, ECF No. 84 at 5, in its supporting memorandum Defendants seek both dissolution *and* the entry of judgment for the Defendants, which judgment would not include remand nor partial vacatur. *See* ECF No. 84 at 6. But Defendants make no attempt to satisfy their burden of showing that vacatur, the standard and appropriate remedy for APA violations, is not appropriate.

**FACTUAL BACKGROUND**

This Court found that the Defendants violated NEPA by failing to give BMBP notice of the public informational NEPA-related meeting that Defendants hosted in June of 2019. ECF No. 80 (minute order); July 25, 2020 Hr'g Tr. 11:3–6. This meeting was, in effect, the beginning of the third iteration of the Walton Lake Project and the beginning of the public process for this third iteration. *See* AR 7579 (2020 Final EA describing 2015, 2017 and 2019 public involvement processes). It was also the only public meeting hosted by the Forest Service during the entire 2015–2020 public process for the Project. *See* AR 7579 (2020 EA summarizing public involvement process). Although the Project's on-the-ground components remained essentially

unchanged since its first iteration in 2015, legally the Forest Service did make a significant change to the Project in 2019 by adding two additional Plan Amendments. *Compare* AR 5201–02 (2017 EA describing just two amendments) *with* AR 8723 (DN describing four amendments, including amendments 3 and 4 which are missing from 2017 EA); *see also* AR 6059 (2019 scoping notice explaining that two new amendments were added to project). Those amendments, reducing the Visual Quality Objective for the recreation area and waiving the 5-acre patch size limitation for the visual influence area, were essential in order for the Service to authorize the commercial thinning and sanitation logging in Units 1-5. *See* AR 8723 (DN explaining need for amendments 3 and 4). Because BMBP was effectively excluded from this first public meeting where these two new amendments and/or the supposed factual/scientific basis for them (i.e. the supposed need to remove all firs to eradicate laminated root rot) were likely discussed, in violation of NEPA, BMBP's meaningful participation in the public NEPA process for the third iteration of the project was prejudiced. *See* Declaration of Paula Hood ("Hood Decl.") ¶¶ 6–7.

BMBP established that the Forest Service's email notification list for its June 2019 public meeting did not include any BMBP representative. ECF No. 66 at 16, citing to AR 8486–87 (Exhibit D to BMBP's Objection); *see also* AR 7833 (BMBP's Objection discussing Exhibit D), AR 7877 (Objection Exhibit List identifying Ex. D as distribution list for June 25, 2019, meeting). BMBP contrasted this June 2019 public meeting email list with the Forest Service's general email notice list for all Walton Lake Project updates, which clearly included BMBP representatives. ECF No. 71 at 12, citing to AR 6065; *see also* ECF No. 66 at 17, n.5. BMBP argued that "while the Service has had many opportunities to refute BMBP's suggestion that its exclusion from the email list for the June 2019 meeting was intentional, the Service has not even attempted to do so." ECF No. 71 at 12. As BMBP explains below, although to date the Court has

declined to make a finding regarding the Service's intent in excluding BMBP, noting that such a finding was not necessary to support a finding of a NEPA/APA violation, *see* July 25, 2020 Hr'g Tr. 8, intent is relevant to remedy and here underscores the seriousness of the NEPA violation.

## LEGAL STANDARD

Judicial review of a NEPA action is governed by the APA. 5 U.S.C. §§ 701-706. Under the APA, a "reviewing court *shall* … hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (emphasis added). Under the arbitrary and capricious standard, courts ask whether the agency has articulated a "'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

### I.     Presumption of Vacatur

"When a court determines that an agency's decision was unlawful under the APA, vacatur is the standard remedy." *LOWD I*, 2012 WL 13042847, at *2.[1] Indeed, the Supreme Court has indicated that remand *with* vacatur "'is the *presumptively appropriate remedy* for a violation of the APA.'"[2] *Id.,* quoting *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) (characterizing Supreme Court holdings on remand with vacatur). Moreover, "only in a handful of cases," *LOWD I*, 2012 WL 13042847, at *3, namely circumstances where

---

[1] The Court in *LOWD I* granted the plaintiff's request for a partial vacatur tailored to the specific NEPA violation at issue in that case. 2012 WL 13042847, *1, 5.

