Tom Buchele, OSB No. 081560
Earthrise Law Center
10101 S. Terwilliger Blvd.
Portland, OR 97219-7799
Telephone: 503-768-6736
Fax: 503-768-6642
E-mail: tbuchele@lclark.edu

Jesse A. Buss, OSB No. 122919
Willamette Law Group
411 Fifth Street
Oregon City, OR 97045-2224
Telephone: 503-656-4884
Fax: 503-608-4100
E-mail: jesse@WLGpnw.com

Attorneys for Plaintiff Blue Mountains Biodiversity Project

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| **BLUE MOUNTAINS BIODIVERSITY PROJECT**, an Oregon non-profit corporation;<br><br>               Plaintiff,<br><br>   v.<br><br>**SHANE JEFFRIES**, in his official capacity as Ochoco National Forest Supervisor; and<br>**UNITED STATES FOREST SERVICE**, an agency of the United States Department of Agriculture,<br><br>               Defendants. | Case No. 2:20-cv-2158-MO<br><br>**PLAINTIFF'S CONDITIONAL MOTION FOR INJUNCTION PENDING APPEAL**<br><br>**Expedited Consideration Requested**<br><br>**Oral Argument Requested** |

## MOTION FOR INJUNCTION PENDING APPEAL

Plaintiff Blue Mountains Biodiversity Project ("BMBP") respectfully conditionally moves the Court for an injunction pending appeal pursuant to Federal Rule of Civil Procedure 62(d), which states that "While an appeal is pending from an interlocutory order or final judgment that grants, continues, modified, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." This motion is conditional in that it applies only if the Court enters an un-stayed order dissolving the preliminary injunction currently in place, ECF 60, without having granted BMBP's concurrently-filed Motion for Remand with Partial Vacatur. If those conditions are met, BMBP intends to file a notice of appeal immediately, and the filing of that notice of appeal is also a condition to this motion. BMBP will also likely re-file this motion immediately upon filing its notice of appeal, removing this motion's conditional nature.[1]

Specifically, BMBP requests the Court enjoin the United States Forest Service and Ochoco National Forest Supervisor Shane Jeffries ("Defendants" or "the Service") from allowing or implementing any of the commercial sanitation logging authorized in units 2, 3, and 4, or commercial thinning authorized in units 1–5 by the December 7, 2020, Decision Notice for the Walton Lake Restoration Project and Project-Specific Forest Plan Amendments.[2]

---

[1] Albeit unusual, BMBP files this conditional motion, along with its alternative conditional motion for a stay, so that the Court can more fully consider its procedural options while it is considering how to rule on BMBP's concurrently-filed Motion for Remand and Partial Vacatur and the Service's Motion to Dissolve Preliminary Injunction (ECF 84).

[2] As was the case with the preliminary injunction, BMBP does not seek to enjoin the removal of legitimate hazard trees near campsites or along roads, pursuant to relevant selection criteria. ECF 41 at 2, ECF 60. Nor does BMBP seek to enjoin the myriad other portions of the Walton Lake Project, such as removal of already-cut trees and other fuels already on the ground

PLAINTIFF'S CONDITIONAL MOTION FOR INJUNCTION PENDING APPEAL         i

While the Service has not provided an exact date on which it plans to start logging these units, its recent filings stated that "the project could begin the week of October 23, 2022[,]" Second Declaration of Shane Jeffries ("Jeffries Decl.") ECF 84-1 ¶ 2, and that it "needs to complete" the work "in the coming weeks, starting as early as October 23, 2022." ECF 84 at 5. The Service further insisted that they need to start logging by October 28, 2022. *Id.* at 15. Based upon the Service's representations, and absent an injunction pending appeal, irreparable harm to BMBP's interests is imminent.

BMBP respectfully requests expedited consideration and that the Court rule on this motion on or before Friday, October 28, 2022. If an injunction pending appeal is not imposed by that date, the implementation of active logging at Walton Lake could quickly moot BMBP's appeal.

---

and the non-commercial thinning in units 6, 7, and 8, among other less disputed aspects of the Project. AR 8716–17.