[2] Notably, "although the Supreme Court has cautioned courts against granting injunctive relief as a matter of course in NEPA cases, it did not question the use of vacatur as a standard remedy." *LOWD II*, 2015 WL 1567444, at *2 (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)).

vacatur would threaten "serious irreparable environmental injury," has the Ninth Circuit held that remand without vacatur was "warranted by equity concerns[.]" *LOWD II*, 2015 WL 1567444, at *2 (D. Or. Apr. 6, 2015). The Oregon District Court has noted that such "cases are noteworthy for the significant disparity between the agencies' relatively minor errors, on the one hand, and the damage that vacatur could cause the very purpose of the underlying statutes, on the other." *LOWD I*, 2012 WL 13042847, at *3.

"The burden is on defendant agency to show that compelling equities demand anything less than vacatur." *Western Watersheds,* 441 F. Supp. 3d at 1083. *Accord Nw. Envtl. Advocates v. U.S. Envtl. Prot. Agency*, No. 3:12-cv-01751-AC, 2018 WL 6524161, at *3 (D. Or. Dec. 12, 2018) (Because vacatur "is the ordinary remedy," the defendant "bears the burden of demonstrating vacatur is inappropriate."); *Ctr. for Envtl. Health v. Vilsack*, No. 15-cv-01690-JSC, 2016 WL 3383954, at *13 (N.D. Cal. June 20, 2016) ("Given that vacatur is the presumptive remedy for a procedural violation […], it is Defendants' burden to show that vacatur is unwarranted."); *Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 3d 1217, 1219 (W.D. Wash. 2020) ("Because the APA creates a 'presumption of vacatur' if an agency acts unlawfully, the presumption must be overcome by the party seeking remand without vacatur.").

**II.    Two-Part Test for Vacatur**

As noted above, the Ninth Circuit orders remand without vacatur only in "limited circumstances." *Pollinator Stewardship Council v. U.S. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) ("*Pollinator Stewardship Council*")*, quoting and citing Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012). The court leaves an invalid ruling in place only "when equity demands" that it do so. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995).

When determining whether to leave an agency action in place on remand, the court weighs the seriousness of the agency's errors against "the disruptive consequences of an interim change that may itself be changed." *Pollinator Stewardship Council*, 688 F.3d at 532, *citing Cal. Cmtys. Against Toxics*, 688 F.3d at 992, *quoting Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146, 150–51 (D.C. Cir. 1993).

## ARGUMENT

In its October 17th Memorandum, the Service misleadingly and incorrectly argues that the only remedy BMBP sought for the Service's NEPA and APA violation, Claim 1, Count 1, of its Amended Complaint, was a declaratory judgment or "finding" that the Service in fact violated NEPA. ECF No. 84 at 14 (partially quoting from the July 25, 2022, Transcript). The Service's partial quotation conveniently omits the last sentence of BMBP's counsel's statement, where he explains "And I think [the declaration is] important, because I don't want them to do it again on remand." July 25, 2022, Hr'g Tr. 9:25 – 10:3. When read along with BMBP's explicit request in its Amended Complaint for both declaratory relief and a remand with vacatur, BMBP's counsel was assuming there would be a remand with vacatur in light of the Service's APA violation and explaining to the Court why the declaration regarding the violation would be important "on remand." The Service's motion, in contrast, asks the Court to enter a judgment in its favor without any remand or any vacatur. Thus, the Service is simply wrong when it asserts BMBP has already "obtained all the relief it is entitled to on its meeting notice claim under NEPA." *See* ECF No. 84 at 15.[3] The presumptive remedy for such an APA/NEPA violation is vacatur, it is

---

[3] BMBP also questions whether the Court's oral findings during the July 25th hearing along with the subsequent Minute Order can be considered declaratory relief. The Court's subsequent written opinion did not set out its earlier oral findings. *See* ECF No. 82. Declaratory relief should be provided in the judgment in favor of BMBP, along with and by way of explanation for remand with vacatur.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL VACATUR    6

the Service's burden to prove vacatur is not warranted, and the Service's motion does not even mention vacatur, much less attempt to meet this burden.