**MEMORANDUM IN SUPPORT**

BACKGROUND

On September 29, 2021, this Court heard oral argument from the parties regarding BMBP's Motion for Preliminary Injunction, ECF 41. Based upon oral argument and the briefing, the Court found that BMBP met all four elements requires to obtain a preliminary injunction, and on October 13, 2021, this Court entered an Order, ECF 60, granting BMBP's request for a preliminary injunction. That Order enjoined Defendants from allowing or implementing any of the commercial "sanitation" logging authorized in units 2, 3, and 4, or any commercial thinning authorized in units 1–5, authorized by the December 7, 2020, Decision Notice for the Walton Lake Restoration Project and Project Specific Forest Plan Amendments (the "Project").[3]

The Parties then briefed summary judgment and the Court held oral argument on Plaintiff's Motion for Summary Judgment, ECF 66, and Defendants' Cross Motion for Summary Judgment, ECF 67, on July 25, 2022. Based upon that oral argument and related briefing, the Court ultimately granted BMBP summary judgment on Claim 1, Count 1, and granted summary judgment to Defendants on all remaining claims. ECF 80 & 82. The Court's final Opinion and Order was issued on September 26, 2022. ECF 82.

On October 17, 2022, the Service moved this Court for expedited review of a motion to dissolve the standing injunction and to enter final judgment in favor of the Service without the benefit of remedy briefing and without giving BMBP a remedy for prevailing on the merits of one of its claims. ECF 84 at 15, 17. BMBP responded to the request to expedite, ECF 85, 85-1, 85-2, and in response the Court ultimately set oral argument for October 24, 2022. ECF 86 & 88.

---

[3] That Order allowed the Service to continue to remove hazard trees near campsites and along roads, pursuant to relevant identification criteria. ECF 60 at 1.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S CONDITIONAL MOTION FOR INJUNCTION PENDING APPEAL     1

The outcome of that argument may decide whether the preliminary injunction will be lifted. That injunction currently prevents the Service from causing BMBP irreparable harm by cutting the trees at the heart of the challenged Project. If granted, an order dissolving the preliminary injunction will be an appealable order under 28 U.S.C. § 1292. BMBP's interests would not only be irreparably harmed by the logging of these trees, but also by the mooting of its appeal that would result from such logging.

## STANDARD OF REVIEW

The Federal Rules of Appellate Procedure contemplate that parties will first seek an injunction pending appeal from the district court before seeking similar relief from the Court of Appeals. Fed. R. App. P. 8(a)(1)(C). Courts have observed that "[p]rior recourse to the initial decisionmaker would hardly be required as a general matter if [a district court] could properly grant interim relief only on a prediction that it has rendered an erroneous decision." *Or. Nat. Res. Council v. Marsh*, 1986 WL 13440, at *1 (D. Or. Apr. 3, 1986) (quoting *Wash. Metro Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)). Accordingly, courts will grant Rule 62 relief "when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Id.* quoting *Wash. Metro,* 559 F.2d at 844–45; *see also Protect Our Water*, 337 F. Supp. 2d at 884 (same).

In deciding whether to grant an injunction pending appeal, courts are guided by the standard employed when considering a motion for a preliminary injunction. *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). Preliminary injunctions generally require plaintiffs to show: (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In contrast to the

preliminary injunction context, however, for injunctions pending appeal the "likelihood of success on the merits" prong is of substantially diminished importance. As observed by the District of Oregon and several other courts, the "success on the merits factor cannot be rigidly applied," because if it were, an injunction "'would seldom, if ever, be granted because the district court would have to conclude that it was probably incorrect in its determination on the merits.'" *Or. Nat. Res. Council v. Marsh*, 1986 WL 13440, at *3 (D. Or. Apr. 3, 1986) (quoting *Himebaugh v. Smith,* 476 F. Supp. 502, 510 (C.D. Cal. 1978), *see also Protect Our Water v. Flowers*, 377 F.Supp.2d 882, 884 (E.D. Cal. 2004). Thus, it is appropriate for courts to issue an injunction "when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Id.* at *1. Relatedly, "[a] stay should issue if failing to do so would 'destroy [the plaintiff's] rights to secure meaningful review' on appeal." *NCTA – Internet & Television Ass'n v. Frey*, No. 2:19-CV-420-NT, 2020 WL 2529359 at *2 (D. Me. May 18, 2020) (quoting *Providence Journal Co. v. Fed. Bureau of Investigation,* 595 F.2d 889, 890 (1st Cir. 1979)).