I.  **Seriousness of Agency Error**

Under this prong of the test for vacatur, the seriousness of the agency's errors "should be measured by the effect the error has in contravening the purposes of the statute in question." *Or. Nat. Desert Ass'n v. Zinke*, 250 F. Supp. 3d 773, 774 (D. Or. 2017) ("*ONDA*"). When the statute in question is NEPA, the relevant statutory purpose is NEPA's requirement for public participation in an agency's consideration of environmental impacts during the agency's decision-making process. As the court in *Western Watershed Project*, 441 F. Supp. 3d at 1058–59, explained: this required process "ensures that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts[.]" As the Supreme Court has further elaborated, this is so that "the relevant information will be made available to the larger audience that may also play a role in both the decision-making process and the implementation of that decision." *Robertson v. Methow Valley,* 490 U.S. 332, 349 (1989). "[T]he broad dissemination of information mandated by NEPA permits the public and other government agencies to react to the effects of a proposed action at a meaningful time." *Marsh v. Or. Nat. Res. Council,* 490 U.S. 360, 371 (1989). When properly implemented, NEPA procedures "ensure[ ] that the agency will inform the public that it has indeed considered environmental concerns in its decision-making process." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council,* 462 U.S. 87, 97 (1983). Accordingly, CEQ regulations require agencies to "[m]ake diligent efforts to involve the public in preparing and implementing their NEPA procedures," 40 C.F.R. § 1506.6(a); "[p]rovide public notice of NEPA-related hearings, public meetings, and the availability of environmental documents so as to inform those persons and agencies who may be

interested or affected," *id.* at § 1506.6(b); "[s]olicit appropriate information from the public," *id.* at § 1506.6(d); and "[e]xplain in its procedures where interested persons can get information or status reports on environmental impact statements and other elements of the NEPA process," *id.* at § 1506.6(e).

The Forest Service's failure to include BMBP in its notice about this public meeting (which was the *only* public meeting the Service sponsored during the entire 2015–2020 NEPA process, *see* AR 7579) not only violated the specific requirements of Section 1506.6(b), but it also violated one of NEPA's fundamental statutory purposes. Thus, the Service's violation is a serious NEPA violation because it directly undermines one of NEPA's two core purposes. Although the Service has argued that the error was "harmless" because BMBP was able to fully participate in subsequent public participation opportunities, *see*, e.g., ECF No. 84 at 14, the decision in *Western Watersheds* recently rejected a very similar argument. 441 F. Supp. 3d at 1076. In that case the agency illegally shortened the public comment period and the agency noted that the plaintiff was nevertheless able to comment. When rejecting this argument, the court explained that: "The fact of such comments, without more, does not mean that [the plaintiff] has meaningfully contributed, *or as meaningfully as it could have and would have contributed in a different public participation framework*…." (Emphasis added). This explanation applies with equal force to BMBP's exclusion from the first and only Forest Service-sponsored public meeting where the two newest plan amendments and/or the facts and science underlying them were likely discussed with the public. *See* Hood Decl., ¶¶ 6–7 (explaining how BMBP was prejudiced and what it might have said during this public meeting). In this case there simply was not another Forest Service-sponsored meeting where the Forest Service's error could even arguably be "cured" and BMBP's representatives could have directly engaged with the Forest

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL VACATUR    8

Service and the public regarding the Project generally and the science and facts underlying the third and fourth plan amendments specifically.