## ARGUMENT

Here, an injunction pending appeal is warranted because, in denying most of BMBP's claims, this Court has ruled on difficult legal questions, and the irreparable harm, balance of equities, and public interest factors still weigh in favor of an injunction, just as they did when the Court issued the preliminary injunction. *Marsh*, 1986 WL 13440, at *1. Moreover, and critically, an injunction pending appeal is necessary to preserve BMBP's legal rights to secure meaningful appellate review.

First, the Court ruled on "difficult legal questions" including, but not limited to, the appropriate standard of review regarding pre-NEPA agency action impacting the range of

alternatives considered by the agency, the appropriate scope of the administrative record, and the sufficiency of the Service's significance determination, including evaluating the "convincing statement of reasons" why an environmental impact statement ("EIS") was not required. Second, BMBP will suffer irreparable harm in the absence of an injunction prohibiting the challenged logging. The Court has already recognized as much. ECF 61 at 1; Sept. 29, 2022 Hr'g Tr. 4:22–5:7. BMBP will also suffer irreparable harm from its appeal being mooted by the cutting of the trees. Lastly, as also recognized by this Court, the balance of the equities and public interest tip in favor of BMBP's requested injunction. ECF 61 at 1; Sept. 29, 2022 Hr'g Tr. 5:8–23. Thus, BMBP satisfies all four *Winters* factors, "the equities of the case suggest that the status quo should be maintained[,]" *Wash. Metro Area Transit Comm'n,* 559 F.2d at 844–45, and an injunction pending appeal is appropriate.

   I.   **The District Court Ruled on Difficult Legal Questions.**

   a. **BMBP Raised, and the Court Ruled on, a Serious and Unresolved Legal Question Over the Applicable Standard for Pre-NEPA Agency Actions that Prejudice or Limit the Choice of Alternatives.**

As the Court acknowledged in its Opinion and Order, ECF 82 at 8, the parties dispute the applicable standard for pre-NEPA agency actions that prejudice or limit the choice of reasonable alternatives. BMBP's position is that 40 C.F.R. § 1502.2(f) (2019) and § 1506.1(a)(2) (2019) apply, such that the applicable standard is that an agency action violates NEPA when it takes any pre-NEPA action that "prejudice[s] [the] selection of alternatives before making a final decision," or which "limit[s] the choice of reasonable alternatives." ECF 82 at 8. The Service's position, by contract, is that an agency's pre-NEPA action does not violate NEPA unless the action constitutes "an irreversible and irretrievable commitment of resources." *Id.* As this Court noted, the two standards are quite different, and "it is much easier for a [pre-NEPA action] to

prejudice or limit alternatives than for it to be considered irreversible and irretrievable." *Id.* at 9; *see also* July 25, 2022 Hr'g Tr. at 12:21-23 ("[I]t's my view that those are two very different standards, one lower, in my view, significantly lower, in BMBP's favor and one higher.").

This Court concluded that the "irreversible and irretrievable commitment of resources" is the proper standard here. *Id.* In so deciding, the Court noted that "the Ninth Circuit appears to have focused on the statutory language," rather than the language in the regulations, and that "[the irreversible and irretrievable] standard comes not directly from the regulations, but from the [Ninth Circuit's] '[c]onstruing' of them." *Id.* "In any event," this Court concluded, "the 'irreversible and irretrievable' standard is precedent in the Ninth Circuit, and I will apply it." *Id.*