When BMBP contacted the Forest Service about the lack of notice, its response was to claim that the notice was sent to just "40 news outlets" and, in any case, BMBP's "views …are already well-documented." AR 6037–38. But the actual email distribution list contained far more than 40 email addresses, and, although some of them were obviously "news outlets," many more were not. *See* AR 8486–87 and Hood Decl. ¶¶ 4–5. Even if the Service believed this was not a "NEPA-related" meeting that required it to use its official NEPA email notice list that included BMBP, the Service is claiming that the purpose of the email list it did use was to publicize the meeting. *See* AR 6037. Considering BMBP's long involvement in the public process regarding this Project and its known ability to help with such publicity efforts using its webpage and action alerts, excluding BMBP from the June 2019 meeting's email list is directly contrary to NEPA's required "broad dissemination of information" and "diligent efforts" to involve the public. Moreover, BMBP's exclusion does in fact, by a preponderance of the record evidence, appear to be directly contrary to the Service's own explanation of the purpose behind the June 2019 email distribution list and intentional, which amplifies the seriousness of the error.[4]

---

[4] The seriousness of the error prong may not even be relevant here because the Service has not, and could not, point to any sort of disruptive consequences from partial vacatur that could justify a remand without vacatur. Courts operate on the presumption that vacatur will accompany remand when the agency makes an error and does not carry its burden to show disruptive consequences that sufficiently tip the analysis in the opposite direction. *See AquAlliance v. U.S. Bureau of Reclamation*, 312 F. Supp. 3d 878, 882 (E.D. Cal. 2018) (finding it unnecessary to apply the seriousness of the error *Allied-Signal* factor because "a court may only decline to vacate agency decisions 'when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error'").

**II.     Disruptive Consequences**

A court "may decline to vacate agency decisions when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error." *LOWD II*, 2015 WL 1567444, at *2. Such harms are typically those to the environment and/or to the public interest. *AquAlliance*, 312 F. Supp. 3d at 882. *Western Watersheds* described the required showing as "compelling equities." 441 F. Supp. 3d at 1083.

The Forest Service has not, and cannot, even come close to meeting this burden. In its most recent motion, it describes its harm from not being able to fully implement the Project as "the public safety and public health benefits from the Project will likely be lost for another year, or more." ECF No. 84 at 15. The Service first identified these "benefits" in 2015. Although the Court's injunction halted the Project very briefly in 2016 (until the Service voluntarily withdrew its decision a few days later), and another injunction has halted it since October of 2021, during the vast majority of the intervening years it has been the Forest Service itself that has delayed these "benefits." The Forest Service is simply in no position to argue that a further delay of a year or more is a "compelling equity" when it has already voluntarily delayed full implementation for multiple years. Moreover, a closure order remains in place that has, since 2017, protected the public from the Service's primary safety risk concern: the risk of trees falling on people in the areas with some laminated root rot infestations. AR 5594–5600; ECF 49 at 10. Finally, BMBP is only seeking partial vacatur. The Project involves much more than the commercial thinning and salvage logging in Units 1–5. Such partial vacatur would not stop the Service from implementing the rest of the Project and gaining the benefits from such partial implementation.

Judge Simon explained in *LOWD I* that whenever an agency is told it cannot do what it was

planning to do, it will be inconvenienced and its efforts will be delayed, and those are the typical inconvenience and delay that result from the vacatur of agency decisions. The disruptive consequences that an agency must show to avoid vacatur must, to be consistent with Ninth Circuit case law, go well beyond such typical inconvenience and delay. 2012 WL 13042847, * 4. But all the Forest Service can show here is the typical inconvenience and delay that properly occur when it violates NEPA and the APA during its decision-making process.

## CONCLUSION

For the reasons discussed above, the Court should grant Plaintiff's Motion for Remand with Partial Vacatur.

Dated: October 23, 2022.

Respectfully submitted,

*s/Tom Buchele*
Tom Buchele, OSB No. 081560
Earthrise Law Center
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland OR 97219-7799
Telephone: 503-768-6736
Fax: 503-768-6642
E-mail: tbuchele@lclark.edu

*s/Jesse Buss*
Jesse A. Buss, OSB # 122919
411 Fifth Street
Oregon City OR 97045-2224
Tel: 503-656-4884
Fax: 503-608-4100
Email: jesse@WLGpnw.com

Attorneys for Plaintiff Blue Mountains Biodiversity Project