The application of the "irreversible and irretrievable" standard was a critical decision impacting the outcome of Claim 1, Count 4. Applying that standard, the Court concluded that entering into a pre-NEPA logging contract (which was entirely dependent for its financial feasibility on the logging of commercially viable large and old trees) did not violate NEPA. *Id.* at 11. Specifically, the Court found the contract did not constitute an "irreversible and irretrievable commitment of resources" because the Service "did not surrender its rights," instead retaining the ability to "sign a new contract or terminate the existing one as conditions warranted." *Id.* Although BMBP cannot know for sure how the Court would have ruled had it applied the language of sections 1502.2(f) and 1506.1(a)(2), as argued extensively in BMBP's prior submissions, it is clear that the 2016 logging contract with T2, Inc. at the very least "prejudiced" the selection of alternatives because of the financial constraints faced by the Service. Although it is a slightly higher standard than "prejudice," the 2016 logging contract also "limited" the choice of reasonable alternatives because the Service only considered Project alternatives that involved

logging commercially merchantable large trees. Under either standard, the Service's pre-NEPA logging contract violated NEPA.

The fact is that the Ninth Circuit has never squarely addressed the "prejudice" and "limit" standards under sections 1502.2(f) and 1506.1(a)(2). The closest it has come is in *WildWest Inst. v. Bull*, 547 F.3d 1162 (9th Cir. 2008), in which the Court acknowledged that, in "[c]onstruing a *related* regulation" in *Metcalf v. Daley*, 214 F.3d 1135 (9th Cir. 2000), "we have held that a premature 'irreversible and irretrievable commitment of resources' violates NEPA." 547 F.3d at 1168 (emphasis added). But *WildWest Inst.* does not suggest that sections 1502.2(f) and 1506.1(a)(2) should be interpreted to mean the same thing as that "related regulation" in *Metcalf*.[4, 5] And importantly, in *WildWest Inst.* the Ninth Circuit does not even attempt to resolve the issue of whether the "prejudice" and "limit" standards apply, or rather whether the "irreversible and irretrievable" standard applies. Instead, *WildWest Inst.* first lists all three standards, and then appears to variously apply the "limit" and "irreversible and irretrievable commitment" standards in an unstructured, hodge-podge fashion. *See* 547 F.3d at 1168–69.

---

[4]   Indeed, as discussed in BMBP's supplemental memorandum on this issue, ECF 81, *Metcalf* does not even mention the two regulations at issue in this case. ECF 81 at 3. The same is true for *Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988), which is relied on in *Metcalf*. ECF 81 at 3.

[5]   In *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 2017 WL 1829588 (D. Or. Apr. 3, 2017), *aff'd in part on other grounds, appeal dismissed in part*, 886 F.3d 803 (9th Cir. 2018), Judge Simon described the *WildWest Inst.* panel's discussion of the "irreversible and irretrievable" standard as offering value by "analogy" when discussing the "limit" standard under § 1506.1(a)(2). *Id.* at *28. Judge Simon, however, did not conflate the two standards nor apply the "irreversible and irretrievable" standard, let alone *in lieu* of or to the exclusion of the standards contained in sections 1502.2(f) and 1506.1(a)(2). Rather, he found that *WildWest Inst.* stands for the proposition that "an agency's 'irreversible and irretrievable' commitment of resources may limit its alternatives under Section 1506.1(a)." *Id.* at *29. In other words, a showing of an "irreversible and irretrievable" commitment of resources is *sufficient* to satisfy the "limit" standard of § 1506.1(a)(2), but it is not *necessary*.

Although the "prejudiced" standard is mentioned once, it is not applied, and no explanation is offered for why it is not applied. *See id.* This treatment in *WildWest Inst.* shows that while the Ninth Circuit recognizes that sections 1502.2(f) and 1506.1(a)(2) apply and have the force of law, the framework for applying them in relation to the separate "irreversible and irretrievable" standard remains unresolved.

This Court's approach to the problem discussed above was to apply the "irreversible and irretrievable" standard, but not the "prejudice" or "limit" standards under sections 1502.2(f) and 1506.1(a)(2). While it will come as no surprise to the Court that BMBP disagrees with that approach, whether the Court or BMBP is correct on this point is not the relevant inquiry. At this procedural posture (i.e. a request for an injunction pending appeal), the relevant question is whether BMBP raised, and the Court resolved, a difficult legal question. In declining to apply the "prejudice" and "limit" standards at all, in favor of the exclusive application of the "irreversible and irretrievable" standard, this Court has staked out new territory and has effectively nullified sections 1502.2(f) and 1506.1(a)(2). That is a serious and significant ruling, especially because no court, let alone in the Ninth Circuit, has declared those regulations to be meaningless or otherwise without effect.[6] Even the panel in *WildWest Inst.* acknowledged that the regulations apply, and in fact applied the "limit" standard, even if it side-stepped the issue of how exactly those regulations relate to the separate "irreversible and irretrievable" standard. *See* 547 F.3d at 1168–69. Given the significance of the Court's ruling (i.e. effectively invalidating the two

---

[6]     As an example, this Court's ruling effectively divesting sections 1502.2(f) and 1506.1(a)(2) of any application or meaning is directly at odds with Judge Simon's ruling in *Nat'l Wildlife Fed'n*, in which he analyzed in detail and applied those regulations as affirmative governing standards. *See* 2017 WL 1829588 at *26-31.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S CONDITIONAL MOTION FOR INJUNCTION PENDING APPEAL                                          7

regulations), the Ninth Circuit should be allowed to weigh in on this issue before the Service moots this case by logging the Walton Lake area.

### b. The Role of Deliberative Documents in the Administrative Record in the Ninth Circuit.

All of the District Court's rulings on summary judgment have been overshadowed by the initial ruling on the parties' record dispute. The outcome of that dispute resulted in the omission from the record of hundreds of pages of documents that BMBP maintains should have been included as part of the "whole record." ECF 21 at 21, ECF 40 at 1, Sept. 29, 2022 Hr'g Tr. 4:10–15. As a result of this determination, BMBP was forced to drop several of its claims, ECF 66 at 2 n.1 (noting that absent the omitted documents several claims could no longer be supported and were therefore dropped), and several of its other arguments were weakened due to the evidentiary documents upon which BMBP relied being omitted from the record. Thus, the omission of these documents not only likely impacted the outcome of this case, but also BMBP's ability to even argue some of its claims in the first instance.

The parties fully briefed the matter of the proper scope of the administrative record before Magistrate Judge Sullivan. *See generally* ECF 10, 11, 19, 21, 22, 36. The parties agreed that the Ninth Circuit had not yet directly addressed whether deliberative documents are considered part of the "whole record", ECF 19 at 20; ECF 21 at 32, and the parties took opposing positions regarding the correct standard. BMBP argued, among other things, that the court should follow the growing consensus among district courts in the Ninth Circuit that the "whole record" includes deliberative materials that, if withheld, should be listed in a privilege log. ECF 21 at 31–35. As part of that argument, BMBP identified 41 district court opinions, all within the Ninth Circuit, supporting its position. *Id.* at 33–34. This was offered in response to the Service's advancement of eight district court cases reaching the opposite conclusion. ECF 19 at 20.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S CONDITIONAL MOTION FOR INJUNCTION PENDING APPEAL  8

Magistrate Judge Sullivan ultimately entered an Opinion & Order finding for the Service on this matter. ECF 40 at 7–12. BMBP objected to that Order and included a specific assignment of error addressing the Magistrate Judge's failure to "consider Ninth Circuit case law regarding the qualified nature of the deliberative process privilege and District of Oregon case law directly addressing the critical role that privilege logs play in allowing the trial court to apply the Ninth Circuit's standards regarding allegedly deliberative materials and allowing the district court, rather than the defendant agency, to decide which supposedly privileged documents actually belong in the compete record." ECF 52 at 2, 14–17. The District Court affirmed the Magistrate Judge's Order without hearing oral argument on the record dispute or issuing a written opinion on BMBP's Motion to Compel, ECF 10, or BMBP's Objections to Magistrate Ruling, ECF 52. Sept. 29, 2021 Hr'g Tr. 4:10–15. As such, this Court ruled upon a difficult legal question for which there is split opinion amongst the Ninth Circuit's district courts, and in doing so went against the emerging "growing consensus" among those courts. *Friends of the Clearwater v. Higgins*, No. 2:20-CV-00243-BLW, 2021 WL 827015, at *8 (D. Idaho Mar.4, 2021). That emerging consensus agrees with BMBP's position. *Id.* Since this Court's decision on the deliberative process issue, this "growing consensus" has continued to grow, with at least three more cases joining the majority in support in of BMBP's position. *See Bartell Ranch LLC v. McCullough*, No. 3:21-cv-00080-MMD-CLB, 2022 WL 2093053, at *4 (D. Nev. June 10, 2022) ("The Court accordingly rejects the contrary body of caselaw…suggesting that deliberative documents are simply not part of the ARs and may therefore be withheld without disclosing their existence."); *Western Watersheds Project v. Feldhausen*, No. CV-20-00149-TUC-JGZ, 2021 WL 5771153, at *5 (D. Ariz. Dec. 6, 2021) (ordering defendants produce a privilege log explaining why documents were held, including claims of deliberative process privilege); *Center for Food*

*Safety v. Perdue*, No. 20-cv-00256-JSW, 2021 WL 8532247, at *3 (N.D. Cal. Nov. 5, 2021) (explaining that "[d]efendants have followed the approach commonly adopted by judges in this district" by "provid[ing] a privilege log describing the documents and the basis for withholding or supporting the deliberative process privilege"); ECF 1 at 33–34 n.14 (BMBP's initial list of 41 cases).

The "difficult legal question" regarding the proper scope of the administrative record regarding the inclusion and documentation of deliberative documents should be placed before the Ninth Circuit for resolution.

### c. The Evaluation of the Service's "Significance" Determination Under NEPA (Claim 1, Count 5), and by Extension, NFMA (Claim 2, Count 2).

The District Court further ruled on a difficult legal question when it found that the Project was not significant under NEPA, and that, as a result, it did not require an EIS.[7] ECF 82 at 14–15. This finding ran counter to the Court's initial determination on this claim at the preliminary injunction stage. Sept. 29, 2021 Hr'g Tr. 22:14–19.[8] The Court's summary judgment ruling was based upon two overarching findings regarding the context and intensity of the Project. *Id.* at 11–15.

The agency advancing or approving an action has the burden to demonstrate why an impact is not significant. *See Nat'l Parks Conservation Ass'n v. Babbitt,* 241 F.3d 722, 730 (9th Cir. 2001) (Service failed to articulate a "convincing statement of reasons to explain why a

---

[7] By extension, the Court also ruled that the Project was not significant under NFMA, because the finding of significance under NFMA is the same as for NEPA. ECF 82 at 15.

[8] At the time, the Court noted that "I am persuaded that the entire Ochoco National Forest is taking the lens out too broadly and creating an artificially large context that artificially deflates substantial – or significant impact." Sept. 29, 2021 Hr'g Tr. 6:19–22. Counsel for the Service also admitted that "I agree that in the finding of no significant impact, the discussion of context here is quite broad." Sept. 29, 2021 Hr'g Tr. 9:18–20.

project's impacts are insignificant"). In discussing context, BMBP's briefing argued that the "FONSI never asserts, argues, or concludes that the Project's impacts are insignificant at the localized scale." ECF 71 at 34. In the Court's discussion of context, it found for the Service on this claim, in part, because it felt that the FONSI, when combined with the EA, constituted a "convincing statement of reasons" to explain why the project was insignificant, including in the localized context. ECF 82 at 12–13. However, the Opinion did not address the conclusory nature of the FONSI's "convincing statement of reasons," the fact that it openly and improperly dilutes localized impacts and nothing in the EA "corrects" this clear legal error, or the fact that the FONSI and EA never offer an actual convincing statement of reasons for why the Project's combined impacts are insignificant at the localized scale.

Regarding the intensity element, the Court addressed three relevant factors identified by 40 C.F.R. § 1508.27(b) (2019)'s list of ten non-exclusive intensity factors, ultimately finding that two weighed in favor of the Service, and one weighed in favor of BMBP. ECF 82 at 14. One of the intensity factors that the Court found in favor of the Service is 40 C.F.R. § 1508.27(b)(6) ("The degree to which the action may establish precedent for future actions with significant effects or represents a decision in principle about a future consideration."). *Id.* While the opinion summarized each party's position on this factor, it did not include discussion of the Court's reasoning in making this determination, although the Order does include a statement that BMBP "does not contend that the project will be used to establish new precedent." *Id.* at 14. However, BMBP *did* make such a contention in its briefing. *See* ECF 71 at 37. To the extent that the Court's determination on this factor was premised upon a belief that BMBP had not properly raised or argued this claim, it is possible that the Court may have reached a different conclusion in light of this information.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S CONDITIONAL MOTION FOR         11
INJUNCTION PENDING APPEAL

Further, the Court's Order did not address the fourth intensity factor briefed by BMBP – cumulative impacts, 40 C.F.R. § 1508.27(b)(7) (2019) ("Whether the action is related to other actions with individually insignificant but cumulatively significant impacts."). *See* ECF 66 at 45, 34–35; ECF 71 at 36–37. Thus, it is possible that had the Court considered the cumulative impacts factor along with information above regarding the precedent factor, it may have determined on-balance that intensity weighed toward a finding of significance. The determination of significance involves a complex analysis evaluating multiple potential factors of intensity of impacts in a number of necessary contexts. Determining the sufficiency of such analysis is an equally difficult question that the Court ruled upon in this matter.

## II.     Plaintiff will Suffer Irreparable Harm in the Absence of an Injunction.

As the District Court correctly found at the preliminary injunction stage, BMBP has established a likelihood of irreparable harm absent an injunction. Sept. 29, 2022 Hr'g Tr. 4:22–5:7 (observing that plaintiff established a "very solid case for" and "compelling showing here of irreparable harm"); ECF 60 at 1. Nothing has changed in this regard. BMBP has established that the approved Project, which involves the removal of hundreds of large trees, would negatively impact the ability of BMBP and its supporters to view, experience, and utilize the Walton Lake area in its undisturbed state, including for the purposes of hiking, bird watching, viewing wildlife, photographing scenery and wildlife, and engaging in other activities. ECF 41 at 19–20; ECF 54 at 9–13. The Ninth Circuit has held that logging which interferes with the ability to "'view, experience, and utilize' the areas in their undisturbed state" constitutes irreparable harm. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "The logging of mature trees, if indeed incorrect in law, cannot be remedied easily if at all. Neither the planting of new seedlings nor the paying of money damages can normally remedy such damage. The

harm here, as with many instances of this kind of harm, is irreparable for the purposes of the preliminary injunction analysis." *League of Wilderness Defs./Blue Biodiversity Project v. Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014). Therefore, Plaintiff has established irreparable harm in the absence of an injunction. This harm is imminent in light of the Service's statements that work "could begin the week of October 23, 2022[,]" ECF 84-1 ¶ 2, and its stated desire to complete this work "in the coming weeks, starting as early as October 23, 2022." ECF 84 at 5.

Further, absent its requested injunction pending appeal, BMBP will suffer the additional irreparable harm of having its appeal mooted before it can obtain any meaningful review. The Ninth Circuit has recognized that the certain mooting of an appeal constitutes irreparable harm. *See Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986) (finding that the mooting of appeal in an extradition proceeding was sufficient to constitute irreparable harm). *See also Ctr. For Int. Envt'l Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22–23 (D.D.C. 2003) (finding that disclosure of documents in a Freedom of Information Act case that would moot appeal was irreparable harm); *Sumecht Na Inc., v. United States,* 923 F.3d 1340 (Fed. Cir. 2019) (observing that "[t]he threat of liquidation is typically sufficient to demonstrate irreparable harm because liquidation may moot further judicial relief[.]"). Here, it is not a mere possibility that BMBP's appeal would be mooted by project completion – it is a certainty. Once the trees are cut they cannot be put back, and all of BMBP's challenges regarding the sufficiency of the Service's NEPA process and inconsistency with NMFA would be rendered without potential redress.

### III. The Balance of Equities and Public Interest Tips Sharply in BMBP's Favor.

This Court correctly found that the balance of equities and public interest tip in BMBP's favor, and that the former "sharply" in BMBP's favor. Sept. 29, 2022 Hr'g Tr. 5:8–23 (finding that the balance of hardships "tips sharply in plaintiff's favor"); ECF 60 at 1. Again, nothing has

changed that would impact the outcome of this determination. BMBP has established that the harm it would suffer as a result of Project implementation far outweighs any harm to the Service in delaying that implementation, and that the public interest is served by preserving the status quo – leaving the large and old growth trees targeted by the Project uncut. *See* ECF 41 at 42–44; ECF 54 at 36–41.

In balancing the equities, the Ninth Circuit considers only the portion of the harm that would occur while the preliminary injunction is in place. *Connaughton*, 752 F.3d at 765. If the type of environmental harm BMBP will suffer in this case "is sufficiently likely, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987). As the Ninth Circuit explained in *Connaughton*, a case where the logging of large trees was also at issue, the "harms [plaintiff] face[s] are permanent, while [defendants] face temporary delay." 752 F.3d at 765. Similarly here, while discussing BMBP's potential harm, the Court correctly observed that, if cut, these trees would be "if not permanently irreplaceable, at least for multiple generations, swept away," whereas the government would only experience "modest harm." Sept. 29, 2022 Hr'g Tr. 5:10–13.

The public interest also weighs heavily in favor of preserving the status quo and preventing irreparable environmental harm until the Ninth Circuit has reviewed the merits of this case. *Se. Alaska Conservation Council v. U.S. Army Corps of Engr's*, 472 F.3d 1097, 1011 (9th Cir. 2006); *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033 (9th Cir. 2007) ("The preservation of our environment, as required by NEPA…is clearly in the public interest."). The public also has an interest in preventing the Service from acting in a manner inconsistent with the applicable law. *Seattle Audubon Soc. v. Evans*, 771 F. Supp. 1081, 1096 (W.D. Wash. 1991) (interest in

having government officials act in accordance with the law "invokes a public interest of the highest order"), *aff'd* 952 F.2d 297. Because BMBP seeks to enforce federal laws designed to protect the environment, and because the injunction would preserve the status quo until the case is resolved, the injunction would serve the interests of the public.

BMBP has demonstrated that in denying BMBP's claims, this Court has ruled on difficult legal questions, and that the irreparable harm, balance of equities, and public interest factors still weigh in favor of an injunction, just as they did when the Court issued the preliminary injunction. *Marsh*, 1986 WL 13440, at *1. In doing so, BMBP has established all elements necessary to obtain an injunction pending appeal. Moreover, and critically, an injunction pending appeal is necessary to preserve BMBP's legal rights to secure meaningful appellate review.

## CONCLUSION

For the reasons discussed above, the Court should grant Plaintiff's Conditional Motion for an Injunction Pending Appeal. An Emergency Injunction is necessary to prevent irreparable harm to Plaintiff and to preserve Plaintiff's legal rights to comprehensive appellate review.

Dated: October 23, 2022.

          Respectfully submitted,

          *s/Tom Buchele*
          Tom Buchele, OSB No. 081560
          Earthrise Law Center
          Lewis & Clark Law School
          10101 S. Terwilliger Blvd.
          Portland OR 97219-7799
          Telephone: 503-768-6736
          Fax: 503-768-6642
          E-mail: tbuchele@lclark.edu

*s/Jesse Buss*
Jesse A. Buss, OSB # 122919
411 Fifth Street
Oregon City OR 97045-2224
Tel: 503-656-4884
Fax: 503-608-4100
Email: jesse@WLGpnw.com

Attorneys for Plaintiff Blue Mountains Biodiversity Project
